1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
3  **Morrison & Foerster LLP**
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  *Attorneys for Defendant*
   *Chobani LLC*

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11  MIKHAIL GERSHZON, on behalf of himself and    Case No. _____
    all others similarly situated,
12                                                NOTICE OF REMOVAL BY
                        Plaintiff,                DEFENDANT CHOBANI LLC
13
              v.
14
    CHOBANI LLC,
15
                        Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that Defendant Chobani LLC ("Chobani") hereby removes the above-captioned state court action from San Francisco Superior County Court, Case No. CGC-22-603042 (the "Action" or "Complaint"), to this Court pursuant to 28 U.S.C. §§ 1441, 1453, and 1446.  The grounds for removal are as follows:

1.      A defendant has a right to removal where an action is brought in a state court over which the district court has original jurisdiction.  28 U.S.C. § 1441(a).

2.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (1) this Action is brought on behalf of a putative class consisting of more than 100 members; (2) minimal jurisdiction exists between the parties; and (3) the amount in controversy exceeds $5,000,000.[1]

3.      Venue is proper in this district because San Francisco Superior Court is within the Northern District of California, and Chobani has complied with the procedural requirements of 28 U.S.C. §§ 1453 and 1446.

## BACKGROUND

4.      Plaintiff filed his Complaint on November 18, 2022.  A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

5.      On December 8, 2022, Chobani filed an Application for Approval of Complex Designation, which was granted on December 22, 2022.  See **Exhibit B** attached hereto.

6.      On April 14, 2023, in its Initial Disclosures, Plaintiff's counsel first informed Chobani's counsel that Plaintiff's calculation is that the amount in controversy is in excess of $5,000,000.

7.      Attached as **Exhibit C** is a copy of all process, pleadings, papers, or orders that have been filed in this action in the San Francisco Superior Court.

---

[1] While this Court has original jurisdiction, Chobani does not concede that this Court has equitable jurisdiction to award Plaintiff his requested remedy of equitable restitution.  *See e.g.*, *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300 (9th Cir. 2022); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022); *Stafford v. Rite Aid Corp.*, No. 17-CV-1340 TWR (JLB), 2023 WL 2876109, at *5 (S.D. Cal. Apr. 10, 2023).

**REMOVAL IS PROPER IN THIS CASE**

**The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)**

8.      Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), federal district courts have original jurisdiction over any putative class action in which (1) there are at least 100 putative class members, (2) any putative class member is a citizen of a state different from any defendant, and (3) the aggregated claims of the members of the putative class exceeds $5 million.  *See Jordan v. Nationstar Mortg.*, *LLC*, 781 F.3d 1178, 1182 (9th Cir. 2015); 28 U.S.C. § 1332(d).  Here, all the requirements are met.

**A.  The putative class consists of more than 100 members**

9.      CAFA defines "class action" as "any civil action filed under rule 23 of the Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

10.      Here, the Complaint is titled "Class Action Complaint" and is brought by Plaintiff on behalf of himself and "all others similarly situated."  (Ex. A.)  The Complaint alleges that there are tens of thousands of Class Members.  (*Id.* ¶ 42.)

11.      The requirements of at least 100 putative class members is satisfied on the face of the Complaint.

**B.  Minimal diversity exists between the parties**

12.      CAFA requires that only "minimal diversity" exists; that is, the citizenship of at least one putative class member must differ from that of at least one defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

13.      For purposes of diversity of citizenship, a business organized as a corporation is "deemed to be a citizen of a State by which it has been incorporated" and also a citizen "of the State where it has its principal place of business."  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) (citing U.S.C. § 1332(c)(1)).

14.      Chobani is incorporated in Delaware, with its principal place of business in New Berlin, New York.  *See* Chobani's S-1 filed with the Securities Exchange Commission (*available at https://www.sec.gov/Archives/edgar/data/1869113/000119312521332196/d138208ds1.htm*).

15.    "Class members" include "persons (named or unnamed) who fall within the definition of the proposed or certified class." *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. 1332(d)(1)(D)).

16.    Therefore, at least one putative class member has citizenship that is different from Chobani. *See* 28 U.S.C. §§ 1332(d)(2)(A).

**C.    The amount-in-controversy requirement is satisfied**

17.    This Action meets CAFA's amount-in-controversy requirement because Plaintiff seeks relief that, in the aggregate, exceeds CAFA's $5 million jurisdictional threshold.

18.    Under CAFA, the "claims of the individual class members must be aggregated." 28 U.S.C. § 1332(d)(6).  "[T]he [CAFA] statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the…proposed class and determines whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 593 (2013).  If the Court is uncertain whether the amount in controversy exceeds $5 million, then "the court should err in favor of exercising jurisdiction over the case." S. Rep. No. 109-14, at 42 (2005).

19.    A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)(citing 28 U.S.C. § 1446(a)).

20.    Here, Plaintiff informed Defendant on April 14, 2023 that the amount sought for the claim in the Action exceeds $5,000,000.  Therefore, CAFA's amount-in-controversy requirement is satisfied.

**D. No CAFA exceptions apply**

21.    This Action does not fall within any exclusion to CAFA jurisdiction under 28 U.S.C. § 1332(d).

**II.    Removal is timely and the procedural requirements for removal are satisfied**

22.    Under 28 U.S.C. § 1453, "[a] class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in

1   which the action is brought…."

2       23.    Under 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not

3   removable, a notice of removal may be filed within thirty days after receipt by the defendant,

4   through service, or otherwise, of a copy of an amended pleading, motion, order *or other paper*

5   from which it may first be ascertained that the case is one which is or has become removable."

6   (emphasis added). Indeed, in *Jordan v. Nationstar Mortgage, LLC*, the Ninth Circuit upheld

7   removal of a case from California state court to federal court more than two years after the

8   complaint had been filed (and after the defendant had answered and the class had been certified)

9   based upon new information revealed to the defendant in discovery that the damages in the case

10  exceeded $5,000,000. *Jordan,* 781 F.3d at 1181, 1184.

11      24.    Here, Defendant learned from Plaintiff in its Initial Disclosures on April 14, 2023

12  that Plaintiff contends the value of the case exceeds $5,000,000.  Defendant then removed the

13  case on May 1, 2023, well within 30 days of the information received on April 13, 2023.

14  Accordingly, removal is timely.  *Jordan*, 781 F.3d at 1184.

15      WHEREFORE, Chobani hereby removed the above-captioned case to this Court.[2]

16

17  Dated: May 2, 2023                          MORRISON & FOERSTER LLP

18

19                                  By:    */s/ Claudia M. Vetesi*
                                           CLAUDIA M. VETESI

20
                                           Attorneys for Defendant
21                                         CHOBANI LLC

22

23

24

25

26
    ───────────────────
27      [2] Pursuant to 28 U.S.C. § 1446(d), Chobani will promptly file a copy of this Notice of
    Removal with the clerk of the San Francisco County Superior Court and serve a copy of same
28  upon counsel for Plaintiff.

NOTICE OF REMOVAL                                                                    5

# Exhibit A

**REESE LLP**
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (*pro hac vice* to be filed)
*spencer@spencersheehan.com*
60 Cuttermill Road, Suite 409
Great Neck, New York 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/18/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

**CGC-22-603042**

*Counsel for Plaintiff Mikhail Gershzon and the Proposed Class*

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MIKHAIL GERSHZON, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHOBANI LLC, <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **1. Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Mikhail Gershzon ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint against Chobani LLC ("Defendant" or "Chobani"). On the basis of personal knowledge, information and belief, and investigation of counsel, Plaintiff alleges as follows:

**INTRODUCTION**

1.     Defendant manufactures, distributes, markets, labels, and sells "Greek Yogurt Vanilla Blended" under the Chobani brand ("Product" or "Products").

2.     The Product was and is sold to consumers by third parties in different sizes including the 32 ounce container, the 5.3 ounce container, and the 4-pack of the 5.3 ounce, shown below.







3.    The Product, regardless of size or distribution channel, bears a common, uniform label that states "Vanilla" on the front of the packaging.

4.    The Product is marketed as a premium yogurt. In the Safeway grocery store located at 5290 Diamond Heights Boulevard, San Francisco, California, on or about November 2, 2022, the 32 ounce size of the Product cost $6.99 or $0.22 per ounce, the 5.3 ounce size of the Product cost $1.69 or $0.32 per ounce, and the 4-pack of the 5.3 ounce size of the Product cost $6.49 or $0.31 per ounce.

5.      Defendant does not comply with FDA labelling requirements because it displays the "Vanilla" representation on the front of its package with no qualifiers, yet the Product has added vanillin, not from the vanilla plant, that simulates, resembles, or reinforces the characterizing vanilla flavor of the Product. By mislabeling its Product in violation of federal and state regulation, Defendant induced Plaintiff and members of the Class to purchase Products that were of lesser value and quality than advertised thereby enriching itself at consumers' expense. Plaintiff seeks an order for the restitution and disgorgement of all monies from the sale of Defendant's Products that were unjustly acquired through unlawful acts.

## PARTIES

6.      Plaintiff is a citizen of San Francisco, California, in San Francisco County.

7.      On average, Plaintiff purchases four or five 5.3 ounce containers of the Product per month. Over the past five years, Plaintiff made those purchases of the Product at the Safeway grocery store located at 5290 Diamond Heights Boulevard, San Francisco, California. Previously, he purchased the Product at the Safeway grocery store located at 850 La Playa Street, San Francisco, California. In choosing the Product for purchase, Plaintiff saw the "Vanilla" representation on the front of the packaging. He would not have purchased the Product at a premium price or bought the Product at all had Plaintiff known the truth – that the unqualified "Vanilla" representation on the front of the packaging, which he relied upon in making his purchase, violated FDA regulations in that the vanilla flavor of the Product is not independently derived from the vanilla plant.

8.      Defendant Chobani LLC is a Delaware limited liability company with a principal place of business in Norwich, New York, Chenango County.

## JURISDICTION

9.      This court has personal jurisdiction over Defendant because it conducts and transacts business within California and contracts to supply and supplies goods within California.

10.      The Court has general subject matter jurisdiction over this unlimited civil case. The amount in controversy exceeds $25,000, and Plaintiff seeks equitable relief.

11.      Venue is proper in this Court because a substantial part of the events and

1   misrepresentations giving rise to Plaintiff's claims occurred in this county and Defendant has

2   intentionally availed itself of the laws and markets of this county through the promotion,

3   marketing, distribution, and sale of its Products here.

4                              **SUBSTANTIVE ALLEGATIONS**

5        12.    Vanilla comes from an orchid plant that originated in Mexico where it was first

6   cultivated. The vanilla flower produces a fruit pod, the vanilla bean, which is the raw material for

7   true vanilla flavor.

8        13.    Consumers want the vanilla flavor in food products to come from "real vanilla,"

9   *i.e.*, from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract.

10  Unfortunately, vanilla fraud is rampant. As in this case, companies – without properly labelling

11  their products in accordance with federal and state food regulations – adulterate their purported

12  vanilla flavored products with vanillin, a cheaper vanilla flavoring, in order to reap even larger

13  corporate profits from consumers. This conduct is particularly harmful in the marketplace because

14  other companies properly label their competing vanilla-flavored products.

15       14.    Vanillin can be produced from so-called "natural" sources that have nothing to do

16  with the vanilla plant, such as wood pulp, clove oil, and pine bark. Vanillin is far less expensive

17  than vanilla extract. Vanilla extract costs approximately $5-6 dollars per ounce, whereas vanillin

18  costs around $0.10 to $0.30 per ounce. Yet real vanilla is prized especially in non-baked foods

19  such as ice cream, custards, and yogurt. *See generally* https://www.bhg.com/recipes/how-

20  to/bake/when-to-use-pure-vanilla-extract-or-imitation-vanilla-in-dessert/ ("That same vanillin

21  flavor can be made without any real vanilla beans, so it's much more affordable (around $0.10 to

22  $0.30 per ounce). Imitation vanilla ($1, Target) can have ingredients such as lignin, clove oil, pine

23  bark, fermented bran, and several others. . . . For best results, use pure vanilla extract (or paste) for

24  no-bake treats, simmered sauces and custards, and frozen desserts.").

25       15.    Section 401 of the Federal Food, Drug and Cosmetic Act ("FFDCA") directs the

26  FDA to establish standards and rules for food labelling where necessary to promote honesty and

27  fair dealing in the interest of consumers. The authority granted by Congress to the FDA enables

28  the agency to combat an economic problem: the marketing of foods from which traditional

constituents are removed or in which new or different (often cheaper and artificial) ingredients are substituted. As such, the federal food standards are not safety standards, but rather, as the FDA explains, intended to "protect consumers from contaminated products and economic fraud" and have served as "a trusted barrier against substandard and fraudulently packaged food since their enactment in the 1938 FFDCA."

16.     In order to combat vanilla fraud, the FDA has strict rules regarding use of the term "vanilla" on the labels of food products.

17.     Only vanilla flavor independently derived from the vanilla plant is allowed to be labelled "vanilla" without any qualifiers. If the characterizing vanilla flavor comes in any part from non-vanilla plant sources, the FDA mandates that the label must so inform consumers by including "Natural" or "Artificial" "Flavored" or "With Other Natural Flavor," in letters not less than one-half the height of the letters used for "Vanilla" and immediately adjacent to "Vanilla." 21 C.F.R. § 101.22(i)(1).

18.     More specifically, 21 C.F.R. § 101.22(i)(1)(iii) provides:

> If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

19.     California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875 et seq. ("Sherman Law"), adopts all FDA regulations as state regulations (Section 110100).

20.     Scientific testing of the Product by the Mass Spectrometry Facility, Food Innovation Center North, revealed that the characterizing vanilla flavor of the Product does not come independently from vanilla extract or other ingredients derived from the vanilla plant. Instead, the Product's vanilla flavor is spiked with vanillin, a vanilla flavor ingredient not derived from the vanilla plant, which simulates, resembles, or reinforces the vanilla flavor of the Product. *See* Mass Spectrometry Laboratory Analysis Report #7632, dated March 11, 2020, attached as Exhibit A.

21.     This conclusion is supported by the report's GC-MS analysis, shown below. GC-

MS analysis is the method laboratories typically rely on in determining the presence of vanilla flavor components, because it is capable of detecting trace levels of compounds and there is minimal to no degradation of compounds in the extraction and detection process.

22.    Testing of Defendant's Product reveals vanillin (MS Scan # 1016) at 81.748 parts per million or PPM.

Table 1

Sheehan & Associates, P.C., Project #7632
Chobani Vanilla Greek Yogurt
Production Code: L4 36 8216
Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS

Data File = TSQA3914

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 11 | 40159 | diacetyl | 0.030 |
| 54 | 59959 | acetic acid | 0.045 |
| 194 | 1543348 | acetoin | 1.150 |
| 296 | 329010 | butyric acid | 0.245 |
| 309 | 35256 | hexanal | 0.026 |
| 326 | 337712 | ethyl lactate | 0.252 |
| 364 | 9511 | 2-methylbutyric acid | 0.007 |
| 384 | 1917 | furfuryl alcohol | 0.001 |
| 436 | 3048634 | lactic acid + trace of dimethylsulfoxide co-eulting | 2.271 |
| 464 | 549461 | dimethyl sulfone | 0.409 |
| 556 | 4160871 | hexanoic acid + trace of benzaldehyde | 3.099 |
| 565 | 25358 | octanal | 0.019 |
| 578 | 18546 | 2,4-heptadienal | 0.014 |
| 614 | 18311 | benzyl alcohol | 0.014 |
| 627 | 37594 | benzene acetaldehyde | 0.028 |
| 637 | 293834 | heptanoic acid | 0.219 |
| 663 | 4865 | 2-nonanone | 0.004 |
| 672 | 28231 | guaiacol | 0.021 |
| 680 | 386676 | nonanal | 0.288 |
| 698 | 43113 | cyclohexanecarboxylic acid | 0.032 |
| 707 | 128326 | maltol | 0.096 |
| 768 | 11589359 | octanoic acid | 8.633 |
| 790 | 23701282 | benzoic acid | 17.655 |
| 798 | 1342461 | naphthalene-d8 (internal standard) | 1.000 |
| 815 | 149763 | methyl nonanoate | 0.112 |
| 857 | 5204334 | nonanoic acid | 3.877 |
| 891 | 52126 | 2-undecanone | 0.039 |
| 905 | 111828 | 2,4-decadienal + glyceryl triacetate (Triacetin) | 0.083 |
| 955 | 9991798 | decanoic acid | 7.443 |
| 1016 | 109743912 | vanillin | 81.748 |
| 1041 | 806289 | 4-hydroxy-3-methoxybenzyl alcohol | 0.601 |
| 1058 | 28009 | 2-tridecanone | 0.021 |
| 1076 | 113684 | delta-decalactone | 0.085 |
| 1089 | 56876 | ? | 0.042 |
| 1108 | 3022639 | lauric acid | 2.252 |
| 1129 | 52639 | ethyl laurate | 0.039 |
| 1217 | 27908 | gamma-dodecalactone | 0.021 |
| 1246 | 70606 | delta-dodecalactone | 0.053 |
| 1261 | 176983 | myristic acid | 0.132 |
| 1288 | 31034 | ethyl myristate | 0.023 |
| 1484 | 52017 | ethyl palmitate | 0.039 |
| | | **Total (excluding internal standard)** | 131.165 |

*See* Exhibit A at page 5.

23. Although vanillin is one of the many aromatic compounds found in vanilla extract, the amount of vanillin found in Defendant's Product demonstrates that the vanillin here is not from vanilla extract but is instead a flavoring agent that was added to the Product to simulate, resemble, or reinforce the Product's vanilla flavor. Moreover, the testing did not detect other aromatic compounds that would exist if vanilla extract or other ingredients derived from the vanilla was the source of the vanillin found in the Product.

24. A comparison of the Product with other competing products that comply with FDA labelling requirements is revealing.

25. As seen below, Defendant's competitor Siggi's, like Defendant, also labels its yogurt simply "Vanilla" with no qualifiers.

26. Siggi's, however, uses only vanilla extract to give its yogurt vanilla flavor.



27. Telling, the GC-MS analysis of Siggi's vanilla yogurt, which is flavored with "Madagascar Bourbon Vanilla," shows vastly different results on its GC-MS analysis. Testing of Siggi's vanilla yogurt revealed vanillin (MS Scan # 999) at a mere 0.2556 PPM compared to the

1  Product's level of vanillin at 81.748 PPM. Moreover, the GC-MS analysis of Siggi's vanilla yogurt

2  detected the presence of aromatic compounds associated with real vanilla that are not found in

3  Defendant's Product.

**Sheehan & Associates, P.C., Project #7632**
**Siggi's Vanilla Yogurt**
**Production Code: PL#36-8579**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3922

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 14-38 | 178276 | diacetyl | 0.0291 |
| 231 | 82546 | acetic acid | 0.0135 |
| 310 | 1081254 | acetoin | 0.1767 |
| 333 | 34525 | hexanal | 0.0056 |
| 369 | 811365 | butyric acid | 0.1326 |
| 407 | 10861 | 3-methylbutyric acid | 0.0018 |
| 418 | 21341 | 2-methylbutyric acid | 0.0035 |
| 437 | 18973 | furfuryl alcohol | 0.0031 |
| 449 | 60333 | pentanoic acid | 0.0099 |
| 504-530 | 17661628 | lactic acid + dimethyl sulfone | 2.8863 |
| 600 | 5354788 | hexanoic acid | 0.8751 |
| 666 | 321338 | heptanoic acid | 0.0525 |
| 679 | 25642 | 2-nonanone | 0.0042 |
| 689 | 55199 | guaiacol | 0.0090 |
| 694 | 945991 | methyl furoate | 0.1546 |
| 740 | 472525 | maltol | 0.0772 |
| 782 | 3810634 | octanoic acid | 0.6227 |
| 808 | 6119213 | naphthalene-d8 (internal standard) | 1.0000 |
| 822 | 29043096 | benzoic acid | 4.7462 |
| 834 | 840419 | hydroxymethylfurfural (HMF) + methyl nonanoate | 0.1373 |
| 857 | 50850 | benzene acetic acid | 0.0083 |
| 869 | 4050023 | nonanoic acid | 0.6619 |
| 885 | 138951 | 2-undecanone | 0.0227 |
| 902 | 152902 | propyl nonanoate | 0.0250 |
| 909 | 61206 | 2,4-decadienal | 0.0100 |
| 926 | 63657 | benzene propanoic acid | 0.0104 |
| 955 | 11695964 | decanoic acid | 1.9114 |
| 989 | 278816 | propyl decanoate | 0.0456 |
| 999 | 1564130 | vanillin | 0.2556 |
| 1021 | 207663 | undecanoic acid | 0.0339 |
| 1038 | 69185 | vanillyl ethyl ether | 0.0113 |
| 1053 | 37172 | 2-tridecanone | 0.0061 |
| 1073 | 64192 | delta-decalactone | 0.0105 |
| 1108 | 4110080 | lauric acid | 0.6717 |
| 1126 | 115725 | ethyl laurate | 0.0189 |
| 1177 | 22500 | tridecanoic acid | 0.0037 |
| 1200 | 34107 | gamma-dodecalactone | 0.0056 |
| 1212 | 46089 | 2-pentadecanone | 0.0075 |
| 1240 | 81361 | delta-dodecalactone | 0.0133 |
| 1249 | 32998 | myristoleic acid | 0.0054 |
| 1256 | 306075 | myristic acid | 0.0500 |
| 1282 | 10130 | ethyl myristate | 0.0017 |
| 1474 | 28477 | ethyl palmitate | 0.0047 |
| | | **Total (excluding internal standard)** | **13.7359** |

CLASS ACTION COMPLAINT

9

28.     Another competing vanilla yogurt product that is labeled similarly to the Product is Yoplait's "Oui" brand yogurt. As seen below Yoplait labels its vanilla Oui yogurt simply "Vanilla" with no qualifiers. Yoplait uses only "Vanilla Extract" to flavor its Oui product.



29.     The GC-MS analysis of the Oui vanilla yogurt is similar to that of Siggi's and revealed vanillin (MS Scan # 993) at 1.783 PPM, compared to the Defendant Product's level at 81.748 PPM, and detected the presence of various aromatic compounds associated with real vanilla that are not found in Defendant's Product.

**Sheehan & Associates, P.C., Project #7632-1**
**Yoplait Oui French Style Vanilla Yogurt**
**Production Code:RCM2 26525**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3919

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 26 | 2133371 | diacetyl | 0.294 |
| 173 | 2481795 | acetic acid | 0.342 |
| 254 | 56061668 | acetoin | 7.715 |
| 361 | 5600484 | butyric acid | 0.771 |
| 367 | 3260072 | ethyl lactate | 0.449 |
| 408 | 4212737 | 1,2-propylene glycol | 0.580 |
| 429 | 88226 | hexyl alcohol | 0.012 |
| 442 | 86563 | 2-heptanone | 0.012 |
| 459 | 57638 | heptanal | 0.008 |
| 501 | 4641042 | lactic acid | 0.639 |
| 537 | 2921055 | dimethyl sulfone | 0.402 |
| 587 | 7124211 | hexanoic acid | 0.980 |
| 593 | 116243 | 2,4-heptadienal | 0.016 |
| 616 | 64178 | 3,4-dimethyl-2,5-furandione + trace of limonene | 0.009 |
| 636 | 95767 | benzene acetaldehyde | 0.013 |
| 640 | 182736 | trans-2-octenal | 0.025 |
| 654 | 290262 | heptanoic acid | 0.040 |
| 670 | 119023 | 2-nonanone | 0.016 |
| 680 | 234267 | guiaicol | 0.032 |
| 686 | 299981 | nonanal | 0.041 |
| 720 | 141094 | maltol | 0.019 |
| 763 | 6800530 | octanoic acid | 0.936 |
| 782 | 8114389 | benzoic acid | 1.117 |
| 789 | 102301 | 2-methoxy-4-methylphenol (p-methylguiaicol) | 0.014 |
| 801 | 7266374 | naphthalene-d8 (internal standard) | 1.000 |
| 851 | 4470919 | nonanoic acid | 0.615 |
| 870 | 116469 | 2-undecanone | 0.016 |
| 874 | 44069 | nonanoic acid, propylene glycol monoester (isomer) | 0.006 |
| 882 | 238468 | delta-nonalactone | 0.033 |
| 891 | 86335 | nonanoc acid, propylene glycol monoester | 0.012 |
| 902 | 159536 | 2,4-decadienal | 0.022 |
| 937 | 3287814 | decanoic acid | 0.452 |
| 955 | 108660 | ethyl decanoate | 0.015 |
| 976 | 89589 | 2-hexenal propylene glycol cyclic acetal (syn) | 0.012 |
| 982 | 38142 | 2-hexenal propylene glycol cyclic acetal (anti) | 0.005 |
| 993 | 12953076 | vanillin | 1.783 |
| 1008 | 236725 | decanoic acid, propylene glycol monoester | 0.033 |
| 1020 | 64693 | decanoic acid, propylene glycol monoester (isomer) | 0.009 |
| 1030 | 25513 | vanillyl ethyl ether | 0.004 |
| 1038 | 79272 | decanal, propylene glycol cyclic acetal | 0.011 |
| 1047 | 157511 | 2-tridecanone | 0.022 |
| 1067 | 896209 | delta-decalactone | 0.123 |
| 1094 | 474872 | lauric acid | 0.065 |
| 1121 | 92241 | ethyl laurate | 0.013 |
| 1208 | 89661 | gamma-dodecalactone | 0.012 |
| 1214 | 147133 | vanillin, propylene glycol cyclic acetal | 0.020 |
| 1235 | 153919 | delta-dodecalactone | 0.021 |
| 1250 | 201591 | myristic acid | 0.028 |
| 1277 | 22196 | ethyl myristate | 0.003 |
| 1312 | 84890 | vanillin glyceryl acetal | 0.012 |
| 1427 | 58550 | delta-tetradecalactone | 0.008 |
| 1433 | 24760 | palmitic acid | 0.003 |
| 1467 | 37222 | ethyl palmitate | 0.005 |
| | | **Total (excluding internal standard)** | **17.845** |

CLASS ACTION COMPLAINT
11

30.    In other words, Defendant's Product contains vanillin in levels that are more than **45 times** that of Oui and more than **319 times** that of Siggi's. Thus, the scientific testing of the Product and other properly labeled products, demonstrates that the Product relies upon added vanillin, not from the vanilla plant, to boost its vanilla flavor. Defendant violated 21 C.F.R. § 101.22(i)(1) by using "Vanilla" alone on its front label.

31.    Other competing vanilla yogurt products that add non-vanilla plant flavorings so indicate on the front of their products. The following are just a few such yogurts that add the "With Other Natural Flavor" qualifier to their "Vanilla" label.

 



32.     These products are priced materially less than Defendant's Product. For example, in the San Francisco Safeway grocery store located at 5290 Diamond Heights Boulevard on or about November 2, 2022, the Lucerne Greek vanilla yogurt was priced $4.49 for the 32 ounce container or $0.14 per ounce; the Oikos Blended Greek vanilla yogurt was priced $6.49 for the 32 ounce container or $0.20 per ounce; Brown Cow vanilla yogurt was priced $4.99 for the 32 ounce container or $0.16 per ounce, and the Yoplait Original vanilla yogurt was priced $3.79 for the 32 ounce container or $0.12 per ounce. In contrast, Defendant's Product was priced $6.99 for the 32 ounce size or $0.22 per ounce.

33.     In sum, whereas many competing yogurt products in the marketplace comply with federal regulation, 21 C.F.R. § 101.22(i)(1), Defendant's Product does not. Defendant charges more for its Products than it otherwise could by violating FDA labelling regulations.

**RELIANCE AND ECONOMIC INJURY**

34.     Plaintiff sought a yogurt product whose vanilla flavor is independently derived from the vanilla plant.

35.     Plaintiff read and relied on Defendant's label on the Product that states "Vanilla"

1   to believe that the flavor of the Product was vanilla and that the Product's vanilla flavor came

2   independently from the vanilla plant.

3       36.     Had Plaintiff known the truth – that the label Plaintiff relied upon in making the

4   purchase was unlawful in that the vanilla flavor of the Product does not come independently from

5   the vanilla plant – Plaintiff would not have purchased the Product at a premium price or bought

6   the Product at all.

7       37.     The Product costs more than vanilla-flavored yogurt products that disclose added

8   flavoring on the front label.

9       38.     By engaging in its unlawful labelling, Defendant reaped and continues to reap

10  increased sales and profits.

11                          **CLASS ACTION ALLEGATIONS**

12      39.     Plaintiff brings this action as a class action pursuant to section 382 of the California

13  Code of Civil Procedure. On all claims, Plaintiff brings this action on behalf of:

14          All persons in California who purchased Defendant's Product from November
            18, 2018, to the date of judgment.
15

16  (the "Class").

17      40.     Excluded from the Class are officers and directors of Defendant, members of the

18  immediate families of the officers and directors of Defendant, and their legal representatives, heirs,

19  successors, or assigns, and any entity in which they have or have had a controlling interest.

20      41.     Certification of Plaintiff's claims for class-wide treatment is appropriate because

21  Plaintiff can prove the elements of his claim on a class-wide basis using the same evidence as

22  individual Class members would use to prove those elements in individual actions alleging the

23  same claims.

24      42.     <u>Numerosity</u>. The Class is so numerous that the individual joinder of all of its

25  members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes

26  that the total number of Class members is in the tens of thousands and that members of the Class

27  are geographically dispersed across California. While the exact number and identities of the Class

28  members are unknown at this time, such information can be ascertained through appropriate

investigation and discovery.

43.      Well-Defined Community of Interest. As further alleged below, there is a well-defined community of interest with respect to the Class because there are (1) predominant common questions of law or fact; (2) a Class representative with claims or defenses typical of the Class; and (3) a Class representative who can adequately represent the Class.

44.      Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, whether Defendant's labelling of its Product constitutes an unlawful consumer sales practice.

45.      Plaintiff's claims are typical of those of the Class because, like all members of the Class, he purchased a Product bearing the unqualified "Vanilla" representation on the front of the packaging in a typical consumer setting and sustained injury from Defendant's wrongful conduct.

46.      Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

47.      Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is impracticable. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

48.    This action is maintainable as a class action under the California Code of Civil Procedure for monetary relief because the common questions of law and fact identified above, without limitation, predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.    <u>Notice</u>. Plaintiff and his counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

**CAUSE OF ACTION**
**(Violation of California Business & Professions Code § 17200 *et seq.* –**
**Unlawful Conduct Prong of California's Unfair Competition Law)**
**On Behalf of Plaintiff and the Class**

50.    Plaintiff realleges and incorporates by reference the paragraphs stated above in this Class Action Complaint as set forth herein.

51.    California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

52.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant, as alleged herein, constitute "unlawful" business acts and practices in that they violate the FFDCA and its implementing regulations.

53.    More specifically, the Product is unlawfully labelled because its label violates 21 C.F.R. § 101.22(i), including subsection (i)(1)(iii) that provides:

> If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

54.    Defendant's conduct also violates the Sherman Law, which adopts all FDA regulations as state regulations (Section 110100).

55.    The challenged statement made and actions taken by Defendant violate the FFDCA and the Sherman Law and therefore violate the "unlawful" prong of the UCL.

56.     Defendant leveraged its unlawful conduct to induce Plaintiff and members of the Class to purchase Products that were of lesser value and quality than advertised. Defendant's unlawful conduct caused Plaintiff and members of the Class to suffer injury and to lose money, as it denied them the benefit of the bargain when they decided to purchase Defendant's Product over other products that are properly labeled and less expensive.

57.     Had Plaintiff and the members of the Class been aware of Defendant's unlawful tactics – that the unqualified "Vanilla" representation on the front of the packaging, which they relied upon in making their purchase, violated FDA regulations in that the vanilla flavor of the Product is not independently derived from the vanilla plant, they would not have purchased Defendant's Product at all or would have paid less than what they did for it.

58.     Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of Defendant's Products that were unjustly acquired through unlawful acts and practices.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiff prays for judgment as follows:

-      Certification of the Class, certifying Plaintiff as representative of the Class and designating his counsel as counsel for the Class;

-      A declaration that Defendant has committed the violations alleged herein;

-      Restitution and disgorgement pursuant California Business & Professions Code § 17200 *et seq.*;

-      For attorneys' fees;

-      For costs of suit incurred; and

-      For such further relief as this Court may deem just and proper.

1

## JURY TRIAL DEMANDED

2      Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this

3   lawsuit.

4

5                                          Respectfully submitted,

6   Date: November 18, 2022               **REESE LLP**

7                               By:  _/s/ Sue J. Nam_
                                     Sue J. Nam (State Bar No. 206729)
8                                    *snam@reesellp.com*
                                     Michael R. Reese (State Bar No. 206773)
9                                    *mreese@reesellp.com*
                                     100 West 93rd Street, 16th Floor
10                                   New York, New York 10025
                                     Telephone: (212) 643-0500
11                                   Facsimile: (212) 253-4272

12                                   **REESE LLP**
                                     George V. Granade (State Bar No. 316050)
13                                   *ggranade@reesellp.com*
                                     8484 Wilshire Boulevard, Suite 515
14                                   Los Angeles, California 90211
                                     Telephone: (310) 393-0070

15
                                     **SHEEHAN & ASSOCIATES, P.C.**
16                                   Spencer Sheehan (*pro hac vice* to be filed)
                                     *spencer@spencersheehan.com*
17                                   60 Cuttermill Road, Suite 409
                                     Great Neck, New York 11021
18                                   Telephone: (516) 303-0552

19                                   *Counsel for Plaintiff Mikhail Gershzon and the*
                                     *Proposed Class*
20

21

22

23

24

25

26

27

28

# EXHIBIT A



RUTGERS

New Jersey Agricultural
Experiment Station

Mass Spectrometry Facility
Food Innovation Center North
Rutgers, The State University of  NJ
63 Dudley Road
New Brunswick, NJ 08901-8520

Thomas G. Hartman, Ph.D.
Laboratory Director
hartmantg@aol.com
Phone: 848-932-5543
Fax: 732-932-6776

March 11, 2020

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
505 Northern Blvd
Suite 311
Great Neck, NY 11021

spencer@spencersheehan.com

## CONFIDENTIAL

## Mass Spectrometry Laboratory Analysis Report #7632

### Flavor Analysis of Chobani Vanilla Greek Yogurt

Dear Mr. Sheehan:

This is the report pertaining to the above-captioned samples that you submitted for flavor analysis.

**I      Sample Log**

The following samples were received for analysis:

1.     ·Chobani Vanilla Greek Yogurt, Production Code L4 36 8216

**II     Analysis Request**

The analysis request was to extract and analyze the flavor from the yogurt.

## III    Analysis Methodology

Yogurt was mixed and 10 g was transferred to a borosilicate glass test tube sealed with Teflon-lined, screw cap closure, matrix-spiked with 10 μg of naphthalene-$d_8$ internal standard (1.0 ppm w/v) and mixed thoroughly using a lab vortexor. The sample was thinned out by adding a few mL's of distilled water then divided into 4 equal portions, transferred to glass vials and extracted with equal volumes (1:1) of methylene chloride. The layers were allowed to separate and then the methylene chloride extracts isolated and pooled together. The pooled extracts were centrifuged 30 minutes at 2500 rpm to clarify (separate any water or emulsion) then dried with anhydrous sodium sulfate. The dried extract was concentrated under a gentle stream of nitrogen to a final volume of approximately 0.5 mL then transferred to a Purge & Trap apparatus (Scientific Instrument Services, Solid Sample P&T system) and subjected to Purge & Trap-Thermal Desorption-GC-MS analysis as follows:

## Purge & Trap-Thermal Desorption-GC-MS

Concentrated methylene chloride extract prepared as described above was evaporated to dryness in a stream of nitrogen gas inside the glass tubing of the purge & trap apparatus (SIS Solid Sample Purge & Trap Oven). Immediately upon reaching dryness the sample was subjected to P&T analysis by purging with nitrogen at 50 ml per minute for 30 minutes at 150°C. The exhaust of the P&T apparatus was fitted with a Tenax-TA adsorbent trap. The traps were then connected to the Short Path Thermal Desorption system and thermally desorbed directly into the GC-MS system for final analysis (SIS Model TD-4 Short Path Thermal Desorber). The thermal desorption conditions were 250°C for 5 minutes.

## GC-MS Analysis Methodology

Analyses of Tenax traps prepared as described above were conducted using a Scientific Instrument Services (SIS) model TD4 Short Path Thermal Desorber interfaced to the Varian 3400 GC directly coupled to a Finnigan TSQ-7000 triple stage quadrapole tandem mass spectrometer equipped with an Xcaliber data system. Thermal desorption conditions were 250°C for 5 minutes using sub-ambient, cryogenic GC column temperature programming. The GC was equipped with a 60 meter x 0.32 mm i.d. Guardian-ZB-5MS capillary column with a 1.0 μm

film thickness (Phenomonex).  The mass spectrometer was operated in electron ionization mode (70 eV) scanning masses 35-350 once each second.

## Materials

Naphthalene-$d_8$ used as internal standard for the study was purchased from Sigma-Aldrich Chemical Co, St. Louis MO.   Methylene chloride was purchased from Thermo Fisher Scientific.  All thermal desorption supplies were purchased from Scientific Instrument Services, Inc., Ringoes, NJ.

## IV    Results

The GC-MS analysis data for the yogurt flavor is summarized in Table 1. The GC-MS chromatogram corresponding to the Table is presented in Figure 1. From left to right, the Table lists the MS scan number (from centroid of peak), peak area integration, peak identification and then concentration data expressed in parts per million (ppm w/v).  The data is semi-quantitative and based on peak area ratio to the matrix-spiked internal standard (naphthalene-$d_8$) assuming a detector response factor of 1.0 with no correction for extraction efficiency.

If you have any questions or if I can be of further assistance to you then please don't hesitate to contact me.

Respectfully Submitted,

Thomas G. Hartman, Ph.D.
Mass Spectrometry Lab Director
& Research Professor

## Attachments

- ▸ Table 1, Analysis Results Summary

- ▸ Figure 1, GC-MS Chromatogram

- ▸ Analysis Data Forms

- ▸ Photo of Test Sample

**Table 1**

**Sheehan & Associates, P.C., Project #7632**
**Chobani Vanilla Greek Yogurt**
**Production Code: L4 36 8216**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3914

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 11 | 40159 | diacetyl | 0.030 |
| 54 | 59959 | acetic acid | 0.045 |
| 194 | 1543348 | acetoin | 1.150 |
| 296 | 329010 | butyric acid | 0.245 |
| 309 | 35256 | hexanal | 0.026 |
| 326 | 337712 | ethyl lactate | 0.252 |
| 364 | 9511 | 2-methylbutyric acid | 0.007 |
| 384 | 1917 | furfuryl alcohol | 0.001 |
| 436 | 3048634 | lactic acid + trace of dimethylsulfoxide co-eulting | 2.271 |
| 464 | 549461 | dimethyl sulfone | 0.409 |
| 556 | 4160871 | hexanoic acid + trace of benzaldehyde | 3.099 |
| 565 | 25358 | octanal | 0.019 |
| 578 | 18546 | 2,4-heptadienal | 0.014 |
| 614 | 18311 | benzyl alcohol | 0.014 |
| 627 | 37594 | benzene acetaldehyde | 0.028 |
| 637 | 293834 | heptanoic acid | 0.219 |
| 663 | 4865 | 2-nonanone | 0.004 |
| 672 | 28231 | guiaicol | 0.021 |
| 680 | 386676 | nonanal | 0.288 |
| 698 | 43113 | cyclohexanecarboxylic acid | 0.032 |
| 707 | 128326 | maltol | 0.096 |
| 768 | 11589359 | octanoic acid | 8.633 |
| 790 | 23701282 | benzoic acid | 17.655 |
| 798 | 1342461 | naphthalene-d8 (internal standard) | 1.000 |
| 815 | 149763 | methyl nonanoate | 0.112 |
| 857 | 5204334 | nonanoic acid | 3.877 |
| 891 | 52126 | 2-undecanone | 0.039 |
| 905 | 111828 | 2,4-decadienal + glyceryl triacetate (Triacetin) | 0.083 |
| 955 | 9991798 | decanoic acid | 7.443 |
| 1016 | 109743912 | vanillin | 81.748 |
| 1041 | 806289 | 4-hydroxy-3-methoxybenzyl alcohol | 0.601 |
| 1056 | 28009 | 2-tridecanone | 0.021 |
| 1076 | 113684 | delta-decalactone | 0.085 |
| 1089 | 56876 | ? | 0.042 |
| 1108 | 3022639 | lauric acid | 2.252 |
| 1129 | 52639 | ethyl laurate | 0.039 |
| 1217 | 27908 | gamma-dodecalactone | 0.021 |
| 1246 | 70606 | delta-dodecalactone | 0.053 |
| 1261 | 176983 | myristic acid | 0.132 |
| 1288 | 31034 | ethyl myristate | 0.023 |
| 1484 | 52017 | ethyl palmitate | 0.039 |
| **Total (excluding internal standard)** | | | **131.165** |



RT: 0.00 - 45.02

NL:
4.14E8
m/z=
35.0-43.0+
45.0-350.0
MS
TSQA3914

TSQA3914
Type: Unknown ID: 1 Row: 1
Sample Name:            Chobani Vanilla Greek Yogurt (Production Code: L4 36
                       8216), DCM Extract, 150C/30min, matrix spiked with w/w
                       1.0ppm Int. Std. by P&T-TD-GC-MS
Study:
Client:                Sheehan & Associates, P.C., LLN7632
Laboratory:            Mass Spectrometry - Dr. Tom Hartman
Company:
Phone:
Instrument Method:     C:\Xcalibur\methods\voc45solventdelay8min.meth
Processing Method:
Vial:                  1
Injection Volume (µl): 10.00
Sample Weight:         0.00
Sample Volume (µl):    0.00
ISTD Amount:           0.00
Dil Factor:            1.00

## *SHORT PATH THERMAL DESORPTION DATA FORM*
## *MASS SPECTROMETRY LABORATORY*

ANALYST: Joe Scarsella        PROJECT #: 7632        DATE: 3/5/2020

PROJECT SPONSOR: Sheehan and Associates

INSTRUMENT: SCIENTIFIC INSTRUMENT SERVICES INC., (SIS) MODEL TD-2
SHORT PATH THERMAL DESORPTION SYSTEM & ACCESSORIES

TYPE OF ANALYSIS:  ☐ DIRECT THERMAL DESORPTION (DTD)

☒ PURGE & TRAP - THERMAL DESORPTION (P&T-TD)

### *PURGE & TRAP AND DIRECT THERMAL DESORPTION CONDITIONS:*

SAMPLE DESCRIPTION: Chobani Vanilla Greek Yogurt

SAMPLE SIZE: —        SAMPLE MATRIX:  ☐ GAS  ☐ LIQUID  ☒ SOLID

PURGE & TRAP APPARATUS:  ☒ SIS SOLID MATRIX SAMPLING OVEN

☐ SIS LIQUID PURGE VESSEL  ☐ WHEATON LIQUID SAMPLER  ☐ SKC PUMP

☐ CUSTOM APPARATUS:

PURGE GAS: ☒ NITROGEN  ☐ HELIUM  ☐ AIR   PURGE GAS FLOW RATE: 50 mL/min

PURGE & TRAP TIME: 30 min   TEMPERATURE: 150°C   DRY PURGE TIME: —

ADSORBENT TRAP: ☒ TENAX  ☐ CARBOXEN-569  ☐ OTHER:

ADSORBENT TRAP BED VOLUME:    ☐ 2cm   ☐ 4cm   ☒ 6cm   ☐ 8cm

GLT DESORPTION TUBE INSIDE DIAMETER:   ☐ 3mm i.d.   ☒ 4mm i.d.

INTERNAL STANDARD: naphthalene-d8 benzene-d6, toluene-d8,   AMOUNT INTERNAL STANDARD: 1.0 ppm w/w

INTERNAL STANDARD SPIKE: ☒ MATRIX SPIKE  ☐ ADSORBENT TRAP SPIKE

### *THERMAL DESORPTION CONDITIONS:*

DESORPTION TEMP.: 250°C    DESORPTION TIME: 5 min    INJ. TIME: 30 sec

INITIAL PURGE TIME: 10 sec       TYPE OF ANALYSIS :   ☐ GC   ☒ GC-MS

COMMENTS:

# TSQ-7000 MASS SPECTROMETRY ANALYSIS DATA FORM
## MASS SPECTROMETRY LABORATORY

DATA FILE(S): TSQA 3914    PROJECT #: 7632    DATE: 3/5/2020

PROJECT SPONSOR: Sheehan and Associates    ANALYST: Joe Scarsella

SAMPLE DESCRIPTION: Chobani Vanilla Greek Yogurt

## GC CONDITIONS:

INSTRUMENT: *Varian 3400*    COLUMN: ZB5-MS    SERIAL #: →

LENGTH: 60m    DIAMETER: 0.32mm    FILM THICKNESS: 1.0 um

TYPE OF INJECTION:    ☒ SPLIT    ☐ SPLITLESS    ☐ ON-COLUMN
                     ☐ HEADSPACE    ☒ THERMAL DESORPTION

INJ. LINER: ☐ CYCLOID ☐ 2mm Direct ☒ 4mm Direct ☐ _____ (Other)

INJECTION VOLUME: ―    INJECTOR TEMPERATURE: 250°C

SEPTUM PURGE:    ☒ YES    ☐ NO    SPLIT RATIO: 10:1

CARRIER GAS: He    CARRIER FLOW (ml/min.): ―    or PSI HEAD PRESS.: 20psi

TEMP. PROGRAM: -20°C → 260°C @ 10°c/min

GC-MS INTERFACE LINE TEMPERATURE : 280°C    GC MAINTENANCE:

☒ SEPTUM CHANGE    ☐ CLEAN & SILANIZE INJ. LINER    ☒ Column Bakeout

## MASS SPECTROMETER CONDITIONS:

INSTRUMENT: *Finnigan MAT TSQ7000*    DATA SYSTEM: *Xcaliber*

IONIZATION MODE: ☒ EI (70 eV) ☐ CI ☒ +ION ☐ -ION ☐ CID (MS-MS)

IF CI THEN INDICATE REAGENT GAS ☐ METHANE    ☐ ISOBUTANE ☐ AMMONIA

ION SOURCE TEMP.: 185°C    FILAMENT EMISSION CURRENT: 400 uA

TYPE OF ANALYSIS: ☒ GC-MS ☐DCI ☐EI/CI DIRECT PROBE ☐BATCH INLET

☐ SIM MODE: ION(s) MONITORED: ―

☐ MS-MS MODE: CID PRESSURE mT: ―    COLLISION ENERGY V: ―

☐ SRM MODE: DAUGHTER ION(S) MONITORED: ―

DCI OR DIRECT PROBE TEMPERATURE RAMP: ―

MASS RANGE: 35-350    SCAN RATE (seconds/decade): 1.0 sec

TUNE FILE: ei_tune    METHOD FILE: Voc45 solventdelay8min.meth

COMMENTS: _____





NO GMO INGREDIENTS     LIVE CULTURES

## Nutrition Facts

About 5 servings per container

Serving size        3/4 cup (170g)

Amount per serving

**Calories**                    **130**

| | % Daily Value* |
|---|---|
| **Total Fat** 0g | **0%** |
| Saturated Fat 0g | **0%** |
| Trans Fat 0g | |
| **Cholesterol** 10mg | **3%** |
| **Sodium** 65mg | **3%** |
| **Total Carbohydrate** 16g | **6%** |
| Dietary Fiber <1g | **3%** |
| Total Sugars 14g | |
| Incl. 10g Added Sugars | **20%** |
| **Protein** 14g | **28%** |

Vit. D 0mcg 0% • Calcium 169mg 15%

Iron 0mg 0% • Potas. 220mg 4%

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

Questions or comments? 1.877.847.6181

GRADE A ⓊⒹ KEEP REFRIGERATED

A portion of profits for a better world

**Ingredients:** Cultured nonfat milk, cane sugar, water, fruit pectin, natural flavors, guar gum, lemon juice concentrate, vanilla extract.

**6 live and active cultures:** S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus, L. Casei, and L. Rhamnosus.

Chobani, LLC, New Berlin, NY 13411

© 2019 Chobani, LLC

**chobani.com**

# Exhibit B

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Claudia Vetesi (State Bar No. 233485)<br>Morrison & Foerster LLP, 425 Market St., San Francisco, CA 94105<br><br>TELEPHONE NO.: 1(415) 268-6626    FAX NO. *(Optional):*<br>E-MAIL ADDRESS: CVetesi@mofo.com<br>ATTORNEY FOR *(Name):* Defendant, Chobani LLP | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civil Division

**ELECTRONICALLY**
# FILED
*Superior Court of California,*
*County of San Francisco*

**12/08/2022**
Clerk of the Court
BY: ERNALYN BURA
Deputy Clerk

CASE NAME:
Gershzon v. Chobani LLC

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>CGC-22-603042 |
|---|---|---|---|
| [x] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [x] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is    [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [x] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* One. Violation of Cal. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.
5. This case [x] is    [ ] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: December 7, 2022
Claudia Vetesi
_____
(TYPE OR PRINT NAME)                    ► *Claudia Vetesi*    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

1    Claudia M. Vetesi, Bar No. 233485
     CVetesi@mofo.com
2    Nicole V. Ozeran, Bar No. 302321
     NOzeran@mofo.com
3    Lena Gankin, Bar No. 333047
     LGankin@mofo.com
4    Morrison & Foerster LLP
     425 Market Street
5    San Francisco, California 94105-2482
     Telephone:    415.268.7000
6    Facsimile:    415.268.7522

7
     Attorneys for Defendant
8    Chobani LLC

9

10                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                          COUNTY OF SAN FRANCISCO

12
                                            Case No. CGC-22-603042
13
     MIKHAIL GERSHZON, on behalf of
14   himself and all others similarly situated,   **DEFENDANT CHOBANI LLC'S**
                                                  **APPLICATION FOR COMPLEX**
15                Plaintiff,                       **DESIGNATION**

16        v.

17   CHOBANI LLC,

18                Defendant.

19

20

21

22

23

24

25

26

27

28

                                    1

## I.    INTRODUCTION

This case should be designated as complex.[1]  This case is virtually identical to a putative class action, *Nacarino v. Chobani*, filed by the same Plaintiff's counsel over two years ago in the Northern District of California.  The two cases are premised on the same theory—that Chobani violated California's Unfair Competition Law, Business and Professions Code section 17200 et seq. ("UCL") by allegedly unlawfully labeling its Greek Yogurt Vanilla Blended product "vanilla" without disclosing natural flavors on the front label.  *Compare* Dkt. No. 51, Third Amended Complaint, *Nacarino v. Chobani LLC*, Case No. 20-cv-7437-EMC (N.D. Cal., filed Sept. 8, 2021), *with* Complaint, *Gershzon v. Chobani LLC*, Case No. CGC-22-603042 (San Francisco Superior Court, filed Nov. 18, 2022).[2]  The two cases seek to certify overlapping putative classes of California consumers, with the federal *Nacarino* case seeking to include persons in California who purchased the yogurt from October 23, 2016 to the date of judgment, and this case seeking to include persons in California who purchased the yogurt from November 18, 2018 to the date of judgment.  The only additional differences between the cases are the named plaintiffs and some of the remedies sought: both Ms. Nacarino and Mr. Gershzon seek equitable restitution and declaratory relief, but Mr. Gershzon (unlike Ms. Nacarino) does not seek injunctive relief.

This case should be designated complex for three reasons.

***First***, Chobani anticipates that, as in *Nacarino*, this case will involve numerous pretrial motions raising complicated legal issues.  In *Nacarino*, the parties briefed motions to dismiss several rounds of pleadings and are set to brief whether Mr. Nacarino is entitled to equitable restitution under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  The ruling on the *Sonner* motion will likely impact the scope of this matter given the overlapping classes and requests for relief.  The parties in *Nacarino* are also soon scheduled to brief class certification in Spring 2023.  Furthermore, Chobani anticipates that if the present matter proceeds past the pleading stage, a number of discovery and pretrial motions, including

---

[1] In connection with this filing, Defendant has paid the applicable complex litigation fee.
[2] Ms. Nacarino filed her original complaint against Chobani on October 23, 2020.

**DEFENDANT'S APPLICATION FOR COMPLEX DESIGNATION**

1    motions for class certification and/or summary judgment, may be filed.

2        ***Second***, if this case is not dismissed at the pleading stage, discovery will require

3    management of various witnesses and voluminous documentary evidence.  In *Nacarino*, the

4    pleadings are settled and the parties have served and responded to written discovery, noticed

5    depositions, produced documents, and briefed multiple discovery disputes.  Given the similar

6    claims, the parties here are also likely to engage in robust discovery.

7        ***Third***, and relatedly, this case will require coordination with the *Nacarino* action as the

8    cases seek to certify overlapping putative classes.  As such, to avoid potential conflicting

9    decisions and rulings, this case would benefit from active case management focused on the

10    efficient use of judicial resources and resolution of this case.

11        Accordingly, Chobani requests that this matter be designated complex under California

12    Rules of Court, Rule 3.400 ("Rule 3.400").

13        **II.    DISCUSSION**

14        A "complex" case is "an action that requires exceptional judicial management to avoid

15    placing unnecessary burdens on the court or the litigants and to expedite the case, keeps costs

16    reasonable, and promote effective decision making by the court, the parties, and counsel."  Cal. R.

17    Ct., Rule 3.400(a).  This is such a case, and the relevant factors in Rule 3.400(b) support granting

18    this application.

19        **Rule 3.400(b)(1): Numerous Pretrial Motions**

20        If this case proceeds in litigation, Chobani anticipates substantial substantive motion

21    practice on complex issues.  Chobani intends to challenge the complaint in this matter for failure

22    to state a viable claim.  Depending on the outcome of the *Sonner* motion in *Nacarino*, Chobani

23    may also challenge Plaintiff's request for the remedy of restitution.  In addition, Chobani will

24    oppose Plaintiff's anticipated motion for class certification and move for summary judgment.

25        **Rule 3.400(b)(2): Management of Witnesses and Documents**

26        If this case proceeds to discovery, the parties are likely to engage in discovery similar to

27    that in *Nacarino* given the overlap of factual allegations and claims.  In *Nacarino*, the plaintiff

28    propounded multiple sets of written discovery requests and noticed dozens of depositions.  The

parties engaged in multiple meet and confers and Chobani engaged in an extensive ESI document review and production.

This case will likely entail the same level of engagement, requiring the management and coordination of a large number of witnesses (including potential expert witnesses) and a substantial amount of documentary evidence. Close oversight of the discovery process and potential disputes would be particularly useful here given the related cases.

### Rule 3.400(b)(4): Coordination with Related Actions

As discussed above, given the similarity of this case and the related *Nacarino* action in the Northern District of California (which has been pending for two years), close coordination of the matters will be necessary. This is particularly true since the cases seek to certify overlapping California classes of consumers. For example, if the *Nacarino* class is certified, the putative class in this matter may be subsumed in the *Nacarino* matter. And as also discussed above, the parties in *Nacarino* are set to brief whether Ms. Nacarino is entitled to seek restitution in federal court. That ruling may affect how the parties approach this matter.

### Rule 3.400(a): Expediting the Case

For the reasons discussed above, this matter would benefit from active management given the anticipated motion practice, discovery process, and similarity to the related *Nacarino* action. Accordingly, the additional oversight of the Complex Department is necessary to ensure an efficient resolution of this matter.

### III.    CONCLUSION

For the foregoing reasons, this case presents complex case management issues. Chobani respectfully requests that the Court therefore designate this case as complex.

Dated: December 8, 2022              MORRISON & FOERSTER LLP


                                     By: _____
                                         Claudia M. Vetesi
                                         ***Attorneys for Defendant***
                                         ***Chobani LLC***

4

**DEFENDANT'S APPLICATION FOR COMPLEX DESIGNATION**

**PROOF OF SERVICE**

    I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California 94105-2482.  I am not a party to the within cause, and I am over the age of eighteen years.

    I further declare that on December 8, 2022, I served a copy of:

**DEFENDANT'S APPLICATION IN SUPPORT OF COMPLEX DESIGNATION**

☒    **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC 2.251]** by electronically mailing a true and correct copy through One Legal to the email address(es) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6 and CRC Rule 2.251.

*Please see attached service list.*

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed at San Francisco, CA this 8th day of December, 2022.

| Robert Jackson | /s/ Robert Jackson |
|:---:|:---:|
| (typed) | (signature) |

1

### SERVICE LIST

2

Michael R. Reese, Esq.
Sue J. Nam, Esq.
3 Reese LLP
100 West 93rd Street, 16th Floor
4 New York, NY  10025
Phone: (212) 643-0500
5 Email: mreese@reesellp.com
Email: snam@reesellp.com
6

7

*Attorneys for Plaintiff*
8 Mikhail Gershzon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit C

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Sue J. Nam (State Bar No. 206729)
Reese LLP, 100 West 93rd Street, 16th Floor, New York, New York 10025

TELEPHONE NO.: (212) 643-0500    FAX NO. *(Optional):* (212) 253-4272
E-MAIL ADDRESS: snam@reesellp.com
ATTORNEY FOR *(Name):* Plaintiff Mikhail Gershzon and the Proposed Class

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME: Civil Division

CASE NAME:
Gershzon v. Chobani LLC

*FOR COURT USE ONLY*

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/18/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **CGC-22-603042** JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* One; Violation of Cal. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: November 18, 2022

Sue J. Nam                                    ▶    /s/ Sue J. Nam
_____                 _____
(TYPE OR PRINT NAME)                             (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form    Save this form    Clear this form

1  **REESE LLP**
   Sue J. Nam (State Bar No. 206729)
2  *snam@reesellp.com*
   Michael R. Reese (State Bar No. 206773)
3  *mreese@reesellp.com*
   100 West 93rd Street, 16th Floor
4  New York, New York 10025
   Telephone: (212) 643-0500
5  Facsimile: (212) 253-4272

6  **REESE LLP**
   George V. Granade (State Bar No. 316050)
7  *ggranade@reesellp.com*
   8484 Wilshire Boulevard, Suite 515
8  Los Angeles, California 90211
   Telephone: (310) 393-0070
9  Facsimile: (212) 253-4272

10 **SHEEHAN & ASSOCIATES, P.C.**
   Spencer Sheehan (*pro hac vice* to be filed)
11 *spencer@spencersheehan.com*
   60 Cuttermill Road, Suite 409
12 Great Neck, New York 11021
   Telephone: (516) 303-0552
13 Facsimile: (516) 234-7800

14 *Counsel for Plaintiff Mikhail Gershzon and the Proposed Class*

15            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

16                **FOR THE COUNTY OF SAN FRANCISCO**

17

18 | MIKHAIL GERSHZON, on behalf of
   | himself and all others similarly situated,
19 |
   |                                              Case No. _____
20 |                   Plaintiff,
   |                                              **CLASS ACTION COMPLAINT**
21 | vs.
   |                                              **1. Violation of California's Unfair
22 | CHOBANI LLC,                                 Competition Law, Cal. Bus. & Prof. Code
   |                                              § 17200 *et seq.***
23 |                   Defendant.
   |                                              **DEMAND FOR JURY TRIAL**
24

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/18/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

**CGC-22-603042**

25

26

27

28

Plaintiff Mikhail Gershzon ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint against Chobani LLC ("Defendant" or "Chobani"). On the basis of personal knowledge, information and belief, and investigation of counsel, Plaintiff alleges as follows:

**INTRODUCTION**

1.    Defendant manufactures, distributes, markets, labels, and sells "Greek Yogurt Vanilla Blended" under the Chobani brand ("Product" or "Products").

2.    The Product was and is sold to consumers by third parties in different sizes including the 32 ounce container, the 5.3 ounce container, and the 4-pack of the 5.3 ounce, shown below.



1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21



22    3.    The Product, regardless of size or distribution channel, bears a common, uniform

23    label that states "Vanilla" on the front of the packaging.

24    4.    The Product is marketed as a premium yogurt. In the Safeway grocery store located

25    at 5290 Diamond Heights Boulevard, San Francisco, California, on or about November 2, 2022,

26    the 32 ounce size of the Product cost $6.99 or $0.22 per ounce, the 5.3 ounce size of the Product

27    cost $1.69 or $0.32 per ounce, and the 4-pack of the 5.3 ounce size of the Product cost $6.49 or

28    $0.31 per ounce.

5.    Defendant does not comply with FDA labelling requirements because it displays the "Vanilla" representation on the front of its package with no qualifiers, yet the Product has added vanillin, not from the vanilla plant, that simulates, resembles, or reinforces the characterizing vanilla flavor of the Product. By mislabeling its Product in violation of federal and state regulation, Defendant induced Plaintiff and members of the Class to purchase Products that were of lesser value and quality than advertised thereby enriching itself at consumers' expense. Plaintiff seeks an order for the restitution and disgorgement of all monies from the sale of Defendant's Products that were unjustly acquired through unlawful acts.

## PARTIES

6.    Plaintiff is a citizen of San Francisco, California, in San Francisco County.

7.    On average, Plaintiff purchases four or five 5.3 ounce containers of the Product per month. Over the past five years, Plaintiff made those purchases of the Product at the Safeway grocery store located at 5290 Diamond Heights Boulevard, San Francisco, California. Previously, he purchased the Product at the Safeway grocery store located at 850 La Playa Street, San Francisco, California. In choosing the Product for purchase, Plaintiff saw the "Vanilla" representation on the front of the packaging. He would not have purchased the Product at a premium price or bought the Product at all had Plaintiff known the truth – that the unqualified "Vanilla" representation on the front of the packaging, which he relied upon in making his purchase, violated FDA regulations in that the vanilla flavor of the Product is not independently derived from the vanilla plant.

8.    Defendant Chobani LLC is a Delaware limited liability company with a principal place of business in Norwich, New York, Chenango County.

## JURISDICTION

9.    This court has personal jurisdiction over Defendant because it conducts and transacts business within California and contracts to supply and supplies goods within California.

10.    The Court has general subject matter jurisdiction over this unlimited civil case. The amount in controversy exceeds $25,000, and Plaintiff seeks equitable relief.

11.    Venue is proper in this Court because a substantial part of the events and

1    misrepresentations giving rise to Plaintiff's claims occurred in this county and Defendant has
2    intentionally availed itself of the laws and markets of this county through the promotion,
3    marketing, distribution, and sale of its Products here.

4                                **SUBSTANTIVE ALLEGATIONS**

5           12.    Vanilla comes from an orchid plant that originated in Mexico where it was first
6    cultivated. The vanilla flower produces a fruit pod, the vanilla bean, which is the raw material for
7    true vanilla flavor.

8           13.    Consumers want the vanilla flavor in food products to come from "real vanilla,"
9    *i.e.*, from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract.
10   Unfortunately, vanilla fraud is rampant. As in this case, companies – without properly labelling
11   their products in accordance with federal and state food regulations – adulterate their purported
12   vanilla flavored products with vanillin, a cheaper vanilla flavoring, in order to reap even larger
13   corporate profits from consumers. This conduct is particularly harmful in the marketplace because
14   other companies properly label their competing vanilla-flavored products.

15          14.    Vanillin can be produced from so-called "natural" sources that have nothing to do
16   with the vanilla plant, such as wood pulp, clove oil, and pine bark. Vanillin is far less expensive
17   than vanilla extract. Vanilla extract costs approximately $5-6 dollars per ounce, whereas vanillin
18   costs around $0.10 to $0.30 per ounce. Yet real vanilla is prized especially in non-baked foods
19   such as ice cream, custards, and yogurt. *See generally* https://www.bhg.com/recipes/how-
20   to/bake/when-to-use-pure-vanilla-extract-or-imitation-vanilla-in-dessert/ ("That same vanillin
21   flavor can be made without any real vanilla beans, so it's much more affordable (around $0.10 to
22   $0.30 per ounce). Imitation vanilla ($1, Target) can have ingredients such as lignin, clove oil, pine
23   bark, fermented bran, and several others. . . . For best results, use pure vanilla extract (or paste) for
24   no-bake treats, simmered sauces and custards, and frozen desserts.").

25          15.    Section 401 of the Federal Food, Drug and Cosmetic Act ("FFDCA") directs the
26   FDA to establish standards and rules for food labelling where necessary to promote honesty and
27   fair dealing in the interest of consumers. The authority granted by Congress to the FDA enables
28   the agency to combat an economic problem: the marketing of foods from which traditional

1    constituents are removed or in which new or different (often cheaper and artificial) ingredients are

2    substituted. As such, the federal food standards are not safety standards, but rather, as the FDA

3    explains, intended to "protect consumers from contaminated products and economic fraud" and

4    have served as "a trusted barrier against substandard and fraudulently packaged food since their

5    enactment in the 1938 FFDCA."

6        16.    In order to combat vanilla fraud, the FDA has strict rules regarding use of the term

7    "vanilla" on the labels of food products.

8        17.    Only vanilla flavor independently derived from the vanilla plant is allowed to be

9    labelled "vanilla" without any qualifiers. If the characterizing vanilla flavor comes in any part from

10   non-vanilla plant sources, the FDA mandates that the label must so inform consumers by including

11   "Natural" or "Artificial" "Flavored" or "With Other Natural Flavor," in letters not less than one-

12   half the height of the letters used for "Vanilla" and immediately adjacent to "Vanilla." 21 C.F.R.

13   § 101.22(i)(1).

14       18.    More specifically, 21 C.F.R. § 101.22(i)(1)(iii) provides:

15           If the food contains both a characterizing flavor from the product whose flavor
             is simulated and other natural flavor which simulates, resembles or reinforces
16           the characterizing flavor, the food shall be labeled in accordance with the
             introductory text and paragraph (i)(1)(i) of this section and the name of the
17           food shall be immediately followed by the words "with other natural flavor" in
             letters not less than one-half the height of the letters used in the name of the
18           characterizing flavor.

19       19.    California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code §

20   109875 et seq. ("Sherman Law"), adopts all FDA regulations as state regulations (Section 110100).

21       20.    Scientific testing of the Product by the Mass Spectrometry Facility, Food

22   Innovation Center North, revealed that the characterizing vanilla flavor of the Product does not

23   come independently from vanilla extract or other ingredients derived from the vanilla plant.

24   Instead, the Product's vanilla flavor is spiked with vanillin, a vanilla flavor ingredient not derived

25   from the vanilla plant, which simulates, resembles, or reinforces the vanilla flavor of the Product.

26   *See* Mass Spectrometry Laboratory Analysis Report #7632, dated March 11, 2020, attached as

27   Exhibit A.

28       21.    This conclusion is supported by the report's GC-MS analysis, shown below. GC-

MS analysis is the method laboratories typically rely on in determining the presence of vanilla flavor components, because it is capable of detecting trace levels of compounds and there is minimal to no degradation of compounds in the extraction and detection process.

22.    Testing of Defendant's Product reveals vanillin (MS Scan # 1016) at 81.748 parts per million or PPM.

### Table 1

**Sheehan & Associates, P.C., Project #7632**
**Chobani Vanilla Greek Yogurt**
**Production Code: L4 36 8216**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3914

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 11 | 40159 | diacetyl | 0.030 |
| 54 | 59959 | acetic acid | 0.045 |
| 194 | 1543348 | acetoin | 1.150 |
| 296 | 329010 | butyric acid | 0.245 |
| 309 | 35256 | hexanal | 0.026 |
| 326 | 337712 | ethyl lactate | 0.252 |
| 364 | 9511 | 2-methylbutyric acid | 0.007 |
| 384 | 1917 | furfuryl alcohol | 0.001 |
| 436 | 3048634 | lactic acid + trace of dimethylsulfoxide co-eulting | 2.271 |
| 464 | 549461 | dimethyl sulfone | 0.409 |
| 556 | 4160871 | hexanoic acid + trace of benzaldehyde | 3.099 |
| 565 | 25358 | octanal | 0.019 |
| 578 | 18546 | 2,4-heptadienal | 0.014 |
| 614 | 18311 | benzyl alcohol | 0.014 |
| 627 | 37594 | benzene acetaldehyde | 0.028 |
| 637 | 293834 | heptanoic acid | 0.219 |
| 663 | 4865 | 2-nonanone | 0.004 |
| 672 | 28231 | guaiacol | 0.021 |
| 680 | 386676 | nonanal | 0.288 |
| 698 | 43113 | cyclohexanecarboxylic acid | 0.032 |
| 707 | 128326 | maltol | 0.096 |
| 768 | 11589359 | octanoic acid | 8.633 |
| 790 | 23701282 | benzoic acid | 17.655 |
| 798 | 1342461 | naphthalene-d8 (internal standard) | 1.000 |
| 815 | 149763 | methyl nonanoate | 0.112 |
| 857 | 5204334 | nonanoic acid | 3.877 |
| 891 | 52126 | 2-undecanone | 0.039 |
| 905 | 111828 | 2,4-decadienal + glyceryl triacetate (Triacetin) | 0.083 |
| 955 | 9991798 | decanoic acid | 7.443 |
| 1016 | 109743912 | vanillin | 81.748 |
| 1041 | 806289 | 4-hydroxy-3-methoxybenzyl alcohol | 0.601 |
| 1058 | 28009 | 2-tridecanone | 0.021 |
| 1076 | 113684 | delta-decalactone | 0.085 |
| 1089 | 56876 | ? | 0.042 |
| 1108 | 3022639 | lauric acid | 2.252 |
| 1129 | 52639 | ethyl laurate | 0.039 |
| 1217 | 27908 | gamma-dodecalactone | 0.021 |
| 1246 | 70606 | delta-dodecalactone | 0.053 |
| 1261 | 176983 | myristic acid | 0.132 |
| 1288 | 31034 | ethyl myristate | 0.023 |
| 1484 | 52017 | ethyl palmitate | 0.039 |
| | | **Total (excluding internal standard)** | **131.165** |

*See* Exhibit A at page 5.

1

23.     Although vanillin is one of the many aromatic compounds found in vanilla extract,

2   the amount of vanillin found in Defendant's Product demonstrates that the vanillin here is not from

3   vanilla extract but is instead a flavoring agent that was added to the Product to simulate, resemble,

4   or reinforce the Product's vanilla flavor. Moreover, the testing did not detect other aromatic

5   compounds that would exist if vanilla extract or other ingredients derived from the vanilla was the

6   source of the vanillin found in the Product.

7   24.     A comparison of the Product with other competing products that comply with FDA

8   labelling requirements is revealing.

9   25.     As seen below, Defendant's competitor Siggi's, like Defendant, also labels its

10  yogurt simply "Vanilla" with no qualifiers.

11  26.     Siggi's, however, uses only vanilla extract to give its yogurt vanilla flavor.

12

13

14

15

16

17

18

19

20

21

22

23

24

25



26  27.     Telling, the GC-MS analysis of Siggi's vanilla yogurt, which is flavored with

27  "Madagascar Bourbon Vanilla," shows vastly different results on its GC-MS analysis. Testing of

28  Siggi's vanilla yogurt revealed vanillin (MS Scan # 999) at a mere 0.2556 PPM compared to the

1   Product's level of vanillin at 81.748 PPM. Moreover, the GC-MS analysis of Siggi's vanilla yogurt

2   detected the presence of aromatic compounds associated with real vanilla that are not found in

3   Defendant's Product.

**Sheehan & Associates, P.C., Project #7632**
**Siggi's Vanilla Yogurt**
**Production Code: PL#36-8579**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3922

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 14-38 | 178276 | diacetyl | 0.0291 |
| 231 | 82546 | acetic acid | 0.0135 |
| 310 | 1081254 | acetoin | 0.1767 |
| 333 | 34525 | hexanal | 0.0056 |
| 369 | 811365 | butyric acid | 0.1326 |
| 407 | 10861 | 3-methylbutyric acid | 0.0018 |
| 418 | 21341 | 2-methylbutyric acid | 0.0035 |
| 437 | 18973 | furfuryl alcohol | 0.0031 |
| 449 | 60333 | pentanoic acid | 0.0099 |
| 504-530 | 17661628 | lactic acid + dimethyl sulfone | 2.8863 |
| 600 | 5354788 | hexanoic acid | 0.8751 |
| 666 | 321338 | heptanoic acid | 0.0525 |
| 679 | 25642 | 2-nonanone | 0.0042 |
| 689 | 55199 | guaiacol | 0.0090 |
| 694 | 945991 | methyl furoate | 0.1546 |
| 740 | 472525 | maltol | 0.0772 |
| 782 | 3810634 | octanoic acid | 0.6227 |
| 808 | 6119213 | naphthalene-d8 (internal standard) | 1.0000 |
| 822 | 29043096 | benzoic acid | 4.7462 |
| 834 | 840419 | hydroxymethylfurfural (HMF) + methyl nonanoate | 0.1373 |
| 857 | 50850 | benzene acetic acid | 0.0083 |
| 869 | 4050023 | nonanoic acid | 0.6619 |
| 885 | 138951 | 2-undecanone | 0.0227 |
| 902 | 152902 | propyl nonanoate | 0.0250 |
| 909 | 61206 | 2,4-decadienal | 0.0100 |
| 926 | 63657 | benzene propanoic acid | 0.0104 |
| 955 | 11695964 | decanoic acid | 1.9114 |
| 989 | 278816 | propyl decanoate | 0.0456 |
| 999 | 1564130 | vanillin | 0.2556 |
| 1021 | 207663 | undecanoic acid | 0.0339 |
| 1038 | 69185 | vanillyl ethyl ether | 0.0113 |
| 1053 | 37172 | 2-tridecanone | 0.0061 |
| 1073 | 64192 | delta-decalactone | 0.0105 |
| 1108 | 4110080 | lauric acid | 0.6717 |
| 1126 | 115725 | ethyl laurate | 0.0189 |
| 1177 | 22500 | tridecanoic acid | 0.0037 |
| 1200 | 34107 | gamma-dodecalactone | 0.0056 |
| 1212 | 46089 | 2-pentadecanone | 0.0075 |
| 1240 | 81361 | delta-dodecalactone | 0.0133 |
| 1249 | 32998 | myristoleic acid | 0.0054 |
| 1256 | 306075 | myristic acid | 0.0500 |
| 1282 | 10130 | ethyl myristate | 0.0017 |
| 1474 | 28477 | ethyl palmitate | 0.0047 |
| | | **Total (excluding internal standard)** | **13.7359** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28.    Another competing vanilla yogurt product that is labeled similarly to the Product is Yoplait's "Oui" brand yogurt. As seen below Yoplait labels its vanilla Oui yogurt simply "Vanilla" with no qualifiers. Yoplait uses only "Vanilla Extract" to flavor its Oui product.



29.    The GC-MS analysis of the Oui vanilla yogurt is similar to that of Siggi's and revealed vanillin (MS Scan # 993) at 1.783 PPM, compared to the Defendant Product's level at 81.748 PPM, and detected the presence of various aromatic compounds associated with real vanilla that are not found in Defendant's Product.

**Sheehan & Associates, P.C., Project #7632-1**
**Yoplait Oui French Style Vanilla Yogurt**
**Production Code:RCM2 26525**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3919

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 26 | 2133371 | diacetyl | 0.294 |
| 173 | 2481795 | acetic acid | 0.342 |
| 254 | 56061668 | acetoin | 7.715 |
| 361 | 5600484 | butyric acid | 0.771 |
| 367 | 3260072 | ethyl lactate | 0.449 |
| 408 | 4212737 | 1,2-propylene glycol | 0.580 |
| 429 | 88226 | hexyl alcohol | 0.012 |
| 442 | 86563 | 2-heptanone | 0.012 |
| 459 | 57638 | heptanal | 0.008 |
| 501 | 4641042 | lactic acid | 0.639 |
| 537 | 2921055 | dimethyl sulfone | 0.402 |
| 587 | 7124211 | hexanoic acid | 0.980 |
| 593 | 116243 | 2,4-heptadienal | 0.016 |
| 616 | 64178 | 3,4-dimethyl-2,5-furandione + trace of limonene | 0.009 |
| 636 | 95767 | benzene acetaldehyde | 0.013 |
| 640 | 182736 | trans-2-octenal | 0.025 |
| 654 | 290262 | heptanoic acid | 0.040 |
| 670 | 119023 | 2-nonanone | 0.016 |
| 680 | 234267 | guiaicol | 0.032 |
| 686 | 299981 | nonanal | 0.041 |
| 720 | 141094 | maltol | 0.019 |
| 763 | 6800530 | octanoic acid | 0.936 |
| 782 | 8114389 | benzoic acid | 1.117 |
| 789 | 102301 | 2-methoxy-4-methylphenol (p-methylguiaicol) | 0.014 |
| 801 | 7266374 | naphthalene-d8 (internal standard) | 1.000 |
| 851 | 4470919 | nonanoic acid | 0.615 |
| 870 | 116469 | 2-undecanone | 0.016 |
| 874 | 44069 | nonanoic acid, propylene glycol monoester (isomer) | 0.006 |
| 882 | 238468 | delta-nonalactone | 0.033 |
| 891 | 86335 | nonanoc acid, propylene glycol monoester | 0.012 |
| 902 | 159536 | 2,4-decadienal | 0.022 |
| 937 | 3287814 | decanoic acid | 0.452 |
| 955 | 108660 | ethyl decanoate | 0.015 |
| 976 | 89589 | 2-hexenal propylene glycol cyclic acetal (syn) | 0.012 |
| 982 | 38142 | 2-hexenal propylene glycol cyclic acetal (anti) | 0.005 |
| 993 | 12953076 | vanillin | 1.783 |
| 1008 | 236725 | decanoic acid, propylene glycol monoester | 0.033 |
| 1020 | 64693 | decanoic acid, propylene glycol monoester (isomer) | 0.009 |
| 1030 | 25513 | vanillyl ethyl ether | 0.004 |
| 1038 | 79272 | decanal, propylene glycol cyclic acetal | 0.011 |
| 1047 | 157511 | 2-tridecanone | 0.022 |
| 1067 | 896209 | delta-decalactone | 0.123 |
| 1094 | 474872 | lauric acid | 0.065 |
| 1121 | 92241 | ethyl laurate | 0.013 |
| 1208 | 89661 | gamma-dodecalactone | 0.012 |
| 1214 | 147133 | vanillin, propylene glycol cyclic acetal | 0.020 |
| 1235 | 153919 | delta-dodecalactone | 0.021 |
| 1250 | 201591 | myristic acid | 0.028 |
| 1277 | 22196 | ethyl myristate | 0.003 |
| 1312 | 84890 | vanillin glyceryl acetal | 0.012 |
| 1427 | 58550 | delta-tetradecalactone | 0.008 |
| 1433 | 24760 | palmitic acid | 0.003 |
| 1467 | 37222 | ethyl palmitate | 0.005 |
| | | **Total (excluding internal standard)** | **17.845** |

30.     In other words, Defendant's Product contains vanillin in levels that are more than **45 times** that of Oui and more than **319 times** that of Siggi's. Thus, the scientific testing of the Product and other properly labeled products, demonstrates that the Product relies upon added vanillin, not from the vanilla plant, to boost its vanilla flavor. Defendant violated 21 C.F.R. § 101.22(i)(1) by using "Vanilla" alone on its front label.

31.     Other competing vanilla yogurt products that add non-vanilla plant flavorings so indicate on the front of their products. The following are just a few such yogurts that add the "With Other Natural Flavor" qualifier to their "Vanilla" label.





32.    These products are priced materially less than Defendant's Product. For example, in the San Francisco Safeway grocery store located at 5290 Diamond Heights Boulevard on or about November 2, 2022, the Lucerne Greek vanilla yogurt was priced $4.49 for the 32 ounce container or $0.14 per ounce; the Oikos Blended Greek vanilla yogurt was priced $6.49 for the 32 ounce container or $0.20 per ounce; Brown Cow vanilla yogurt was priced $4.99 for the 32 ounce container or $0.16 per ounce, and the Yoplait Original vanilla yogurt was priced $3.79 for the 32 ounce container or $0.12 per ounce. In contrast, Defendant's Product was priced $6.99 for the 32 ounce size or $0.22 per ounce.

33.    In sum, whereas many competing yogurt products in the marketplace comply with federal regulation, 21 C.F.R. § 101.22(i)(1), Defendant's Product does not. Defendant charges more for its Products than it otherwise could by violating FDA labelling regulations.

## RELIANCE AND ECONOMIC INJURY

34.    Plaintiff sought a yogurt product whose vanilla flavor is independently derived from the vanilla plant.

35.    Plaintiff read and relied on Defendant's label on the Product that states "Vanilla"

1   to believe that the flavor of the Product was vanilla and that the Product's vanilla flavor came

2   independently from the vanilla plant.

3        36.    Had Plaintiff known the truth – that the label Plaintiff relied upon in making the

4   purchase was unlawful in that the vanilla flavor of the Product does not come independently from

5   the vanilla plant – Plaintiff would not have purchased the Product at a premium price or bought

6   the Product at all.

7        37.    The Product costs more than vanilla-flavored yogurt products that disclose added

8   flavoring on the front label.

9        38.    By engaging in its unlawful labelling, Defendant reaped and continues to reap

10  increased sales and profits.

11              **CLASS ACTION ALLEGATIONS**

12       39.    Plaintiff brings this action as a class action pursuant to section 382 of the California

13  Code of Civil Procedure. On all claims, Plaintiff brings this action on behalf of:

14          All persons in California who purchased Defendant's Product from November
            18, 2018, to the date of judgment.

15

16  (the "Class").

17       40.    Excluded from the Class are officers and directors of Defendant, members of the

18  immediate families of the officers and directors of Defendant, and their legal representatives, heirs,

19  successors, or assigns, and any entity in which they have or have had a controlling interest.

20       41.    Certification of Plaintiff's claims for class-wide treatment is appropriate because

21  Plaintiff can prove the elements of his claim on a class-wide basis using the same evidence as

22  individual Class members would use to prove those elements in individual actions alleging the

23  same claims.

24       42.    <u>Numerosity</u>. The Class is so numerous that the individual joinder of all of its

25  members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes

26  that the total number of Class members is in the tens of thousands and that members of the Class

27  are geographically dispersed across California. While the exact number and identities of the Class

28  members are unknown at this time, such information can be ascertained through appropriate

1  investigation and discovery.

2      43.    Well-Defined Community of Interest. As further alleged below, there is a well-

3  defined community of interest with respect to the Class because there are (1) predominant common

4  questions of law or fact; (2) a Class representative with claims or defenses typical of the Class;

5  and (3) a Class representative who can adequately represent the Class.

6      44.    Common questions of law and fact exist as to all members of the Class, and these

7  common questions predominate over any questions affecting only individual members of the

8  Class. These common legal and factual questions, which do not vary from Class member to Class

9  member and which may be determined without reference to the individual circumstances of any

10  Class member include, but are not limited to, whether Defendant's labelling of its Product

11  constitutes an unlawful consumer sales practice.

12      45.    Plaintiff's claims are typical of those of the Class because, like all members of the

13  Class, he purchased a Product bearing the unqualified "Vanilla" representation on the front of the

14  packaging in a typical consumer setting and sustained injury from Defendant's wrongful conduct.

15      46.    Plaintiff will fairly and adequately protect the interests of the Class and has retained

16  counsel who are experienced in litigating complex class actions. Plaintiff has no interests that

17  conflict with those of the Class.

18      47.    Superiority. A class action is superior to other available methods for the fair and

19  efficient adjudication of this controversy. Individual joinder of all members of the Class is

20  impracticable. Even if individual members of the Class had the resources to pursue individual

21  litigation, it would be unduly burdensome to the courts in which the individual litigation would

22  proceed. Individual litigation magnifies the delay and expense to all parties in the court system of

23  resolving the controversies engendered by Defendant's common course of conduct. The class

24  action device allows a single court to provide the benefits of unitary adjudication, judicial

25  economy, and the fair and efficient handling of all Class members' claims in a single forum. The

26  conduct of this action as a class action conserves the resources of the parties and of the judicial

27  system and protects the rights of the Class. Furthermore, for many, if not most, a class action is

28  the only feasible mechanism that allows an opportunity for legal redress and justice.

48.     This action is maintainable as a class action under the California Code of Civil Procedure for monetary relief because the common questions of law and fact identified above, without limitation, predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.     <u>Notice</u>. Plaintiff and his counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

**CAUSE OF ACTION**
**(Violation of California Business & Professions Code § 17200 *et seq.* –**
**Unlawful Conduct Prong of California's Unfair Competition Law)**
**On Behalf of Plaintiff and the Class**

50.     Plaintiff realleges and incorporates by reference the paragraphs stated above in this Class Action Complaint as set forth herein.

51.     California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

52.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant, as alleged herein, constitute "unlawful" business acts and practices in that they violate the FFDCA and its implementing regulations.

53.     More specifically, the Product is unlawfully labelled because its label violates 21 C.F.R. § 101.22(i), including subsection (i)(1)(iii) that provides:

> If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

54.     Defendant's conduct also violates the Sherman Law, which adopts all FDA regulations as state regulations (Section 110100).

55.     The challenged statement made and actions taken by Defendant violate the FFDCA and the Sherman Law and therefore violate the "unlawful" prong of the UCL.

56.    Defendant leveraged its unlawful conduct to induce Plaintiff and members of the Class to purchase Products that were of lesser value and quality than advertised. Defendant's unlawful conduct caused Plaintiff and members of the Class to suffer injury and to lose money, as it denied them the benefit of the bargain when they decided to purchase Defendant's Product over other products that are properly labeled and less expensive.

57.    Had Plaintiff and the members of the Class been aware of Defendant's unlawful tactics – that the unqualified "Vanilla" representation on the front of the packaging, which they relied upon in making their purchase, violated FDA regulations in that the vanilla flavor of the Product is not independently derived from the vanilla plant, they would not have purchased Defendant's Product at all or would have paid less than what they did for it.

58.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of Defendant's Products that were unjustly acquired through unlawful acts and practices.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiff prays for judgment as follows:

-    Certification of the Class, certifying Plaintiff as representative of the Class and designating his counsel as counsel for the Class;

-    A declaration that Defendant has committed the violations alleged herein;

-    Restitution and disgorgement pursuant California Business & Professions Code § 17200 *et seq.*;

-    For attorneys' fees;

-    For costs of suit incurred; and

-    For such further relief as this Court may deem just and proper.

1

## JURY TRIAL DEMANDED

2      Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this

3   lawsuit.

4

5                                          Respectfully submitted,

6   Date: November 18, 2022             **REESE LLP**

7                              By:  _/s/ Sue J. Nam_
                                   Sue J. Nam (State Bar No. 206729)
8                                   *snam@reesellp.com*
                                   Michael R. Reese (State Bar No. 206773)
9                                   *mreese@reesellp.com*
                                   100 West 93rd Street, 16th Floor
10                                  New York, New York 10025
                                   Telephone: (212) 643-0500
11                                  Facsimile: (212) 253-4272

12                              **REESE LLP**
                                   George V. Granade (State Bar No. 316050)
13                                  *ggranade@reesellp.com*
                                   8484 Wilshire Boulevard, Suite 515
14                                  Los Angeles, California 90211
                                   Telephone: (310) 393-0070

15
                                   **SHEEHAN & ASSOCIATES, P.C.**
16                                  Spencer Sheehan (*pro hac vice* to be filed)
                                   *spencer@spencersheehan.com*
17                                  60 Cuttermill Road, Suite 409
                                   Great Neck, New York 11021
18                                  Telephone: (516) 303-0552

19                                  *Counsel for Plaintiff Mikhail Gershzon and the*
                                   *Proposed Class*

20

21

22

23

24

25

26

27

28

## **EXHIBIT A**



Mass Spectrometry Facility
Food Innovation Center North
Rutgers, The State University of  NJ
63 Dudley Road
New Brunswick, NJ 08901-8520

Thomas G. Hartman, Ph.D.
Laboratory Director
hartmantg@aol.com
Phone: 848-932-5543
Fax: 732-932-6776

RUTGERS
New Jersey Agricultural
Experiment Station

March 11, 2020

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
505 Northern Blvd
Suite 311
Great Neck, NY 11021

spencer@spencersheehan.com

## CONFIDENTIAL

## Mass Spectrometry Laboratory Analysis Report #7632

### Flavor Analysis of Chobani Vanilla Greek Yogurt

Dear Mr. Sheehan:

This is the report pertaining to the above-captioned samples that you submitted for flavor analysis.

**I       Sample Log**

The following samples were received for analysis:

1.     Chobani Vanilla Greek Yogurt, Production Code L4 36 8216

**II      Analysis Request**

The analysis request was to extract and analyze the flavor from the yogurt.

## III    Analysis Methodology

Yogurt was mixed and 10 g was transferred to a borosilicate glass test tube sealed with Teflon-lined, screw cap closure, matrix-spiked with 10 μg of naphthalene-$d_8$ internal standard (1.0 ppm w/v) and mixed thoroughly using a lab vortexor. The sample was thinned out by adding a few mL's of distilled water then divided into 4 equal portions, transferred to glass vials and extracted with equal volumes (1:1) of methylene chloride. The layers were allowed to separate and then the methylene chloride extracts isolated and pooled together. The pooled extracts were centrifuged 30 minutes at 2500 rpm to clarify (separate any water or emulsion) then dried with anhydrous sodium sulfate. The dried extract was concentrated under a gentle stream of nitrogen to a final volume of approximately 0.5 mL then transferred to a Purge & Trap apparatus (Scientific Instrument Services, Solid Sample P&T system) and subjected to Purge & Trap-Thermal Desorption-GC-MS analysis as follows:

## Purge & Trap-Thermal Desorption-GC-MS

Concentrated methylene chloride extract prepared as described above was evaporated to dryness in a stream of nitrogen gas inside the glass tubing of the purge & trap apparatus (SIS Solid Sample Purge & Trap Oven). Immediately upon reaching dryness the sample was subjected to P&T analysis by purging with nitrogen at 50 ml per minute for 30 minutes at 150°C. The exhaust of the P&T apparatus was fitted with a Tenax-TA adsorbent trap. The traps were then connected to the Short Path Thermal Desorption system and thermally desorbed directly into the GC-MS system for final analysis (SIS Model TD-4 Short Path Thermal Desorber). The thermal desorption conditions were 250°C for 5 minutes.

## GC-MS Analysis Methodology

Analyses of Tenax traps prepared as described above were conducted using a Scientific Instrument Services (SIS) model TD4 Short Path Thermal Desorber interfaced to the Varian 3400 GC directly coupled to a Finnigan TSQ-7000 triple stage quadrapole tandem mass spectrometer equipped with an Xcaliber data system. Thermal desorption conditions were 250°C for 5 minutes using sub-ambient, cryogenic GC column temperature programming. The GC was equipped with a 60 meter x 0.32 mm i.d. Guardian-ZB-5MS capillary column with a 1.0 μm

film thickness (Phenomonex). The mass spectrometer was operated in electron ionization mode (70 eV) scanning masses 35-350 once each second.

## Materials

Naphthalene-$d_8$ used as internal standard for the study was purchased from Sigma-Aldrich Chemical Co, St. Louis MO. Methylene chloride was purchased from Thermo Fisher Scientific. All thermal desorption supplies were purchased from Scientific Instrument Services, Inc., Ringoes, NJ.

## IV    Results

The GC-MS analysis data for the yogurt flavor is summarized in Table 1. The GC-MS chromatogram corresponding to the Table is presented in Figure 1. From left to right, the Table lists the MS scan number (from centroid of peak), peak area integration, peak identification and then concentration data expressed in parts per million (ppm w/v). The data is semi-quantitative and based on peak area ratio to the matrix-spiked internal standard (naphthalene-$d_8$) assuming a detector response factor of 1.0 with no correction for extraction efficiency.

If you have any questions or if I can be of further assistance to you then please don't hesitate to contact me.

Respectfully Submitted,

Thomas G. Hartman, Ph.D.
Mass Spectrometry Lab Director
& Research Professor

## Attachments

▸    Table 1, Analysis Results Summary

▸    Figure 1, GC-MS Chromatogram

▸    Analysis Data Forms

▸    Photo of Test Sample

Table 1

Sheehan & Associates, P.C., Project #7632
Chobani Vanilla Greek Yogurt
Production Code: L4 36 8216
Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS

Data File = TSQA3914

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 11 | 40159 | diacetyl | 0.030 |
| 54 | 59959 | acetic acid | 0.045 |
| 194 | 1543348 | acetoin | 1.150 |
| 296 | 329010 | butyric acid | 0.245 |
| 309 | 35256 | hexanal | 0.026 |
| 326 | 337712 | ethyl lactate | 0.252 |
| 364 | 9511 | 2-methylbutyric acid | 0.007 |
| 384 | 1917 | furfuryl alcohol | 0.001 |
| 436 | 3048634 | lactic acid + trace of dimethylsulfoxide co-eulting | 2.271 |
| 464 | 549461 | dimethyl sulfone | 0.409 |
| 556 | 4160871 | hexanoic acid + trace of benzaldehyde | 3.099 |
| 565 | 25358 | octanal | 0.019 |
| 578 | 18546 | 2,4-heptadienal | 0.014 |
| 614 | 18311 | benzyl alcohol | 0.014 |
| 627 | 37594 | benzene acetaldehyde | 0.028 |
| 637 | 293834 | heptanoic acid | 0.219 |
| 663 | 4865 | 2-nonanone | 0.004 |
| 672 | 28231 | guiacol | 0.021 |
| 680 | 386676 | nonanal | 0.288 |
| 698 | 43113 | cyclohexanecarboxylic acid | 0.032 |
| 707 | 128326 | maltol | 0.096 |
| 768 | 11589359 | octanoic acid | 8.633 |
| 790 | 23701282 | benzoic acid | 17.655 |
| 798 | 1342461 | naphthalene-d8 (internal standard) | 1.000 |
| 815 | 149763 | methyl nonanoate | 0.112 |
| 857 | 5204334 | nonanoic acid | 3.877 |
| 891 | 52126 | 2-undecanone | 0.039 |
| 905 | 111828 | 2,4-decadienal + glyceryl triacetate (Triacetin) | 0.083 |
| 955 | 9991798 | decanoic acid | 7.443 |
| 1016 | 109743912 | vanillin | 81.748 |
| 1041 | 806289 | 4-hydroxy-3-methoxybenzyl alcohol | 0.601 |
| 1056 | 28009 | 2-tridecanone | 0.021 |
| 1076 | 113684 | delta-decalactone | 0.085 |
| 1089 | 56876 | ? | 0.042 |
| 1108 | 3022639 | lauric acid | 2.252 |
| 1129 | 52639 | ethyl laurate | 0.039 |
| 1217 | 27908 | gamma-dodecalactone | 0.021 |
| 1246 | 70606 | delta-dodecalactone | 0.053 |
| 1261 | 176983 | myristic acid | 0.132 |
| 1288 | 31034 | ethyl myristate | 0.023 |
| 1484 | 52017 | ethyl palmitate | 0.039 |
| | | **Total (excluding internal standard)** | **131.165** |



TSQA3914
Type: Unknown ID: 1 Row: 1
Sample Name:          Chobani Vanilla Greek Yogurt (Production Code: L4 36
                     8216), DCM Extract, 150C/30min, matrix spiked with w/w
                     1.0ppm Int. Std. by P&T-TD-GC-MS
Study:
Client:              Sheehan & Associates, P.C., LLN7632
Laboratory:          Mass Spectrometry - Dr. Tom Hartman
Company:
Phone:
Instrument Method:   C:\Xcalibur\methods\voc45solventdelay8min.meth
Processing Method:
Vial:                1
Injection Volume (µl): 10.00
Sample Weight:       0.00
Sample Volume (µl):  0.00
ISTD Amount:         0.00
Dil Factor:          1.00

## SHORT PATH THERMAL DESORPTION DATA FORM
## MASS SPECTROMETRY LABORATORY

ANALYST: _Joe Scarsella_    PROJECT #: _7632_    DATE: _3/5/2020_

PROJECT SPONSOR: _Sheehan and Associates_

INSTRUMENT: SCIENTIFIC INSTRUMENT SERVICES INC., (SIS) MODEL TD-2
SHORT PATH THERMAL DESORPTION SYSTEM & ACCESSORIES

TYPE OF ANALYSIS:  ☐ DIRECT THERMAL DESORPTION (DTD)

☒ PURGE & TRAP - THERMAL DESORPTION (P&T-TD)

### PURGE & TRAP AND DIRECT THERMAL DESORPTION CONDITIONS:

SAMPLE DESCRIPTION: _Chobani Vanilla Greek Yogurt_

SAMPLE SIZE: _—_    SAMPLE MATRIX:  ☐ GAS  ☐ LIQUID  ☒ SOLID

PURGE & TRAP APPARATUS:  ☒ SIS SOLID MATRIX SAMPLING OVEN

☐ SIS LIQUID PURGE VESSEL  ☐ WHEATON LIQUID SAMPLER  ☐ SKC PUMP

☐ CUSTOM APPARATUS: _____

PURGE GAS: ☒ NITROGEN  ☐ HELIUM  ☐ AIR  PURGE GAS FLOW RATE: _50 mL/min_

PURGE & TRAP TIME: _30 min_   TEMPERATURE: _150°C_   DRY PURGE TIME: _—_

ADSORBENT TRAP: ☒ TENAX  ☐ CARBOXEN-569  ☐ OTHER: _____

ADSORBENT TRAP BED VOLUME:    ☐ 2cm    ☐ 4cm    ☒ 6cm    ☐ 8cm

GLT DESORPTION TUBE INSIDE DIAMETER:    ☐ 3mm i.d.    ☒ 4mm i.d.

INTERNAL STANDARD: _naphthalene-d8_  (benzene-d6, toluene-d8,)  AMOUNT INTERNAL STANDARD: _1.0 ppm w/w_

INTERNAL STANDARD SPIKE: ☒ MATRIX SPIKE  ☐ ADSORBENT TRAP SPIKE

### THERMAL DESORPTION CONDITIONS:

DESORPTION TEMP.: _250°C_    DESORPTION TIME: _5 min_    INJ. TIME: _30 sec_

INITIAL PURGE TIME: _10 sec_    TYPE OF ANALYSIS :    ☐ GC    ☒ GC-MS

COMMENTS: _____

# TSQ-7000 MASS SPECTROMETRY ANALYSIS DATA FORM
## MASS SPECTROMETRY LABORATORY

DATA FILE(S): TSQA3914    PROJECT #: 7632    DATE: 3/5/2020

PROJECT SPONSOR: Sheehan and Associates    ANALYST: Joe Scarsella

SAMPLE DESCRIPTION: Chobani Vanilla Greek Yogurt

## GC CONDITIONS:

INSTRUMENT: *Varian 3400*    COLUMN: ZB5-MS    SERIAL #: ⟶

LENGTH: 60m    DIAMETER: 0.32mm    FILM THICKNESS: 1.0μm

TYPE OF INJECTION:    ☒ SPLIT    ☐ SPLITLESS    ☐ ON-COLUMN
                     ☐ HEADSPACE    ☒ THERMAL DESORPTION

INJ. LINER: ☐ CYCLOID ☐ 2mm Direct ☒ 4mm Direct ☐ _____ (Other)

INJECTION VOLUME: ⟶    INJECTOR TEMPERATURE: 250°C

SEPTUM PURGE:    ☒ YES ☐ NO    SPLIT RATIO: 10:1

CARRIER GAS: He    CARRIER FLOW (ml/min.): ⟶    or PSI HEAD PRESS.: 20psi

TEMP. PROGRAM: -20°C → 260°C @ 10°c/min

GC-MS INTERFACE LINE TEMPERATURE: 280°C    GC MAINTENANCE:

☒ SEPTUM CHANGE    ☐ CLEAN & SILANIZE INJ. LINER    ☒ Column Bakeout

## MASS SPECTROMETER CONDITIONS:

INSTRUMENT: *Finnigan MAT TSQ7000*    DATA SYSTEM: *Xcaliber*

IONIZATION MODE: ☒ EI (70 eV) ☐ CI ☒ +ION ☐ -ION ☐ CID (MS-MS)

IF CI THEN INDICATE REAGENT GAS ☐ METHANE    ☐ ISOBUTANE ☐ AMMONIA

ION SOURCE TEMP.: 185°C    FILAMENT EMISSION CURRENT: 400uA

TYPE OF ANALYSIS: ☒GC-MS ☐DCI ☐EI/CI DIRECT PROBE ☐BATCH INLET

☐ SIM MODE: ION(s) MONITORED: ⟶

☐ MS-MS MODE: CID PRESSURE mT: ⟶    COLLISION ENERGY V: ⟶

☐ SRM MODE: DAUGHTER ION(S) MONITORED: ⟶

DCI OR DIRECT PROBE TEMPERATURE RAMP: ⟶

MASS RANGE: 35-350    SCAN RATE (seconds/decade): 1.0 sec

TUNE FILE: ei_tune    METHOD FILE: Voc45 solventdelay8min.meth

COMMENTS: _____





NO GMO INGREDIENTS          LIVE CULTURES

## Nutrition Facts

About 5 servings per container

Serving size     3/4 cup (170g)

Amount per serving

### Calories                130

| | % Daily Value* |
|---|---|
| **Total Fat** 0g | **0%** |
| Saturated Fat 0g | **0%** |
| Trans Fat 0g | |
| **Cholesterol** 10mg | **3%** |
| **Sodium** 65mg | **3%** |
| **Total Carbohydrate** 16g | **6%** |
| Dietary Fiber <1g | **3%** |
| Total Sugars 14g | |
| Incl. 10g Added Sugars | **20%** |
| **Protein** 14g | **28%** |
| Vit. D 0mcg 0%  •  Calcium 169mg 15% | |
| Iron 0mg 0%  •  Potas.  220mg 4% | |

The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

Questions or comments? 1.877.847.6181
GRADE A ⓊⒹ KEEP REFRIGERATED
A portion of profits for a better world

**Ingredients:** Cultured nonfat milk, cane sugar, water, fruit pectin, natural flavors, guar gum, lemon juice concentrate, vanilla extract.

**6 live and active cultures:** S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus, L. Casei, and L. Rhamnosus.

Chobani, LLC, New Berlin, NY 13411
© 2019 Chobani, LLC
**chobani.com**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY<br>
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Chobani LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Mikhail Gershzon, on behalf of himself and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco Superior Court<br><br>400 McAllister Street, San Francisco, California 94102 | CASE NUMBER:<br>*(Número del Caso):*<br><br>**CGC-22-603042** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sue J. Nam, Reese LLP, 100 West 93rd Street, 16th Floor, New York, New York 10025, (212) 643-0500

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* **12/01/2022** | Clerk, by<br>*(Secretario)* | **JEFFREY FLORES** | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | Clear this form |

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Claudia Vetesi (State Bar No. 233485)
Morrison & Foerster LLP, 425 Market St., San Francisco, CA 94105

TELEPHONE NO.: 1(415) 268-6626   FAX NO. *(Optional):*
E-MAIL ADDRESS: CVetesi@mofo.com
ATTORNEY FOR *(Name):* Defendant, Chobani LLP

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO | *FOR COURT USE ONLY* |

STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civil Division

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**12/08/2022**
Clerk of the Court

CASE NAME:
Gershzon v. Chobani LLC

BY: ERNALYN BURA
**Deputy Clerk**

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: CGC-22-603042 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000)    [ ] **Limited** (Amount demanded is $25,000 or less) | [x] Counter    [ ] Joinder | JUDGE: |
| | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [x] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* One. Violation of Cal. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: December 7, 2022
Claudia Vetesi

        *Claudia Vetesi*

(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

1   Claudia M. Vetesi, Bar No. 233485
    CVetesi@mofo.com
2   Nicole V. Ozeran, Bar No. 302321
    NOzeran@mofo.com
3   Lena Gankin, Bar No. 333047
    LGankin@mofo.com
4   Morrison & Foerster LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone:    415.268.7000
6   Facsimile:    415.268.7522

7

8   Attorneys for Defendant
    Chobani LLC

9

10                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                           COUNTY OF SAN FRANCISCO

12                                              Case No. CGC-22-603042

13

14  MIKHAIL GERSHZON, on behalf of        **DEFENDANT CHOBANI LLC'S**
    himself and all others similarly situated,   **APPLICATION FOR COMPLEX**
15                                         **DESIGNATION**
                 Plaintiff,
16
          v.
17
    CHOBANI LLC,
18
                 Defendant.
19

20

21

22

23

24

25

26

27

28

                                   1

## I.    INTRODUCTION

This case should be designated as complex.[1]  This case is virtually identical to a putative class action, *Nacarino v. Chobani*, filed by the same Plaintiff's counsel over two years ago in the Northern District of California.  The two cases are premised on the same theory—that Chobani violated California's Unfair Competition Law, Business and Professions Code section 17200 et seq. ("UCL") by allegedly unlawfully labeling its Greek Yogurt Vanilla Blended product "vanilla" without disclosing natural flavors on the front label.  *Compare* Dkt. No. 51, Third Amended Complaint, *Nacarino v. Chobani LLC*, Case No. 20-cv-7437-EMC (N.D. Cal., filed Sept. 8, 2021), *with* Complaint, *Gershzon v. Chobani LLC*, Case No. CGC-22-603042 (San Francisco Superior Court, filed Nov. 18, 2022).[2]  The two cases seek to certify overlapping putative classes of California consumers, with the federal *Nacarino* case seeking to include persons in California who purchased the yogurt from October 23, 2016 to the date of judgment, and this case seeking to include persons in California who purchased the yogurt from November 18, 2018 to the date of judgment.  The only additional differences between the cases are the named plaintiffs and some of the remedies sought: both Ms. Nacarino and Mr. Gershzon seek equitable restitution and declaratory relief, but Mr. Gershzon (unlike Ms. Nacarino) does not seek injunctive relief.

This case should be designated complex for three reasons.

***First***, Chobani anticipates that, as in *Nacarino*, this case will involve numerous pretrial motions raising complicated legal issues.  In *Nacarino*, the parties briefed motions to dismiss several rounds of pleadings and are set to brief whether Mr. Nacarino is entitled to equitable restitution under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  The ruling on the *Sonner* motion will likely impact the scope of this matter given the overlapping classes and requests for relief.  The parties in *Nacarino* are also soon scheduled to brief class certification in Spring 2023.  Furthermore, Chobani anticipates that if the present matter proceeds past the pleading stage, a number of discovery and pretrial motions, including

---

[1] In connection with this filing, Defendant has paid the applicable complex litigation fee.
[2] Ms. Nacarino filed her original complaint against Chobani on October 23, 2020.

**DEFENDANT'S APPLICATION FOR COMPLEX DESIGNATION**

1  motions for class certification and/or summary judgment, may be filed.

2      **Second**, if this case is not dismissed at the pleading stage, discovery will require

3  management of various witnesses and voluminous documentary evidence.  In *Nacarino*, the

4  pleadings are settled and the parties have served and responded to written discovery, noticed

5  depositions, produced documents, and briefed multiple discovery disputes.  Given the similar

6  claims, the parties here are also likely to engage in robust discovery.

7      **Third**, and relatedly, this case will require coordination with the *Nacarino* action as the

8  cases seek to certify overlapping putative classes.  As such, to avoid potential conflicting

9  decisions and rulings, this case would benefit from active case management focused on the

10  efficient use of judicial resources and resolution of this case.

11      Accordingly, Chobani requests that this matter be designated complex under California

12  Rules of Court, Rule 3.400 ("Rule 3.400").

13      **II.    DISCUSSION**

14      A "complex" case is "an action that requires exceptional judicial management to avoid

15  placing unnecessary burdens on the court or the litigants and to expedite the case, keeps costs

16  reasonable, and promote effective decision making by the court, the parties, and counsel."  Cal. R.

17  Ct., Rule 3.400(a).  This is such a case, and the relevant factors in Rule 3.400(b) support granting

18  this application.

19      **Rule 3.400(b)(1): Numerous Pretrial Motions**

20      If this case proceeds in litigation, Chobani anticipates substantial substantive motion

21  practice on complex issues.  Chobani intends to challenge the complaint in this matter for failure

22  to state a viable claim.  Depending on the outcome of the *Sonner* motion in *Nacarino*, Chobani

23  may also challenge Plaintiff's request for the remedy of restitution.  In addition, Chobani will

24  oppose Plaintiff's anticipated motion for class certification and move for summary judgment.

25      **Rule 3.400(b)(2): Management of Witnesses and Documents**

26      If this case proceeds to discovery, the parties are likely to engage in discovery similar to

27  that in *Nacarino* given the overlap of factual allegations and claims.  In *Nacarino*, the plaintiff

28  propounded multiple sets of written discovery requests and noticed dozens of depositions.  The

parties engaged in multiple meet and confers and Chobani engaged in an extensive ESI document review and production.

This case will likely entail the same level of engagement, requiring the management and coordination of a large number of witnesses (including potential expert witnesses) and a substantial amount of documentary evidence. Close oversight of the discovery process and potential disputes would be particularly useful here given the related cases.

### Rule 3.400(b)(4): Coordination with Related Actions

As discussed above, given the similarity of this case and the related *Nacarino* action in the Northern District of California (which has been pending for two years), close coordination of the matters will be necessary. This is particularly true since the cases seek to certify overlapping California classes of consumers. For example, if the *Nacarino* class is certified, the putative class in this matter may be subsumed in the *Nacarino* matter. And as also discussed above, the parties in *Nacarino* are set to brief whether Ms. Nacarino is entitled to seek restitution in federal court. That ruling may affect how the parties approach this matter.

### Rule 3.400(a): Expediting the Case

For the reasons discussed above, this matter would benefit from active management given the anticipated motion practice, discovery process, and similarity to the related *Nacarino* action. Accordingly, the additional oversight of the Complex Department is necessary to ensure an efficient resolution of this matter.

### III.   CONCLUSION

For the foregoing reasons, this case presents complex case management issues. Chobani respectfully requests that the Court therefore designate this case as complex.

Dated:  December 8, 2022                    MORRISON & FOERSTER LLP

By: _____
      Claudia M. Vetesi

***Attorneys for Defendant***
***Chobani LLC***

**DEFENDANT'S APPLICATION FOR COMPLEX DESIGNATION**

1

**PROOF OF SERVICE**

2

     I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California 94105-2482.  I am not a party to the within cause, and I am over the age of eighteen years.

3

4

     I further declare that on December 8, 2022, I served a copy of:

5

**DEFENDANT'S APPLICATION IN SUPPORT OF COMPLEX DESIGNATION**

6

7

     ☒       **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC 2.251]** by electronically mailing a true and correct copy through One Legal to the email address(es) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6 and CRC Rule 2.251.

8

9

10

11

     *Please see attached service list.*

12

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

13

     Executed at San Francisco, CA this 8th day of December, 2022.

14

15

16

17

               Robert Jackson               /s/ Robert Jackson

18

                   (typed)                    (signature)

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S APPLICATION FOR COMPLEX DESIGNATION**

1

**SERVICE LIST**

2

Michael R. Reese, Esq.
Sue J. Nam, Esq.

3

Reese LLP

4

100 West 93rd Street, 16th Floor
New York, NY  10025

5

Phone: (212) 643-0500
Email: mreese@reesellp.com

6

Email: snam@reesellp.com

7

*Attorneys for Plaintiff*

8

Mikhail Gershzon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Claudia M. Vetesi, Bar No. 233485
    CVetesi@mofo.com
2   Nicole V. Ozeran, Bar No. 302321
    NOzeran@mofo.com
3   Lena Gankin, Bar No. 333047
    LGankin@mofo.com
4   Morrison & Foerster LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone:    415.268.7000
6   Facsimile:    415.268.7522

7

8   Attorneys for Defendant
    Chobani LLC

9

10                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                       COUNTY OF SAN FRANCISCO

12

13  MIKHAIL GERSHZON, on behalf of        Case No. CGC-22-603042
    himself and all others similarly situated,
14                                         **STIPULATION AND [PROPOSED]**
                  Plaintiff,               **ORDER EXTENDING DEFENDANT**
15                                         **CHOBANI LLC'S RESPONSIVE**
         v.                                **PLEADING DEADLINE**
16
    CHOBANI LLC,
17
                  Defendant.
18

19          Plaintiff Mikhail Gershzon and Defendant Chobani LLC, through their counsel of record,

20  hereby stipulate and agree as follows, subject to the approval of the Court:

21          WHEREAS, Defendant accepted service of the complaint on December 6, 2022;

22          WHEREAS, Defendant's current deadline to answer or otherwise respond to Plaintiff's

23  complaint is January 5, 2023;

24          WHEREAS, given the upcoming holidays and travel schedules, Defendant requires

25  additional time to respond to the complaint;

26          WHEREAS, the parties believe that it will conserve both the Court's and the parties'

27  resources to extend Defendant's deadline to answer or otherwise respond to the complaint by thirty

28

                                        - 1 -

1   (30) days until February 4, 2023;

2        NOW THEREFORE, IT IS HEREBY STIPULATED AND REQUESTED that the Court

3   enter an order extending Defendant's deadline to answer or otherwise respond to the complaint by

4   thirty (30) days after Defendant's current deadline to February 4, 2023.

5

6

7   Dated:  December 8, 2022          MORRISON & FOERSTER LLP

8

9              By: *Claudia Vetesi*

                 Claudia M. Vetesi

10              ***Attorneys for Defendant***
           ***Chobani LLC***

11

12

13

14   Dated:  December 8, 2022          REESE LLP

15

16              By: */s/ Sue J. Nam (with permission)*
                 Sue J. Nam

17              ***Attorneys for Plaintiff***
           ***Mikhail Gershzon***

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER EXTENDING RESPONSIVE PLEADING DEADLINE

1

**[PROPOSED] ORDER**

2      The Court, having reviewed the parties' Stipulation to Extend Defendant Chobani LLC's

3  Responsive Pleading Deadline, and good cause otherwise appearing, hereby **APPROVES** the

4  Stipulation and **ORDERS** as follows:

5

6      Defendant's deadline to answer or otherwise respond to the complaint is continued by

7  thirty days to February 4, 2023.

8

9

10     **IT IS SO ORDERED.**

11

12  Dated: _____              _____

                                                      Judge of the Superior Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER EXTENDING RESPONSIVE PLEADING DEADLINE

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

MIKHAIL GERSHZON

                                          **Department 613**

PLAINTIFF (S)

VS.

                                          **NO.: CGC-22-603042**

CHOBANI LLC

                                          **Dept 613 Order Granting
                                          Complex Designation And For
                                          Single Assignment**

DEFENDANT (S)

TO:  ALL COUNSEL AND PARTIES IN PROPRIA PERSONA:

The Application for Approval of Complex Designation filed Dec-08-2022 is GRANTED. The Court finds this action to be complex under Rule 3.400 et seq. of the California Rules of Court.

IT IS HEREBY ORDERED that this action is singly assigned for all purposes to Complex Litigation Department 613, the Hon. ANDREW Y.S. CHENG, judge of the California Superior Court, City and County of San Francisco at 400 McAllister Street, San Francisco, CA 94102.

The Apr-19-2023 CASE MANAGEMENT CONFERENCE in Dept. 610 is VACATED.

A new initial case management conference is set for Mar-22-2023 at 10:00 am in Department 613. All hearings are conducted via Court Call until further notice. A JOINT case management statement must be filed and two courtesy copies thereof delivered to Department 613 no later than five (5) court days before the case management conference. All court dates must be reserved in advance with the Deputy Clerk of Department 613 at (415) 551-3840.

All other court dates are vacated.  Any pending motions previously set for hearing in the Law and Motion or Discovery Departments should be taken off calendar and two sets of courtesy copies of moving papers forwarded to Department 613 for possible re-setting at a future date.

Counsel for plaintiff shall provide a copy of this order and notice to all counsel of record and/or parties In Propria Persona that are not yet listed in the certificate of service.

This case is subject to mandatory e-filing and e-service pursuant to Local Rule 2.11.  The e-filing vendor for the Complex Department in 613 is File&ServeXpress. Counsel must submit all filings to this e-service. Counsel must also add themselves to the e-service list.  For assistance contact support@fileandservexpress.com or call 888-529-7587.

All counsel should read and be familiar with Department 613 procedures, which are located online at: http://www.sfsuperiorcourt.org/divisions/civil/litigation.

DATED:  DEC-22-2022

                        Andrew Y. S. Cheng
                        _____
                        JUDGE

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on DEC-22-2022 I served the attached Dept 613 Order Granting Complex Designation And For Single Assignment by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated :  DEC-22-2022                          By: CLARK BANAYAD

SUE J. NAM (206729)
REESE LLP
100 WEST 93RD STREET
16TH FLOOR
NEW YORK, NY  10025

CLAUDIA M. VETESI (233485)
MORRISON & FOESTER
425 MARKET ST.
SAN FRANCISCO, CA  94105-2482

1    CLAUDIA M. VETESI (CA SBN 233485)
     CVetesi@mofo.com
2    MORRISON & FOERSTER LLP
     425 Market Street
3    San Francisco, California 94105-2482, U.S.A.
     Telephone: 415.268.7000
4    Facsimile: 415.268.7522

5    Attorneys for Defendant
     CHOBANI LLC

6

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/04/2023**
**Clerk of the Court**
BY: SANDRA SCHIRO
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

7

COUNTY OF SAN FRANCISCO

8

| | |
|---|---|
| 9   MIKHAIL GERSHZON, on behalf of himself and all others similarly situated, | CASE NO. CGC-22-603042 |
| 10 | |
| 11          Plaintiff, | **DEFENDANT CHOBANI LLC'S** *EX PARTE* **APPLICATION FOR EXTENSION OF TIME AND** |
| 12      v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 13   CHOBANI LLC, | **THEREOF** |
| 14          Defendant. | Dept: 613 |
| 15 | Judge: Hon. Andrew Y. S. Cheng |
| 16 | Date Action Filed:  November 18, 2022 |

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Chobani LLC ("Chobani") hereby applies *ex parte* for an order extending the deadline for Chobani to answer or otherwise respond to Plaintiff's Complaint.  As set forth in the attached Memorandum of Points and Authorities, Chobani requests an extension extending the deadline for Chobani to answer or otherwise respond to Plaintiff's Complaint until 30 days after the Court has ruled on Chobani's Motion to Stay, which Chobani filed concurrently with this *Ex Parte* Application.[1]

Contact information for counsel and a list of who they represent is as follows:

Claudia M. Vetesi (Bar No. 233485)
**Morrison & Foerster LLP**
425 Market Street
San Francisco, CA 94105
*Attorneys for Defendant Chobani LLC*

Sue J. Nam (Bar No. 206729)
Michael R. Reese (Bar No. 206773)
**Reese LLP**
100 West 93rd Street, 16th Floor
New York, NY 10025

George V. Granade (Bar No. 316050)
**Reese LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, CA 90211
*Attorneys for Plaintiff Mikhail Gershzon*

Chobani has complied with California Rules of Court, Rule 3.1200 – 3.1207.  Chobani has not previously applied to any judicial officer for similar relief.  This application is based on this *Ex Parte* Application, the attached Memorandum of Points and Authorities, and the Declaration of Claudia M. Vetesi, including attached exhibits, as well as the pleadings and records in this matter.  A proposed order has been included with this *Ex Parte* Application.

---

[1] On January 4, 2023, concurrently with the filing of this Application, Chobani filed its Motion to Stay proceedings pending the resolution of the related and federal court case, *Nacarino v. Chobani LLC*, No. 3:20-cv-07437 (N.D. Cal.).

EX PARTE APPLICATION AND MEMORANDUM IN SUPPORT OF EXTENSION OF TIME
CASE NO. CGC-22-603042

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Pursuant to Local Rule 9, California Rule of Court 3.1200-3.1207, and the Court's rules, Defendant Chobani LLC ("Chobani") hereby applies *ex parte* to the Court for an order extending the deadline for Chobani to answer or otherwise respond to Plaintiff's Complaint.  Specifically, Chobani requests an extension until 30 days after the Court has ruled on Chobani's Motion to Stay ("Motion to Stay" or "MTS").  As discussed further below and in Chobani's Motion to Stay, this action is a duplicative copy-cat suit based on two-year-old active litigation filed by Plaintiff's counsel.  Both cases involve the same allegations and issues and seek the same relief.

If Chobani's time to respond is not extended until after the Court has ruled on Chobani's Motion to Stay, Chobani will have to waste substantial resources to defend against another identical lawsuit and will be severely prejudiced.  Additionally, the potential for unseemly conflicts is significant, particularly given that the *Gershzon* complaint is a near verbatim recitation of the allegations remaining in Ms. Nacarino's Third Amended Complaint following the court's grant of Chobani's multiple motions, and the Northern District of California is poised to rule on those issues.  Plaintiff will suffer no prejudice as a result of this extension.

## II.   ARGUMENT

### A.  Plaintiff's Counsel Filed a Duplicative, Nearly Identical Action in this Court

The *Gershzon* action is a copycat of the *Nacarino* action in all material respects.  (See MTS, Vetesi Decl., Ex. 2.)  Both plaintiffs allege that the label on Chobani's Product violates the UCL unlawful prong because it purportedly does not comply with FDA labeling requirements where it displays the term "Vanilla" on the front of its package with no qualifiers.  (MTS at 4-5.)  Moreover, both plaintiffs seek to represent nearly identical putative classes, consisting of California consumers—the only difference being that the *Gershzon* class period is shorter than the *Nacarino* class period.  (*Id.*)  Otherwise, there is no difference.  Yet, after more than two years of actively litigating *Nacarino*, and on the precipice of class certification, Plaintiff's counsel filed this action.

In *Nacarino*, for the last two plus years, the parties have engaged in substantial litigation, including multiple rounds of complaints and motions to dismiss, argument hearings, case management conferences, written discovery, document productions, and depositions.  (MTS, Vetesi Decl. ¶¶ 5-6.)  Additionally, Ms. Nacarino has noticed six fact witness depositions to take place prior to the parties' March 2023 fact discovery cut-off.  (*Id*. ¶ 6.)  The parties are scheduled to brief class certification in May 2023.  (*Id*. ¶ 7.)  Further, this month (also on January 12, 2023), the parties are set to brief a motion as to whether the plaintiff in *Nacarino* is entitled to seek equitable restitution in the federal court under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.* (9th Cir. 2020) 971 F.3d 834.  (*Id*. ¶ 5.)

**B.  The Parties Previously Negotiated and Agreed to an Extension for Chobani to Respond to the Complaint**

Plaintiff filed the Complaint in this case on November 18, 2022.  (Vetesi Decl. ¶ 2.)  On December 8, 2022, the parties filed a stipulation for an extension of time for Chobani to answer or otherwise respond to Plaintiff's Complaint in exchange for acceptance of service.  (*Id*. ¶ 3, Ex. 1.)  The parties stipulated to continue Chobani's deadline to respond to the Complaint to February 4, 2023.  (*Id*.)

On December 12, 2022, Plaintiff's counsel informed Chobani that, though the parties negotiated the extension over the course of several days, Plaintiff's counsel "misread the scheduling" and no longer agrees to the extension.  (*Id*. ¶ 4, Ex. 2.)  Plaintiff's counsel stated they would only agree to a shorter extension, to January 20, primarily because Plaintiff's counsel insists that Chobani respond to the *Gershzon* Complaint before Ms. Nacarino's opposition to Chobani's *Sonner* motion is due.  (*Id*.)  Chobani was unable to agree to the shorter extension, as Chobani relied on the longer deadline in setting schedules, because of the holidays and travel plans, and because Chobani does not agree that there is any basis for tying the extension to respond in this matter to the *Sonner* motion in *Nacarino*.  (*Id*.)  On December 13, 2022, Plaintiff unilaterally withdrew the stipulation and served Chobani with the Complaint on the same day.  (*Id*. ¶ 5, Ex. 3.)  Chobani's deadline to respond to Plaintiff's Complaint is currently January 12, 2023.  (*Id*. ¶ 6.)

**C.  Good Cause Exists to Grant the Extension**

This Application for Extension should be granted because Chobani's Motion to Stay will allow this Court to conserve judicial and party resources while the Northern District of California resolves many, if not all, of the issues that are also before this Court.  (MTS at 10-13.)  Therefore, Chobani's extension should be 30 days after the resolution of the Motion to Stay because Chobani will face undue burden and will waste substantial resources if both actions are permitted to proceed simultaneously, specifically if Chobani is forced to brief a response to Plaintiff's Complaint in this case, only for the Motion to Stay to be granted.

Chobani has, in good faith, attempted to stipulate with Plaintiff's counsel for an extension of time sufficient to allow Chobani to prepare its response to the Complaint but Plaintiff's counsel has rejected Chobani's request.  (*Id*. ¶ 7.)  Granting this extension would not only conserve judicial and party resources, but it would avoid unnecessary overlapping briefing on nearly identical issues.

**D.  Chobani Expects Plaintiff to Oppose this Application**

Before filing this *Ex Parte* Application, Chobani's counsel asked Plaintiff's counsel to stipulate to this relief, but Plaintiff's counsel declined to do so, although Plaintiff's counsel did not identify any prejudice Plaintiff would suffer from the requested extension.  (*Id*. ¶ 8, Ex. 4.)  Chobani submits there would be no prejudice to extending Chobani's time to answer the Complaint, especially since a trial date has not been set yet.

In accordance with California Rules of Court 3.1113(e) and 3.1200 – 3.1207, on January 4, 2023, at 7:15 a.m. PST, Lauren Margolies, counsel for Chobani, e-mailed counsel for Plaintiff to advise that Chobani intended to bring this *ex parte* application.  (*Id*.)  Plaintiff's counsel did not consent.

1

**<u>CONCLUSION</u>**

2       There is good cause to grant this request for relief via *Ex Parte* Application.  Given the

3   current 8-day deadline for Chobani to answer or otherwise respond to the Complaint, there is not

4   time to seek this relief by noticed motion and neither party will be prejudiced by the extension.

5       Chobani requests an extension extending the deadline for Chobani to answer or otherwise

6   respond to Plaintiff's Complaint until 30 days after the Court has ruled on Chobani's Motion to

7   Stay.   Chobani's extension should be granted because, as this litigation is nearly identical to

8   *Nacarino*, the extension would preserve judicial and party resources and allow the Northern

9   District of California to rule on issues properly before it that would also resolve issues before this

10  Court.

11

12  Dated:  January 4, 2023                MORRISON & FOERSTER LLP

13

14                                    By:  *Claudia Vetesi*
                                          _____
15                                        Claudia M. Vetesi
                                          ***Attorneys for Defendant***
16                                        ***Chobani LLC***

17

18

19

20

21

22

23

24

25

26

27

28

5

1  Claudia M. Vetesi, Bar No. 233485
   CVetesi@mofo.com
2  Morrison & Foerster LLP
   425 Market Street
3  San Francisco, California 94105-2482
   Telephone:    415.268.7000
4  Facsimile:    415.268.7522

5

6  Attorneys for Defendant
   Chobani LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/04/2023**
**Clerk of the Court**
BY: SANDRA SCHIRO
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

MIKHAIL GERSHZON, on behalf of
himself and all others similarly situated,

                  Plaintiff,

        v.

CHOBANI LLC,

                  Defendant.

Case No. CGC-22-603042

**DECLARATION OF CLAUDIA M.
VETESI IN SUPPORT OF DEFENDANT
CHOBANI LLC'S *EX PARTE*
APPLICATION FOR EXTENSION OF
TIME**

Dept: 613
Judge: Hon. Andrew Y. S. Cheng

Date Action Filed:  November 18, 2022

I, CLAUDIA M. VETESI, declare:

1.     I am an attorney at the law firm of Morrison & Foerster LLP, counsel for Defendant Chobani LLC ("Chobani").  I submit this declaration in support of Chobani's *Ex Parte* Application for extension of time, in accordance with California Rules of Court Rule 3.1204.

2.     Plaintiff filed the Complaint in this case on November 18, 2022.

3.     On December 8, 2022, the parties filed a stipulation for an extension of time for Chobani to answer or otherwise respond to Plaintiff's Complaint in exchange for acceptance of service.  The parties stipulated to continue Chobani's deadline to respond to the Complaint to February 4, 2023. A true and correct copy of the filed stipulation is attached here as **Exhibit 1**.

4.     On December 12, 2022, Plaintiff's counsel informed Chobani that, though the parties negotiated the extension over the course of several days, Plaintiff's counsel "misread the scheduling" and no longer agreed to the extension.  Plaintiff's counsel stated they would only agree to a shorter extension, to January 20, primarily because Plaintiff's counsel insists that Chobani respond to the *Gershzon* Complaint before Ms. Nacarino's opposition to Chobani's *Sonner* motion is due on January 26, 2023.  Chobani was unable to agree to the shorter extension, as Chobani relied on the longer deadline in setting schedules, because of the holidays and Chobani's employee and general counsel travel plans, because Chobani does not agree that there is any basis for tying the extension to respond in this matter to the *Sonner* motion in *Nacarino*.  A true and correct copy of this correspondence is attached as **Exhibit 2**.

5.     On December 13, 2022, Plaintiff unilaterally withdrew the stipulation and served Chobani with the Complaint on the same day.  A true and correct copy of this withdrawal correspondence is attached as **Exhibit 3**.

6.     Chobani's current deadline to answer or to otherwise respond to the Complaint is January 12, 2023.

7.     Chobani has, in good faith, attempted to stipulate with opposing counsel for an extension of time sufficient to allow Chobani to prepare its response to the Complaint.  Plaintiff's counsel has rejected Chobani's request.

DECLARATION OF C. VETESI ISO EX PARTE APPLICATION FOR EXTENSION OF TIME
CASE NO. CGC-22-603042

1    8.    On January 4, 2023, at 7:15 a.m. PST, Chobani's counsel gave notice to Sue J. Nam,

2  Plaintiff's Counsel, via email that it was seeking an *ex parte* application for extension of time.  Ms.

3  Nam stated that they opposed the application for extension of time.  A true and correct copy of the

4  notice and response is attached as **Exhibit 4**.

5

6    I declare under penalty of perjury of the laws of the State of California that the foregoing

7  is true and correct.

8

9    Dated:  January 4, 2023

10

11    Claudia M. Vetesi

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# Exhibit 1

1   Claudia M. Vetesi, Bar No. 233485
    CVetesi@mofo.com
2   Nicole V. Ozeran, Bar No. 302321
    NOzeran@mofo.com
3   Lena Gankin, Bar No. 333047
    LGankin@mofo.com
4   Morrison & Foerster LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone:    415.268.7000
6   Facsimile:    415.268.7522

7
    Attorneys for Defendant
8   Chobani LLC

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF SAN FRANCISCO

12

13  MIKHAIL GERSHZON, on behalf of          Case No. CGC-22-603042
    himself and all others similarly situated,
14                                          **STIPULATION AND [PROPOSED]**
                   Plaintiff,               **ORDER EXTENDING DEFENDANT**
15                                          **CHOBANI LLC'S RESPONSIVE**
            v.                              **PLEADING DEADLINE**
16
    CHOBANI LLC,
17
                   Defendant.
18

19
            Plaintiff Mikhail Gershzon and Defendant Chobani LLC, through their counsel of record,
20
    hereby stipulate and agree as follows, subject to the approval of the Court:
21
            WHEREAS, Defendant accepted service of the complaint on December 6, 2022;
22
            WHEREAS, Defendant's current deadline to answer or otherwise respond to Plaintiff's
23
    complaint is January 5, 2023;
24
            WHEREAS, given the upcoming holidays and travel schedules, Defendant requires
25
    additional time to respond to the complaint;
26
            WHEREAS, the parties believe that it will conserve both the Court's and the parties'
27
    resources to extend Defendant's deadline to answer or otherwise respond to the complaint by thirty
28

                                        - 1 -

1  (30) days until February 4, 2023;

2      NOW THEREFORE, IT IS HEREBY STIPULATED AND REQUESTED that the Court

3  enter an order extending Defendant's deadline to answer or otherwise respond to the complaint by

4  thirty (30) days after Defendant's current deadline to February 4, 2023.

5

6
7  Dated:  December 8, 2022              MORRISON & FOERSTER LLP

8
9                                   By:  _Claudia Vetesi_____
                                        Claudia M. Vetesi
10                                      **_Attorneys for Defendant_**
                                        **_Chobani LLC_**
11

12

13
14  Dated:  December 8, 2022              REESE LLP

15
16                                  By:  _/s/ Sue J. Nam (with permission)_
                                        Sue J. Nam
17                                      **_Attorneys for Plaintiff_**
                                        **_Mikhail Gershzon_**
18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER EXTENDING RESPONSIVE PLEADING DEADLINE

1

**[PROPOSED] ORDER**

2    The Court, having reviewed the parties' Stipulation to Extend Defendant Chobani LLC's

3    Responsive Pleading Deadline, and good cause otherwise appearing, hereby **APPROVES** the

4    Stipulation and **ORDERS** as follows:

5

6    Defendant's deadline to answer or otherwise respond to the complaint is continued by

7    thirty days to February 4, 2023.

8

9

10    **IT IS SO ORDERED.**

11

12    Dated: _____          _____

13                                            Judge of the Superior Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER EXTENDING RESPONSIVE PLEADING DEADLINE

# Exhibit 2

| | |
|---|---|
| **From:** | Vetesi, Claudia M. |
| **To:** | Sue Nam |
| **Cc:** | Ozeran, Nicole Victoria; Charles Moore; Spencer Sheehan; Levitt, Jamie A.; Michael Reese; George Granade; Margolies, Lauren N.; Gankin, Lena |
| **Subject:** | RE: eFiling accepted for Gershzon v. Chobani LLC |
| **Date:** | Tuesday, December 13, 2022 1:02:31 PM |

Sue,

We spent four days negotiating service of process in *Gershzon*, and an extension for Chobani to respond to the complaint given (i) you served the complaint right before the holidays, which created an impacted schedule; (ii) you are clearly playing games and forum shopping than by filing a copycat action in state court while *Nacarino* is pending.  Indeed, you admit that you are now reneging on our agreement and filed stipulation because you want Chobani's response in *Gershzon* for the *Nacarino Sonner* motion.  That said, when you told us of your "error," we were still willing to work with you to come to a reasonable resolution.  But instead of working with us, you emailed counsel for Chobani early this morning (especially PT time), and without waiting for a response, unilaterally emailed the SF Superior clerk to withdraw a stipulation that was filed by **both** parties.  That is unprofessional and inappropriate conduct.

Given your unilateral conduct, we no longer agree to accept service of the complaint.

Claudia

**CLAUDIA VETESI**
Partner | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
**P:** +1 (415) 268-6626
mofo.com | LinkedIn | Twitter

**From:** Sue Nam <snam@reesellp.com>
**Sent:** Tuesday, December 13, 2022 5:25 AM
**To:** Gankin, Lena <LGankin@mofo.com>
**Cc:** Ozeran, Nicole Victoria <NOzeran@mofo.com>; Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Michael Reese <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Margolies, Lauren N. <LMargolies@mofo.com>
**Subject:** Re: eFiling accepted for Gershzon v. Chobani LLC

External Email

This is absurd. We will call the clerk and tell them the stip was filed in error. Then we will use a process server, and Chobanis answer will be due 30 days from today.

It is bad form that you are trying to take advantage of my clear error regarding the time to oppose your motion.

We were trying to accommodate MoFo so that, first, it would be the counsel on this new case, and, second, so that an answer would not be due immediately after the holidays.

I guess no good deed goes unpunished.

On Mon, Dec 12, 2022, 10:08 PM Gankin, Lena <LGankin@mofo.com> wrote:

> Sue,
>
> We disagree that there is any basis for tying the extension to respond in this matter to the *Sonner* motion in *Nacarino*.  But more importantly, we cannot agree to your proposed date of January 20.  When we agreed to accept service, we did so based on the premise that we would get more time than we would have had we simply accepted service by mail.  If we had accepted service by mail on December 6, our deadline to respond to Plaintiff's complaint would have been January 26 by default.  As such, if you contact the clerk, we can file another stipulation to January 26.
>
> **LENA GANKIN**

**7**

Associate | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
P: +1 (415) 268-6195
mofo.com | LinkedIn | Twitter

---

**From:** Sue Nam <snam@reesellp.com>
**Sent:** Monday, December 12, 2022 1:06 PM
**To:** Gankin, Lena <LGankin@mofo.com>
**Cc:** Ozeran, Nicole Victoria <NOzeran@mofo.com>; Charles Moore <cmoore@reesellp.com>; Spencer Sheehan
<spencer@spencersheehan.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Michael Reese <mreese@reesellp.com>;
George Granade <ggranade@reesellp.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Margolies, Lauren N.
<LMargolies@mofo.com>
**Subject:** Re: eFiling accepted for Gershzon v. Chobani LLC

External Email

---

Then we need to correct because it was based on an obvious mistake.

Sue J. Nam
Reese LLP
http://reesellp.com
917 405 6686

On Mon, Dec 12, 2022 at 3:55 PM Gankin, Lena <LGankin@mofo.com> wrote:

Sue,

We filed the stipulation on Thursday evening.

**LENA GANKIN**
Associate | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
P: +1 (415) 268-6195
mofo.com | LinkedIn | Twitter

---

**From:** Sue Nam <snam@reesellp.com>
**Sent:** Monday, December 12, 2022 12:24 PM
**To:** Ozeran, Nicole Victoria <NOzeran@mofo.com>
**Cc:** Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Levitt, Jamie A.
<JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>; Michael Reese <mreese@reesellp.com>; George
Granade <ggranade@reesellp.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Margolies, Lauren N.
<LMargolies@mofo.com>
**Subject:** Re: eFiling accepted for Gershzon v. Chobani LLC

External Email

---

I hope you have not filed this already because I looked at the scheduling for Chobani's motion on Sonner, and I see
that I misread the scheduling. Our opposition is due on January 26, not Feb. 9.

We will need the answer by January 20, not February 4.

Sue J. Nam
Reese LLP
http://reesellp.com
917 405 6686

On Wed, Dec 7, 2022 at 9:16 PM Ozeran, Nicole Victoria <NOzeran@mofo.com> wrote:

> Hi Sue, that's fine. We made a minor edit to the proposed order for sake of consistency and will file the attached tomorrow morning.
>
> Best,
>
> **NICOLE OZERAN**
> Associate | Morrison & Foerster LLP
> 707 Wilshire Boulevard | Los Angeles, CA 90017-3543
> **P:** +1 (213) 892-5234
> mofo.com | LinkedIn | Twitter
>
> ---
>
> **From:** Sue Nam <snam@reesellp.com>
> **Sent:** Tuesday, December 6, 2022 4:17 PM
> **To:** Ozeran, Nicole Victoria <NOzeran@mofo.com>
> **Cc:** Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>; Michael Reese <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Margolies, Lauren N. <LMargolies@mofo.com>
> **Subject:** Re: eFiling accepted for Gershzon v. Chobani LLC
>
> <mark>External Email</mark>
>
> ---
>
> Sorry, after looking at our firm's calendar, we will be jammed up if you wait until Feb. 7, especially given our different time zones. We can give you 30 days until Feb. 4.
>
> Here is the signed stip so reflecting.
>
> Sue J. Nam
> Reese LLP
> http://reesellp.com
> 917 405 6686
>
> On Tue, Dec 6, 2022 at 3:56 PM Ozeran, Nicole Victoria <NOzeran@mofo.com> wrote:
>
>> Sue, attached is a revised stipulation. Let us know if you have any changes. If none, please add your digital signature and return for filing.
>>
>> Thank you,
>>
>> **NICOLE OZERAN**
>> Associate | Morrison & Foerster LLP
>> 707 Wilshire Boulevard | Los Angeles, CA 90017-3543
>> **P:** +1 (213) 892-5234
>> mofo.com | LinkedIn | Twitter
>>
>> ---
>>
>> **From:** Sue Nam <snam@reesellp.com>
>> **Sent:** Tuesday, December 6, 2022 11:30 AM
>> **To:** Ozeran, Nicole Victoria <NOzeran@mofo.com>
>> **Cc:** Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>; Michael Reese

9

<mreese@reesellp.com>; George Granade <ggranade@reesellp.com>; Vetesi, Claudia M.
<CVetesi@mofo.com>; Margolies, Lauren N. <LMargolies@mofo.com>
**Subject:** Re: eFiling accepted for Gershzon v. Chobani LLC

External Email

Feb 7 is fine.

On Tue, Dec 6, 2022, 2:18 PM Ozeran, Nicole Victoria <NOzeran@mofo.com> wrote:

> Sue,
>
> We don't understand your response about the Sonner motion being academic, particularly as you are still
> litigating in federal court.  Moreover, we do not understand why you need our response in *Gershzon* to
> respond to the *Sonner* motion before Judge Chen.  If you want to provide some clarity on this, please do.
>
> All that being said, while we do not agree with your timing constraints, in exchange for acceptance of
> service, we will stipulate to a February 7 response date in *Gershzon*.
>
> Best,
>
> **NICOLE OZERAN**
> Associate | Morrison & Foerster LLP
> 707 Wilshire Boulevard | Los Angeles, CA 90017-3543
> P: +1 (213) 892-5234
> mofo.com | LinkedIn | Twitter

> **From:** Sue Nam <snam@reesellp.com>
> **Sent:** Monday, December 5, 2022 1:27 PM
> **To:** Ozeran, Nicole Victoria <NOzeran@mofo.com>
> **Cc:** Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Levitt,
> Jamie A. <JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>; Michael Reese
> <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>; Vetesi, Claudia M.
> <CVetesi@mofo.com>; Margolies, Lauren N. <LMargolies@mofo.com>
> **Subject:** Re: eFiling accepted for Gershzon v. Chobani LLC

> External Email

> We believe this case affects Chobani's proposed motion regarding the availability of equitable restitution in
> federal court in the Nacarino case, which is due on January 12. We would like Chobani to respond to
> the Gershzon complaint before our reply is due on February 9.
>
> Alternatively, Chobani could have until February 17 if Chobani determines that motion practice before
> Judge Chen on the equitable relief issue has become academic.
>
>
> Sue J. Nam
> Reese LLP
> http://reesellp.com
> 917 405 6686

> On Mon, Dec 5, 2022 at 3:52 PM Ozeran, Nicole Victoria <NOzeran@mofo.com> wrote:
>
>> Sue,
>>
>> We will accept service of *Gershzon v. Chobani* in exchange for your agreement to extend defendant's
>> response deadline.  Assuming today's date for service, our responsive pleading would be due January 4.

**10**

Given the upcoming depositions in *Nacarino*, holidays, and travel schedules, that date is not feasible nor reasonable. We would like to stipulate to a 44 day extension to **February 17**. A draft stipulation is attached for your review.

In addition, we intend to file an application to re-designate this case as Complex given the nature of the action. Will you consent to that re-designation?

Best,

**NICOLE OZERAN**
Associate | Morrison & Foerster LLP
707 Wilshire Boulevard | Los Angeles, CA 90017-3543
**P:** +1 (213) 892-5234
mofo.com | LinkedIn | Twitter

---

**From:** Ozeran, Nicole Victoria <NOzeran@mofo.com>
**Sent:** Friday, December 2, 2022 10:04 AM
**To:** Sue Nam <snam@reesellp.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>
**Cc:** Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Michael Reese <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>; Ozeran, Nicole Victoria <NOzeran@mofo.com>
**Subject:** RE: eFiling accepted for Gershzon v. Chobani LLC

Hi Sue,

Our client is out of pocket today, but we will check with them and get back to you on Monday. Have a nice weekend.

Best,

**NICOLE OZERAN**
Associate | Morrison & Foerster LLP
707 Wilshire Boulevard | Los Angeles, CA 90017-3543
**P:** +1 (213) 892-5234
mofo.com | LinkedIn | Twitter

---

**From:** Sue Nam <snam@reesellp.com>
**Sent:** Thursday, December 1, 2022 3:01 PM
**To:** Ozeran, Nicole Victoria <NOzeran@mofo.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>
**Cc:** Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Michael Reese <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>
**Subject:** Fwd: eFiling accepted for Gershzon v. Chobani LLC

<mark>External Email</mark>

---

Please let us know if you will accept service of this complaint on behalf of Chobani.

Sue J. Nam
Reese LLP
http://reesellp.com
917 405 6686

===================================================================

# Exhibit 3

| | |
|---|---|
| **From:** | Sue Nam |
| **To:** | SFefiling@sftc.org |
| **Cc:** | Vetesi, Claudia M.; Ozeran, Nicole Victoria |
| **Subject:** | Gershzon v. Chobani LLC, CGC-22-603042 |
| **Date:** | Tuesday, December 13, 2022 11:27:11 AM |

**External Email**

Good morning. The parties recently filed a Stipulation and [Proposed] Order Extending Defendant's Responsive Pleading Deadline in this case on Thursday, December 8. There was an error in the filing, and I ask that the filing be withdrawn.  Thank you.

I will follow up with a telephone call this morning to confirm.

Sue J. Nam
Reese LLP
http://reesellp.com
917 405 6686

# Exhibit 4

| | |
|---|---|
| **From:** | Sue Nam <snam@reesellp.com> |
| **Sent:** | Wednesday, January 4, 2023 7:33 AM |
| **To:** | Margolies, Lauren N. |
| **Cc:** | mreese@reesellp.com; spencer@spencersheehan.com; ggranade@reesellp.com; cmoore@reesellp.com; Ozeran, Nicole Victoria; Vetesi, Claudia M.; Levitt, Jamie A.; Gankin, Lena |
| **Subject:** | Re: Gershzon v. Chobani LLC - Notice of filings |

==External Email==

---

Absolutely not.


Sue J. Nam
Reese LLP
http://reesellp.com
917 405 6686


On Wed, Jan 4, 2023 at 10:15 AM Margolies, Lauren N. <LMargolies@mofo.com> wrote:

> Good morning, Sue,
>
>
> Chobani intends to file a Motion to Stay in *Gershzon* pending receiving a hearing date from the Court. Chobani also intends to file an *ex parte* application for an extension of time this afternoon. This application for an extension will request that Chobani's time to answer or otherwise respond to the complaint be extended to 30 days after our anticipated Motion to Stay is ruled on.
>
>
> Do you consent to this extension application?
>
>
> Thanks,
>
>
> **LAUREN MARGOLIES**
>
> **Associate**
>
>
> T +1 (212) 336-4380

1

**13**

M +1 (646) 732-9828

# ⅢORRISON FOERSTER

===========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

1

2

3

4

5

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  COUNTY OF SAN FRANCISCO

10  MIKHAIL GERSHZON, on behalf of           Case No. CGC-22-603042
    himself and all others similarly situated,
11                                           **[PROPOSED] ORDER GRANTING**
                         Plaintiff,          **DEFENDANT CHOBANI LLC'S** *EX*
12                                           *PARTE* **APPLICATION FOR EXTENSION**
                                             **OF TIME**
            v.
13                                           Dept: 613
    CHOBANI LLC,                             Judge: Hon. Andrew Y. S. Cheng
14
                         Defendant.          Date Action Filed:  November 18, 2022
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# [PROPOSED] ORDER

The Court, having considered the arguments of counsel and the pleadings and papers filed in connection with Defendant Chobani LLC's *Ex Parte* Application for Extension of Time, and good cause appearing, hereby **GRANTS** Chobani's Request.  Chobani's time to answer or otherwise respond to the Complaint is extended until 30 days after the Court has ruled on Chobani's Motion to Stay pending resolution of the related and pending federal court case, *Nacarino v. Chobani LLC*, No. 3:20-cv-07437 (N.D. Cal.).

**IT IS SO ORDERED.**

DATED:                                                    _____

                                                                            Hon. Andrew Y.S. Cheng

1    CLAUDIA M. VETESI (CA SBN 233485)
     CVetesi@mofo.com
2    NICOLE V. OZERAN (CA SBN 302321)
     NOzeran@mofo.com
3    LENA GANKIN (CA SBN 333047)
     LGankin@mofo.com
4    MORRISON & FOERSTER LLP
     425 Market Street
5    San Francisco, California 94105-2482, U.S.A.
     Telephone: 415.268.7000
6    Facsimile: 415.268.7522

7    Attorneys for Defendant
     CHOBANI LLC

8

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/04/2023**
**Clerk of the Court**
BY: SANDRA SCHIRO
Deputy Clerk

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      COUNTY OF SAN FRANCISCO

11   MIKHAIL GERSHZON, on behalf of            Case No. CGC-22-603042

12   himself and all others similarly situated,    **PROOF OF SERVICE**

13                    Plaintiff,              Dept: 613
                                             Judge: Hon. Andrew Y.S. Cheng
14          v.
                                             Date Action Filed: November 18, 2022
15   CHOBANI LLC,

16                    Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. CGC-22-603042
SF:5264326                              1

## NOTICE OF MOTION

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, CA 94105. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on January 4, 2023, I served a copy of:

**DEFENDANT CHOBANI LLC'S *EX PARTE* APPLICATION FOR EXTENSION OF TIME AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**DECLARATION OF CLAUDIA M. VETESI IN SUPPORT OF DEFENDANT CHOBANI LLC'S *EX PARTE* APPLICATION FOR EXTENSION OF TIME WITH EXHIBITS 1 - 4**

**[PROPOSED] ORDER GRANTING DEFENDANT CHOBANI LLC'S *EX PARTE* APPLICATION FOR EXTENSION OF TIME**

☒    **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC 2.251]** by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system from cmiddleman@mofo.com to the email address(es) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6 and CRC Rule 2.251.

| | |
|---|---|
| Sue J. Nam<br>Michael R. Reese<br>REESE LLP<br>100 West 93rd Street, 16th Floor<br>New York, NY 10025<br>snam@reesellp.com<br>mreese@reesellp.com | *Attorneys for Plaintiff* |
| George V. Granade<br>REESE LLP<br>8484 Wilshire Boulevard, Suite 515<br>Los Angeles, CA 90211<br>ggranade@reesellp.com | *Attorneys for Plaintiff* |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Honolulu, Hawaii, this 4th day of January, 2023.

| | |
|---|---|
| _____<br>Caitlin Middleman<br>(type) | *Caitlin K Middleman*<br>_____<br>(signature) |

PROOF OF SERVICE
CASE NO. CGC-22-603042
SF:5264326

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   CLAUDIA M. VETESI (CA SBN 233485)
    CVetesi@mofo.com
2   NICOLE V. OZERAN (CA SBN 302321)
    NOzeran@mofo.com
3   LENA GANKIN (CA SBN 333047)
    LGankin@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482, U.S.A.
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   Attorneys for Defendant
    CHOBANI LLC

8

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/04/2023**
**Clerk of the Court**
BY: JUDITH NUNEZ
*Deputy Clerk*

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                COUNTY OF SAN FRANCISCO

11  MIKHAIL GERSHZON, on behalf of          Case No. CGC-22-603042

12  himself and all others similarly situated,   **DEFENDANT CHOBANI LLC'S**
                                                 **NOTICE OF MOTION AND MOTION**
13                   Plaintiff,                  **TO STAY PROCEEDINGS;**
                                                 **MEMORANDUM OF POINTS AND**
14          v.                                   **AUTHORITIES IN SUPPORT**
                                                 **THEREOF**
15  CHOBANI LLC,
                                                 Dept:  613
16                   Defendant.                  Judge:  Hon. Andrew Y.S. Cheng
                                                 Date: TBD
17                                               Time:  TBD

18                                               Date Action Filed:  November 18, 2022

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION</u>

**TO PLAINTIFF MIKHAIL GERSHZON AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on a date and time[1] as soon as the matter may be heard in Department 613 of the San Francisco County Superior Court, Honorable Judge Andrew Y.S. Cheng presiding, located at 400 McAllister Street, San Francisco, California 94102, defendant Chobani LLC will and hereby does move to stay the proceedings in this action pending resolution of *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC (AGT)).

Chobani's motion to stay is based on this notice of motion, the accompanying memorandum of points and authorities, the concurrently filed request for judicial notice and declaration of Claudia M. Vetesi, the papers and pleadings on file with the Court, and all arguments presented before the Court.

Dated:  January 4, 2023          MORRISON & FOERSTER LLP

By:  *Claudia Vetesi*
          Claudia M. Vetesi
          ***Attorneys for Defendant***
          ***Chobani LLC***

---

[1] Counsel for Chobani LLC contacted Department 618 by phone and email and was unable to obtain a hearing date.  On January 4, 2023, the temporary clerk instructed Chobani to file its Motion with "TBD" placeholders for the Motion's hearing date and time.  (Declaration of Claudia M. Vetesi in Support of Defendant Chobani LLC's Motion to Stay Proceedings ("Vetesi Decl."), ¶ 8.)

NOTICE OF MOTION AND MOTION TO STAY; MPA IN SUPPORT
CASE NO. CGC-22-603042
SF:4986981                                    i

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   THE NACARINO AND GERSHZON COMPLAINTS ARE DUPLICATIVE ............... 3

    A.    The *Nacarino* and *Gershzon* Complaints Are Virtually Identical ......................... 3

    B.    *Nacarino* Has Been Significantly Litigated ................................................. 5

III.  ARGUMENT ............................................................................................... 8

    A.    This Court Has Broad Discretion to Stay This Case in Favor of the
    Previously Filed *Nacarino* Case ............................................................ 8

    B.    All Relevant Factors Favor a Stay ........................................................... 9

        1.    The First Factor: Without a Stay in This Case, Chobani Will Have
        to Defend Against Yet Another Identical Lawsuit Filed by
        Plaintiff's Counsel................................................................... 9

        2.    The Second Factor: Staying This Case Will Prevent Unseemly
        Conflicts and Inconsistent Results ........................................... 11

        3.    The Third Factor: Because the *Nacarino* Case Encompasses This
        Case, the *Nacarino* Court Is Better Situated to Determine the Issues
        Implicated in Both Actions ...................................................... 12

        4.    The Fourth Factor: *Nacarino* Is Pending in Federal Court in
        California—a "Critical Factor" That Weighs Heavily in Favor of a
        Stay........................................................................................ 12

IV.   CONCLUSION............................................................................................ 13

1

2
<u>**TABLE OF AUTHORITIES**</u>

3
**Page(s)**

4
**Cases**

5
*Bancomer, S.A. v. Superior Court*
6
    (1996) 44 Cal.App.4th 1450 ................................................................. 10

*Caiafa Pro. Law Corp. v. State Farm Fire & Cas. Co.*
7
    (1993) 15 Cal.App.4th 800 ........................................................... *passim*

8
*Celotex Corp. v. Am. Ins. Co.*
9
    (1987) 199 Cal.App.3d 678 ................................................................. 11

*Clark's Fork Reclamation Dist. #2069 v. Johns*
10
    (1968) 259 Cal.App.2d 366 ................................................................... 9

11
*Collins v. eMachines, Inc.*
12
    (2011) 202 Cal.App.4th 249 ................................................................. 7

13
*Dodge v. Superior Court*
14
    (1934) 139 Cal.App. 178 ...................................................................... 9

15
*Farmland Irrigation Co. v. Dopplmaier*
    (1957) 48 Cal.2d 208 ........................................................................... 9

16
*Ferreri v. Chobani LLC*
17
    (S.D.N.Y., No. 1:20-cv-02161-JGK) ................................................... 1

18
*Franklin v. Gwinnet Cnty. Pub. Sch.*
19
    (1992) 503 U.S. 60 ............................................................................... 7

20
*Freem v. Fed. Express Corp.*
    (Orange County Super. Ct. July 5, 2019) 2019 Cal. Super. LEXIS 30363 ............................. 8

21
*Freiberg v. City of Mission Viejo*
22
    (1995) 33 Cal.App.4th 1484 ................................................................. 8

23
*Georgia v. Brailsford*
24
    (1792) 2 U.S. 402 ................................................................................. 7

25
*Justice v. United States*
    (11th Cir. 1993) 6 F.3d 1474 ............................................................... 2

26
*Klein v. Superior Court*
27
    (1988) 198 Cal.App.3d 894 ............................................................... 10

28

*Landis v. N. Am. Co.*
    (1936) 299 U.S. 248 ........................................................................................................... 8

*Nacarino v. Chobani LLC*
    (N.D. Cal., No. 20-cv-7437-EMC (AGT)) ....................................................... *passim*

*Schneider v. Vennard*
    (1986) 183 Cal.App.3d 1340 .......................................................................................... 10

*Simmons v. Superior Court*
    (1950) 96 Cal.App.2d 119 .................................................................................... 9, 10, 11

*Sonner v. Premier Nutrition Corp.*
    (9th Cir. 2020) 971 F.3d 834 ........................................................................................... 1

*Sumitomo Bank of Cal. v. Davis*
    (1992) 4 Cal.App.4th 1306 ............................................................................................... 9

*Thomson v. Cont'l Ins. Co.,*
    (1967) 66 Cal.2d 738 .................................................................................................. 9, 12

**Statutes**

Evid. Code, § 452, subd. (d) ........................................................................................................ 6

**Other Authorities**

30A C.J.S. Equity § 23 .................................................................................................................. 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Chobani LLC requests that the Court stay this case pending resolution of a nearly identical putative class action lawsuit pending in the United States District Court for the Northern District of California, *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC (AGT)).  *Nacarino* was filed by the same Plaintiffs' counsel in the federal District Court more than two years ago.[2]  The gravamen of the two suits is identical.  Both complaints (1) assert a single cause of action for violation of the unlawful prong of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200 et seq.; (2) concern the same product— Chobani's Vanilla Blended Greek Yogurt (the "Product"); (3) allege that the Product's label does not comply with FDA labeling requirements because it displays the "Vanilla" representation on the front of its package with no qualifiers; (4) assert identical putative classes of California consumers (except that the putative *Gershzon* class is for a shorter time period and thus subsumed by the putative *Nacarino* class); and, (5) seek overlapping remedies.

The parties have engaged in substantial litigation in the *Nacarino* action, including multiple rounds of complaints and motions to dismiss, argument hearings, case management conferences, written discovery, document productions, and depositions.  Additionally, Ms. Nacarino has noticed six fact witness depositions to take place prior to the parties' March 2023 fact discovery cut-off.  The parties are scheduled to brief class certification in May 2023.  Further, starting next month, in January 2023, the parties are set to brief a motion as to whether Plaintiff is entitled to seek equitable restitution in the federal court under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.* (9th Cir. 2020) 971 F.3d 834.

Plaintiff's counsel does not dispute that they have filed a duplicative action in state court that is subsumed by the *Nacarino* action.  Indeed, communications with Plaintiff's counsel

---

[2] *Gershzon* is Plaintiff's counsel's *sixth* nearly identical complaint filed against Chobani related to Product, and this Court is its *third* jurisdiction.  Prior to *Nacarino*, in March 2020, Plaintiff's counsel filed *Ferreri v. Chobani LLC* (S.D.N.Y., No. 1:20-cv-02161-JGK), alleging the exact same claims asserted here.  After Chobani filed a pre-motion to dismiss letter in S.D.N.Y, on October 29, 2020, Plaintiff's counsel voluntarily dismissed the case.  (*Id.*, Dkt. No. 16.)  Days before dismissing *Ferreri,* Plaintiffs' counsel filed *Nacarino* in N.D. Cal.

1    regarding Chobani's request for an extension of the responsive pleading deadline in *Gershzon*

2    have made clear that Plaintiff's counsel filed *Gershzon* to forum shop for the best court to

3    entertain their request for restitution on a class-wide basis.[3]  (Vetesi Decl. ¶ 2, Ex. 1.)  The courts

4    should not be used for gamesmanship.

5         In *Nacarino*, Plaintiff's counsel is seeking restitution as an equitable remedy under the

6    UCL to compensate the putative class for "overpaying" for Chobani's Product based on the

7    "Vanilla" statement.  The *Nacarino* court granted Chobani leave to file a motion under *Sonner*

8    arguing that Ms. Nacarino cannot seek equitable restitution under the UCL because she had an

9    adequate remedy at law for damages (claims under California's False Advertising Law ("FAL")

10   and California's Consumers Legal Remedies Act ("CLRA"), which the Court dismissed for

11   failure to state a deceptive labeling claim as a matter of law).  Since Ms. Nacarino's alleged harm

12   is purely economic, and she has failed to plead the lack of an adequate remedy at law, equitable

13   relief is not an appropriate remedy for her purported injury.  That her FAL and CLRA claims

14   were dismissed does not change the result.  (30A C.J.S. Equity § 23 ["In determining whether

15   equitable relief is appropriate, it is the availability of the legal remedy itself, and not its possible

16   lack of success, that is the determining factor."]; *Justice v. United States* (11th Cir. 1993) 6 F.3d

17   1474, 1482, fn.16 ["a legal remedy" need not "succeed to be adequate"].)

18        As *Gershzon* is fully encompassed by *Nacarino*, resolution of *Nacarino* would impact and

19   potentially resolve *Gershzon*.  Litigating the two actions simultaneously, therefore, would

20   needlessly consume judicial resources, cause the parties to unnecessarily incur significant costs,

21   risk inconsistent rulings and outcomes, and harass Chobani, particularly where the federal case is

22   years further along in litigation.  A stay of *Gershzon* while *Nacarino* is pending will promote

23   judicial efficiency, avoid inconsistencies, and conserve the resources of the Court and the parties.

24        For these reasons, the Court should stay this matter until *Nacarino* is resolved on the

25   merits.  Alternatively, the Court could stay this matter until the *Nacarino* court rules on Chobani's

26   _____

27   [3] To take advantage of its new state court filing, Plaintiff's counsel insisted that Chobani respond
     to the state court complaint before Plaintiff's response to the *Sonner* Motion in *Nacarino* is due,
28   asserting that the state court action affects the *Sonner* motion regarding availability of equitable
     restitution.  (Vetesi Decl. ¶ 2, Ex. 1.)

1    *Sonner* motion and can then assess whether a further stay is warranted.

2    **II.    THE NACARINO AND GERSHZON COMPLAINTS ARE DUPLICATIVE**

3        **A.    The *Nacarino* and *Gershzon* Complaints Are Virtually Identical**

4        The *Gershzon* action is a copycat of the *Nacarino* action in all material respects.  In both

5    matters, the plaintiffs assert a single cause of action for violation of the UCL's unlawful prong[4]

6    concerning the same product— Chobani's Vanilla Blended Greek Yogurt (the "Product").  Both

7    plaintiffs allege that the label on Chobani's Product violates the UCL unlawful prong because it

8    purportedly does not comply with FDA labeling requirements where it displays the term

9    "Vanilla" on the front of its package with no qualifiers.  Moreover, both plaintiffs seek to

10   represent nearly identical putative classes, consisting of California consumers—the only

11   difference being that the *Gershzon* class period is shorter than the *Nacarino* class period.  There

12   is, otherwise, no difference.  And indeed, the two plaintiffs even seek the same remedies,

13   though—again—*Nacarino* seeks more than *Gershzon*.  In addition to seeking each remedy sought

14   by *Gershzon*, *Nacarino* also seeks injunctive relief.  *Nacarino*, therefore, entirely subsumes

15   *Gershzon*.

16       The chart below demonstrates the near-perfect overlap between the two cases, while also

17   highlighting that *Nacarino* is broader than *Gershzon*:

18

19

20

21

22

23

24

25

26

27   [4] As discussed below in Section II. B., Ms. Nacarino originally pled claims under all three prongs of the UCL.  Her claims under the unfair and fraudulent prongs of the UCL were dismissed at the

28   pleading stage, leaving only her unlawful prong claim.  See Section II. B.

| | *Nacarino* TAC[5] | *Gershzon* Complaint |
|---|---|---|
| **Defendant** | Chobani LLC | Chobani LLC |
| **Date Filed** | October 23, 2020 | November 18, 2022 |
| **Gravamen of Complaint** | "Defendant does not comply with FDA labeling requirements because it displays the 'Vanilla' representation on the front of its package with no qualifiers." (¶ 5) | "Defendant does not comply with FDA labelling requirements because it displays the 'Vanilla' representation on the front of its package with no qualifiers." (¶ 5) |
| **Product at Issue** | Chobani's Greek Yogurt Vanilla Blended. (¶ 1) | Chobani's Greek Yogurt Vanilla Blended. (¶ 1) |
| **Scope of Proposed Class** | "All persons in California who have purchased Defendant's Product from October 23, 2016 to the date of judgment." (¶ 37) | "All persons in California who purchased Defendant's Product from November 18, 2018, to the date of judgment." (¶ 39) |
| **Types of Mislabeling Alleged** | "Vanilla" claim (¶ 5) | "Vanilla" claim (¶ 5) |
| **Claims** | UCL Unlawful Prong | UCL Unlawful Prong |
| **Injury Alleged** | "Defendant's unlawful conduct caused Plaintiff and members of the Class to suffer injury and to lose money, as it denied them the benefit of the bargain when they decided to purchase Defendant's Product over other products that are properly labeled and less expensive.  Had Plaintiff and the members of the Class been aware of Defendant's unlawful tactics, they would not have purchased Defendant's Product at all or would have paid less than what they did for it." (¶ 50) | "Defendant's unlawful conduct caused Plaintiff and members of the Class to suffer injury and to lose money, as it denied them the benefit of the bargain when they decided to purchase Defendant's Product over other products that are properly labeled and less expensive.  Had Plaintiff and the members of the Class been aware of Defendant's unlawful tactics – that the unqualified 'Vanilla' representation on the front of the packaging, which they relied upon in making their purchase, violated FDA regulations in that the vanilla flavor of the Product is not independently derived from the vanilla plant, they would not have purchased Defendant's Product at all or would have paid less than what they did for it." (¶¶ 56-57) |
| **Relief Requested** | • Restitution and disgorgement<br>• Declaratory and injunctive relief<br>• Attorneys' fees | • Restitution and disgorgement<br>• Declaratory Relief<br>• Attorneys' fees |

---

[5] Citations are to the *Nacarino* Third Amended Complaint ("TAC"), Dkt. No. 51.

| | *Nacarino* TAC[5] | *Gershzon* Complaint |
|---|---|---|
| | • Costs | • Costs |
| **Upcoming Deadlines** | • Chobani's motion seeking dismissal of restitution claims under *Sonner* due January 12, 2023.<br>• Ms. Nacarino's motion for class certification due May 18, 2023 | • Date served: December 13 |

### B. *Nacarino* Has Been Significantly Litigated

Since October 2020, the *Nacarino* parties, including the same Plaintiff's counsel in both actions, have engaged in substantial litigation.

*Pleadings:* Ms. Nacarino filed four complaints and the parties briefed three rounds of motions to dismiss, which resulted in narrowing Ms. Nacarino's claim to a single cause of action under the UCL's unlawful prong:

- Ms. Nacarino filed her initial **Complaint** on October 23, 2020. (*Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC (AGT)), Complaint, Dkt. No. 1.)

- Ms. Nacarino filed a **First Amended Class Action Complaint ("FAC")** on January 26, 2021. Chobani filed a Motion to Dismiss the FAC on March 26, 2021. (*Nacarino*, No. 20-cv-7437-EMC (AGT), First Amended Complaint, Dkt. No. 21)

- Before the Motion was fully briefed, Ms. Nacarino amended again and filed a **Second Amended Complaint ("SAC")** on April 16, 2021. (*Nacarino*, No. 20-cv-7437-EMC (AGT), Second Amended Complaint, Dkt. No. 26)

- Chobani filed a **Motion to Dismiss the SAC** on June 11, 2021. (*Nacarino*, No. 20-cv-7437-EMC (AGT), Motion to Dismiss SAC, Dkt. No. 30)

- On August 9, 2021, the court granted most of Chobani's Motion to Dismiss the SAC, finding that Ms. Nacarino's "complaint fails to state a deceptive labeling claim as a matter of law." (*Nacarino*, No. 20-cv-7437-EMC (AGT), Order Granting Motion to Dismiss SAC In Part ("SAC Order"), Dkt. No. 48, at 9.) **The court dismissed Ms. Nacarino's claims under the UCL's unfair and fraudulent prongs, the FAL, and the CLRA, with prejudice.** The court permitted Ms. Nacarino's single claim under the UCL's unlawful prong to proceed, dismissed Ms. Nacarino's claim for restitution or disgorgement because there was no reason why legal damages were inadequate under *Sonner*, and found that Ms. Nacarino has standing to pursue injunctive relief. The court permitted Ms. Nacarino to amend to try to plead entitlement to restitution. (*Id.*)

- Ms. Nacarino filed the operative **Third Amended Complaint ("TAC")** on September 8, 2021, asserting only a claim for restitution and injunctive relief

1
2
3
4

under the UCL's unlawful prong.  (Vetesi Decl. ¶ 3, Ex. 2 (*Nacarino*, No. 20-cv-7437-EMC (AGT), Third Amended Complaint, Dkt. No. 51).)[6]  Ms. Nacarino revised her theory of liability and alleged that Chobani's labels violate FDA regulations not because the vanilla flavor allegedly does not come *exclusively* from the vanilla plant, but because the vanilla flavor of the Product does not come *independently* from the vanilla plant.

5
6
7

- Chobani filed a **Motion to Dismiss the TAC** on October 13, 2021, arguing that Ms. Nacarino failed to state a claim under the UCL's unlawful prong where she could not allege plausible reliance on the front-label's "Vanilla" statement and still failed to allege why monetary damages were inadequate under *Sonner*.  (*Nacarino*, No. 20-cv-7437-EMC (AGT), Motion to Dismiss TAC, Dkt. No. 54.)

8
9
10
11
12
13
14
15

- The court denied Chobani's Motion to Dismiss the TAC, holding that Ms. Nacarino sufficiently pled actual reliance and deception as to her individual purchase, and that she did not need to show (for standing) that her reliance was "reasonable" or plausible.  (Vetesi Decl., ¶ 4, Ex. 3 (*Nacarino*, No. 20-cv-7437-EMC (AGT), Order Denying Motion to Dismiss TAC ("TAC Order"), Dkt. No. 61 at 11-12.)  In response to Chobani's *Sonner* argument, the court noted that the dispute was "in not well charte[d] territory" (December 15, 2021 Motion to Dismiss TAC Hearing Transcript at 34:8-9) but declined to dismiss Ms. Nacarino's equitable restitution claim on this motion, forecasting that "[t]he issue of Plaintiff's entitlement to seek the equitable remedy of restitution may be revisited at a later stage."  (TAC Order at 18.)[7]  Chobani filed its Answer on March 14, 2022.  (*Id*. at ¶ 6.)

16
17

- The court granted leave for Chobani to brief the issue of equitable remedies in January 2023.  (*Nacarino*, No. 20-cv-7437-EMC (AGT), Answer to TAC, Dkt. No. 69.)

18
19
20
21
22
23

***Court Hearings and Conferences:*** The parties also have several pre-trial briefings scheduled, including on the issue of available remedies and class certification.

In January 2023, the *Nacarino* parties intend to engage in motion practice concerning Ms. Nacarino's ability to seek equitable relief despite having an adequate remedy at law for the alleged harm.  (Vetesi Decl. ¶ 5.)  Chobani's motion on this issue ("Chobani's *Sonner* motion") is

24
25
26

---

[6] As further explained in Chobani's concurrently-filed Request for Judicial Notice, the Court may take judicial notice of the complaint filed in the *Nacarino* action.  (Evid. Code, § 452, subd. (d) [courts may take judicial notice of any "[r]ecord[] of . . . any court of record of the United States"].)

27
28

[7] Chobani's interlocutory review and immediate appeal of the court's decision in *Nacarino,* arguing that only the Ninth Circuit could resolve the confusion among district courts regarding how and when a plaintiff must demonstrate that legal remedies are "inadequate" under *Sonner,* was denied.  (*Nacarino*, No. 20-cv-7437-EMC (AGT), Dkt. Nos. 64, 74.)

due January 12, 2023, and the hearing will be held on February 23, 2023.  (*Id.*)  Chobani's *Sonner* motion will necessarily implicate *Gershzon*, which has identical concerns because, before a plaintiff can obtain equitable relief, he must demonstrate that his remedy at law is inadequate. This rule is among the longest-standing requirements in the American judicial system, and it applies with equal force today.  (See, e.g., *Georgia v. Brailsford* (1792) 2 U.S. 402, 408 ["[S]uits in equity shall not be sustained … in any cases where plain, adequate, and complete remedy may be had at law."]; *Franklin v. Gwinnet Cnty. Pub. Sch.* (1992) 503 U.S. 60, 75-76 ["[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief."].)  The *Sonner* motion may resolve or provide guidance as to whether Mr. Gershzon can pursue his claims for equitable relief where he has an adequate remedy at law. (*Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 260 ["This conclusion follows from the general principle of equity that equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate."].)

> **Discovery:** The *Nacarino* parties have also engaged in significant discovery.  (Vetesi Decl. ¶ 6)

- The parties have propounded and responded to multiple sets of discovery requests.
- The parties have conducted ESI review of thousands of documents.
- The parties have conducted party depositions.
- Ms. Nacarino has noticed six additional fact witness depositions.
- The parties have engaged in numerous meet and confer conferences regarding discovery issues and briefed multiple disputes for the *Nacarino* court's consideration.
- Discovery has been substantially completed and is set to close on March 11, 2023.
- Remaining case deadlines will be set after the court rules on class certification.

Now, after more than two years of actively litigating *Nacarino*, and on the precipice of class certification, Plaintiff's counsel filed this action.  But this action is nothing more than an attempt to forum shop and harass Chobani.  Indeed, Plaintiff's counsel all but admit that they

1    filed this action to pressure Chobani to not file its intended *Sonner* motion in *Nacarino*.  (Vetesi

2    Decl., ¶ 2 and Ex. 1 (Dec. 5, 2022, correspondence from Plaintiff's counsel stating that, given the

3    *Gershzon* complaint, "motion practice before Judge Chen on the equitable relief issue has become

4    academic.").)  Alternatively, Plaintiff's counsel intend to use Chobani's responsive pleading in

5    this matter in the *Nacarino* action; counsel stated that they "would like Chobani to respond to the

6    Gershzon complaint before [Ms. Nacarino's] reply [to Chobani's *Sonner* motion] is due on

7    February 9" because they "believe this case affects Chobani's proposed [*Sonner*] motion. . . ."

8    (*Id.*)  Plaintiff's counsel should not be permitted to abuse the court system in this way.

9        ***Class Certification:***  *Nacarino* is nearing class certification.  The parties are also

10    scheduled to begin briefing class certification in May 2023.  (Vetesi Decl. ¶ 7.)  The *Nacarino*

11    court's ruling on class certification will likely implicate Gershzon, as the two putative classes are

12    overlapping.

13        **III.    ARGUMENT**

14            **A.    This Court Has Broad Discretion to Stay This Case in Favor of the**
             **Previously Filed *Nacarino* Case**
15

16        This Court can, and should, stay this action because it duplicates the previously filed and

17    long-litigated *Nacarino* case, which is currently pending in N.D. Cal.  The power to stay

18    proceedings is incidental to the power inherent in every court to control its docket.  (See *Landis v.*

19    *N. Am. Co.* (1936) 299 U.S. 248, 254-255.)  This power includes the authority to stay proceedings

20    in the interests of justice and to promote judicial efficiency.  (*Freiberg v. City of Mission Viejo*

21    (1995) 33 Cal.App.4th 1484, 1489.)

22        The decision to stay an action in light of parallel federal proceedings is governed by

23    considerations of comity.  Where, as here, a federal action already covers "the same subject

24    matter" as a later-filed or narrower state court action, courts routinely stay the state court

25    proceeding.  (See, e.g., *Freem v. Fed. Express Corp.* (Orange County Super. Ct. July 5, 2019)

26    2019 Cal. Super. LEXIS 30363, at *4 [granting stay where "the federal court action has moved

27    forward in terms of both discovery and motion practice . . . By way of contrast, there has been no

28    discovery (as far as the Court knows) or motions (other than the present one) filed in this case."];

1    *Caiafa Pro. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 807 ["[I]t is

2    difficult for us to see how the trial court could have exercised its discretion in any other way but

3    to grant State Farm's request for a stay of the state court proceedings. . .  pending the outcome of

4    the federal fraud action."]; *Clark's Fork Reclamation Dist. #2069 v. Johns* (1968) 259

5    Cal.App.2d 366, 369-370; *Sumitomo Bank of Cal. v. Davis* (1992) 4 Cal.App.4th 1306, 1312;

6    *Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 215-216; *Simmons v. Superior*

7    *Court* (1950) 96 Cal.App.2d 119, 122-123; *Dodge v. Superior Court* (1934) 139 Cal.App. 178,

8    181-182.)

9                            **B.    All Relevant Factors Favor a Stay**

10           In determining whether to grant a stay in favor of an earlier-filed federal action, California

11   courts consider four factors:

12           1.   The importance of discouraging multiple litigation designed solely to harass an

13                 adverse party;

14           2.   Avoiding unseemly conflicts with the courts of other jurisdictions;

15           3.   Whether the rights of the parties can best be determined by the court of the other
                  jurisdiction; and,

16

17           4.   Whether the federal action is pending *in California*—a "critical factor" heavily
                  favoring a stay of the state court action.

18   (*Caiafa*, *supra*, 15 Cal.App.4th at p. 804; see also *Thomson v. Cont'l Ins. Co.* (1967) 66 Cal.2d

19   738, 746-747 [noting that courts "should consider the importance of discouraging multiple

20   litigation designed solely to harass an adverse party, and of avoiding unseemly conflicts with the

21   courts of other jurisdictions"].)  Each of these factors weighs in favor of a stay.

22                    **1.    The First Factor: Without a Stay in This Case, Chobani Will
                             Have to Defend Against Yet Another Identical Lawsuit Filed by
23                           Plaintiff's Counsel**

24           As discussed in Section II, the *Nacarino* and *Gershzon* complaints are virtually

25   indistinguishable:

26           •   Both complaints are premised on the allegation that Product does not comply with

27                 FDA labeling requirements because it displays the "Vanilla" representation on the

28

1    front of its package with no qualifiers.  (*Nacarino* TAC ¶ 5; *Gershzon* Compl. ¶

2    5.)

3    • Both complaints allege that "the Product is unlawfully [labelled] because its label

4    violates 21 C.F.R. § 101.22(i), including subsection [(i)(1)](iii)" and therefore

5    "violate[s] the 'unlawful' prong of the UCL."  (*Nacarino* TAC ¶¶ 47-49; *Gershzon*

6    Compl. ¶¶ 53-55.)

7    • Both complaints assert an identical claim under the UCL unlawful prong based on

8    the same core factual allegations.

9    • Both complaints seek identical damages and declaratory relief.

10    • Though *Nacarino* concerns a broader class (based on date range only), and also

11    seeks an additional form of relief (injunctive relief), there is nothing in *Gershzon*

12    that will not be addressed in *Nacarino*.

13    Chobani will face undue burden if both actions are permitted to proceed simultaneously.

14    Chobani would be forced to litigate identical legal and factual questions, respond to duplicative

15    discovery, and engage in duplicative motion practice.  This "great and unnecessary inconvenience

16    and expense" to Chobani and the Court and should be avoided.  (*Simmons*, *supra*, 96 Cal.App.2d

17    at p. 131; see also *Caiafa*, *supra*, 15 Cal.App.4th at p. 807 ["the interest in judicial economy"

18    would be "well served" were the federal court to determine the issues presented in the state

19    action]; *Schneider v. Vennard* (1986) 183 Cal.App.3d 1340, 1348 ["If two class actions were

20    allowed to proceed simultaneously, the already overtaxed resources of two courts will have been

21    devoted to the resolution of a single dispute."]; *Bancomer, S.A. v. Superior Court* (1996) 44

22    Cal.App.4th 1450, 1462 [finding it "unreasonable and illogical" to litigate the same issues

23    simultaneously in two separate forums; *Klein v. Superior Court* (1988) 198 Cal.App.3d 894, 905

24    ["[I]t is unconscionable to force defendants to defend themselves simultaneously in two or more

25    [similar] actions."].)  Indeed, not only has Plaintiff's counsel filed a copycat action, but they are

26    trying to force Chobani to litigate in both forums.  For example, Plaintiff's counsel insists that

27    Chobani respond to the *Gershzon* Complaint before Ms. Nacarino's opposition to Chobani's

28    *Sonner* motion is due. (Vetesi Decl. ¶ 2, Ex. 1.)  This forces Chobani to litigate in both state and

1   federal court at the same time, despite the federal action being significantly farther along in the

2   litigation.  Such duplicative litigation is a waste of resources and may lead to inconsistent results.

3           **2.**        **The Second Factor: Staying This Case Will Prevent Unseemly Conflicts and Inconsistent Results**

4

5         Chobani would be subject to the material risk of conflicting and inconsistent rulings if

6   both actions were to proceed at the same time.  California courts avoid such "unseemly conflicts

7   with the courts of other jurisdictions" as a matter of policy.  (*Caiafa*, *supra*, 15 Cal.App.4th at p.

8   804; see also *Simmons*, *supra*, 96 Cal.App.2d at p. 130 ["Equity abhors a multiplicity of actions . .

9   . .  A conflict of authority should not occur if it can be avoided."].)

10         The potential for "unseemly conflicts" is significant, particularly given that the *Gershzon*

11   complaint is a near verbatim recitation of the allegations remaining in Ms. Nacarino's TAC

12   following the court's grant of Chobani's multiple motions.  Any challenges to the pleading or

13   merits in the two matters will necessarily involve overlapping issues and arguments.  (See *Celotex*

14   *Corp. v. Am. Ins. Co.* (1987) 199 Cal.App.3d 678, 684 [affirming trial court's stay where "[t]hree

15   actions were already pending in Ohio in which the issues, though perhaps not identical, appeared

16   to be inextricably intertwined with those in this action"].)  Both complaints allege that Chobani's

17   Product is mislabeled, as a factual basis for identical claims under California statutory and

18   common law, which implicate identical federal Food and Drug Administration regulations.

19   Resolution of these claims may require judicial and ultimately fact-finder determinations

20   regarding identical statutory elements—such as the likelihood of deception, reliance, and injury—

21   as well as judicial interpretation of identical federal regulations.  These issues demand the

22   uniformity that only a single court can provide.

23         Second, the *Gershzon* putative class is entirely subsumed by the *Nacarino* putative class

24   and creates a material risk of conflicting rulings on class certification.  The *Nacarino* plaintiff

25   seeks to represent a class consisting of residents of California who purchased the Chobani

26   Product between October 2016 to present.  (*Nacarino* TAC ¶ 37.)  Plaintiff Gershzon seeks to

27   represent the same California customers who purchased the same Product, but for a shorter time

28   period, from November 18, 2018, to present.  (*Gershzon* Compl. ¶ 39.)  If a class is certified in

1    *Nacarino*, it would moot this case given the overlapping classes.

2    Finally, there is a significant risk that this Court and the *Nacarino* court may issue

3    conflicting rulings on discovery matters, dispositive motions, and other pre-trial and trial issues.

4    Indeed, the upcoming analysis regarding equitable relief would be tried in both courts and may

5    result in conflicting rulings.  A stay would protect Chobani from the risk of finding itself unable

6    to comply with competing or inconsistent obligations in neighboring courts.

7          **3.      The Third Factor: Because the *Nacarino* Case Encompasses
          This Case, the *Nacarino* Court Is Better Situated to Determine

8          the Issues Implicated in Both Actions**

9    Because *Nacarino* completely overlaps with *Gershzon*, the *Nacarino* court is perfectly

10   positioned to determine the rights of Plaintiff and the proposed class in this case.  (See

11   Section III.)  Adjudicating the *Nacarino* action first will, at a minimum, streamline the issues in

12   this case; given the nearly identical complaints, resolution may resolve this case entirely.  (See

13   *Caiafa*, *supra*, 15 Cal.App.4th at p. 807 [noting that if the broader federal action proceeds and

14   resolves issues in the stayed state court action, "'[u]nseemly conflict' will have been avoided and

15   the interest in judicial economy well served"].)

16   Equally important, the salient issues in *Nacarino* cannot be addressed and resolved in this

17   Court because the putative class in *Nacarino* is more expansive than those in this case and

18   because Ms. Nacarino also seeks injunctive relief, which is not sought here.  Therefore, *Nacarino*

19   must proceed.  (See *Caiafa*, *supra*, 15 Cal.App.4th at p. 806 [noting that the California state court

20   action could not resolve the broader issues in the federal case, so that the federal litigation would

21   proceed in any event, while the federal case could be dispositive of the state case].)

22   And, as stated above, the issue of whether equitable relief is available to plaintiffs where

23   they have an adequate remedy at law will be decided in *Nacarino* in the coming weeks.

24         **4.      The Fourth Factor: *Nacarino* Is Pending in Federal Court in
          California—a "Critical Factor" That Weighs Heavily in Favor

25         of a Stay**

26   The Court's discretion to stay an action in favor of a duplicative federal action weighs

27   heavily in favor of a stay where, as here, "***the federal action is pending in California[,] not some***

28   ***other state***."  (See *Caiafa*, *supra*, 15 Cal.App.4th at p. 804 [citing *Thomson*, *supra*, 66 Cal.2d at

p. 747, emphasis added].)  In such circumstances, convenience is "no consideration," and courts should give greater weight to the "strong policy of comity."  (*Thomson*, *supra*, 66 Cal.2d at p. 747.)  Here, the *Nacarino* action is pending in the Northern District of California, San Francisco Division.  This factor weighs heavily in favor of a stay.

## IV.    CONCLUSION

For the foregoing reasons, Chobani respectfully requests that this Court stay the proceedings in this action pending resolution of the related and overlapping *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC (AGT)).  In the alternative, Chobani requests that this action be stayed pending resolution of Chobani's *Sonner* motion in *Nacarino*, at which time the parties and the Court can reevaluate the need to continue the stay of this action.

Dated:  January 4, 2023                                 MORRISON & FOERSTER LLP

By:  _____
       Claudia M. Vetesi
       **Attorneys for Defendant**
       **Chobani LLC**

1    CLAUDIA M. VETESI (CA SBN 233485)
     CVetesi@mofo.com
2    NICOLE V. OZERAN (CA SBN 302321)
     NOzeran@mofo.com
3    LENA GANKIN (CA SBN 333047)
     LGankin@mofo.com
4    MORRISON & FOERSTER LLP
     425 Market Street
5    San Francisco, California 94105-2482, U.S.A.
     Telephone: 415.268.7000
6    Facsimile: 415.268.7522

7    Attorneys for Defendant
     CHOBANI LLC

8
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                           COUNTY OF SAN FRANCISCO
10

11   MIKHAIL GERSHZON, on behalf of          CASE NO. CGC-22-603042
     himself and all others similarly situated,
12                                           **DECLARATION OF CLAUDIA M.
                      Plaintiff,             VETESI IN SUPPORT OF
13                                           DEFENDANT CHOBANI LLC'S
            v.                               MOTION TO STAY
14                                           PROCEEDINGS**
     CHOBANI LLC,
15                                            Dept: 613
                      Defendant.              Judge: Hon. Andrew Y.S. Cheng
16                                            Date: TBD
                                              Time: TBD
17
                                              Date Action Filed: November 18, 2022
18

19

20

21

22

23

24

25

26

27

28

**ELECTRONICALLY
F I L E D**
*Superior Court of California,
County of San Francisco*

**01/04/2023
Clerk of the Court**
BY: JUDITH NUNEZ
*Deputy Clerk*

I, CLAUDIA M. VETESI, declare:

1.     I am an attorney at the law firm of Morrison & Foerster LLP, counsel for Defendant Chobani LLC ("Chobani").  I submit this declaration in support of Chobani's Motion to Stay Proceedings.

2.     A true and correct copy of correspondence from Plaintiff's counsel, Sue Nam, to counsel for Chobani, dated December 5, 2022, is attached here as **Exhibit 1**.

3.     A true and correct copy the *Nacarino* Third Amended Class Action Complaint ("TAC"), is attached here as **Exhibit 2**.

4.     A true and correct copy the *Nacarino* Order Denying Defendant's Motion to Dismiss TAC is attached here as **Exhibit 3**.

5.     The Nacarino court granted leave for Chobani to brief the issue of equitable remedies.  In January 2023, the *Nacarino* parties intend to engage in motion practice concerning Ms. Nacarino's ability to seek equitable relief despite having an adequate remedy at law for the alleged harm.  Chobani's motion on this issue is due January 12, 2023, and the hearing will be held on February 23, 2023.

6.     The *Nacarino* parties have also engaged in significant discovery.  The parties have propounded and responded to multiple sets of discovery requests.  The parties have conducted ESI review of thousands of documents.  The parties have conducted party depositions.  Ms. Nacarino has noticed six additional fact witness depositions. The parties have engaged in numerous meet and confer conferences regarding discovery issues and briefed multiple disputes for the *Nacarino* court's consideration.

7.     The *Nacarino* parties are scheduled to begin briefing class certification in May 2023.

8.     Counsel for Chobani contacted Department 618 by phone and email and was unable to obtain a hearing date.  On January 4, 2023, the temporary clerk (who gave the name Elizabeth) instructed Chobani to file its Motion with "TBD" placeholders for the Motion's hearing date and time.

1         I declare under penalty of perjury under the laws of the State of California that the foregoing

2    is true and correct.

3

4      Dated:  January 4, 2023

5                                             Claudia M. Vetesi

# Exhibit 1

| | |
|---|---|
| **From:** | Sue Nam <snam@reesellp.com> |
| **Sent:** | Monday, December 5, 2022 1:27 PM |
| **To:** | Ozeran, Nicole Victoria |
| **Cc:** | Charles Moore; Spencer Sheehan; Levitt, Jamie A.; Gankin, Lena; Michael Reese; George Granade; Vetesi, Claudia M.; Margolies, Lauren N. |
| **Subject:** | Re: eFiling accepted for Gershzon v. Chobani LLC |

**External Email**

---

We believe this case affects Chobani's proposed motion regarding the availability of equitable restitution in federal court in the Nacarino case, which is due on January 12. We would like Chobani to respond to the Gershzon complaint before our reply is due on February 9.

Alternatively, Chobani could have until February 17 if Chobani determines that motion practice before Judge Chen on the equitable relief issue has become academic.

Sue J. Nam
Reese LLP
http://reesellp.com
917 405 6686

On Mon, Dec 5, 2022 at 3:52 PM Ozeran, Nicole Victoria <NOzeran@mofo.com> wrote:

> Sue,
>
> We will accept service of *Gershzon v. Chobani* in exchange for your agreement to extend defendant's response deadline. Assuming today's date for service, our responsive pleading would be due January 4. Given the upcoming depositions in *Nacarino*, holidays, and travel schedules, that date is not feasible nor reasonable. We would like to stipulate to a 44 day extension to **February 17**. A draft stipulation is attached for your review.
>
> In addition, we intend to file an application to re-designate this case as Complex given the nature of the action. Will you consent to that re-designation?
>
> Best,

1

**4**

**NICOLE OZERAN**

Associate | Morrison & Foerster LLP

707 Wilshire Boulevard | Los Angeles, CA 90017-3543

**P:** +1 (213) 892-5234

mofo.com | LinkedIn | Twitter

---

**From:** Ozeran, Nicole Victoria <NOzeran@mofo.com>
**Sent:** Friday, December 2, 2022 10:04 AM
**To:** Sue Nam <snam@reesellp.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>
**Cc:** Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Michael Reese <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>; Ozeran, Nicole Victoria <NOzeran@mofo.com>
**Subject:** RE: eFiling accepted for Gershzon v. Chobani LLC

Hi Sue,

Our client is out of pocket today, but we will check with them and get back to you on Monday.  Have a nice weekend.

Best,

**NICOLE OZERAN**

Associate | Morrison & Foerster LLP

707 Wilshire Boulevard | Los Angeles, CA 90017-3543

**P:** +1 (213) 892-5234

mofo.com | LinkedIn | Twitter

---

**From:** Sue Nam <snam@reesellp.com>
**Sent:** Thursday, December 1, 2022 3:01 PM
**To:** Ozeran, Nicole Victoria <NOzeran@mofo.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>
**Cc:** Charles Moore <cmoore@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; Michael Reese <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>
**Subject:** Fwd: eFiling accepted for Gershzon v. Chobani LLC

**External Email**

Please let us know if you will accept service of this complaint on behalf of Chobani.

Sue J. Nam

Reese LLP

http://reesellp.com

917 405 6686

▪

===================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

3

# Exhibit 2

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
spencer@spencersheehan.com
60 Cuttermill Rd, Ste 409
Great Neck, New York 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELENA NACARINO, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br>vs.<br><br>CHOBANI LLC,<br><br>                    Defendant. | Case No. 20-cv-7437-EMC<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Elena Nacarino ("Plaintiff"), on behalf of herself and others similarly situated, bring this Class Action Complaint against Chobani, LLC ("Defendant" or "Chobani"). On the basis of personal knowledge, information and belief, and investigation of counsel, Plaintiff alleges as follows:

**INTRODUCTION**

1.    Defendant manufactures, distributes, markets, labels, and sells "Greek Yogurt Vanilla Blended" under the Chobani brand ("Product" or "Products").

2.    The Product was and is sold to consumers by third parties in different sizes including the 32 oz and 5.3 oz containers shown below.




3.    The Product, regardless of size or distribution channel, bears a common, uniform label that states "Vanilla" on the front of the packaging.

4.    The Product is marketed as a premium yogurt. According to one online grocery, https://www.freshdirect.com/, the Product costs $1.49 for its 5.3 oz single serving size.

5.    Defendant does not comply with FDA labeling requirements because it displays the "Vanilla" representation on the front of its package with no qualifiers, yet the Product has added

1  vanillin, not from the vanilla plant, that simulates, resembles, or reinforces the characterizing

2  vanilla flavor of the Product. By mislabeling its Product in violation of federal and state regulation,

3  Defendant induced Plaintiff and members of the Class to purchase Products that were of lesser

4  value and quality than advertised thereby enriching itself at consumers' expense. Plaintiff seeks

5  an order for the restitution and disgorgement of all monies from the sale of Defendant's Products

6  that were unjustly acquired through unlawful acts and seeks an order enjoining Defendant from

7  continuing to conduct business through unlawful acts and to commence corrective action.

8  <u>**PARTIES**</u>

9      6.    Plaintiff Nacarino is a citizen of San Francisco, California.

10      7.    Plaintiff Nacarino purchased the Product on several occasions including a 32 oz

11  container of the Product in 2020 from a Whole Foods in San Francisco. Plaintiff saw the

12  unqualified "Vanilla" representation on the front of the packaging. She would not have purchased

13  the Product at a premium price or bought the Product at all had Plaintiff known the truth – that the

14  unqualified "Vanilla" representation on the front of the packaging, which she relied upon in

15  making her purchase, violated FDA regulations in that the vanilla flavor of the Product is not

16  independently derived from the vanilla plant but rather contains other non-vanilla plant flavoring

17  that simulates, resembles, or reinforces the characterizing vanilla flavor of the Product.

18      8.    Plaintiff Nacarino would purchase the Product again in the future if the Product

19  were reformulated such that the characterizing vanilla flavor of the Product is independently

20  derived from the vanilla plant or if the labelling complied with federal and state regulations. She

21  currently cannot rely on the Product's labeling because nothing on the label discloses that the

22  Product has added vanilla flavorings, not from the vanilla plant, that simulate, resemble or

23  reinforce the characterizing vanilla flavor of the Product.

24      9.    Defendant Chobani, LLC is a Delaware limited liability company with a principal

25  place of business in Norwich, New York, Chenango County.

26

27

28

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 20-cv-7437-EMC
2

**JURISDICTION**

10.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the parties are citizens of different states.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Defendant has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of its Products here.

**BACKGROUND AND FACTUAL ALLEGATIONS**

12.    Vanilla comes from an orchid plant that originated in Mexico where it was first cultivated. The vanilla flower produces a fruit pod, the vanilla bean, which is the raw material for true vanilla flavor.

13.    Consumers want the vanilla flavor in food products to come from "real vanilla," *i.e.*, from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract. Unfortunately, vanilla fraud is rampant. As in this case, companies – without properly labelling its products in accordance with federal and state food regulations – adulterate their purported vanilla flavored products with vanillin, a cheaper vanilla flavoring, in order to reap even larger corporate profits from consumers. This conduct is particularly harmful in the marketplace because other companies properly label their competing vanilla-flavored products.

14.    Vanillin can be produced from so-called "natural" sources that have nothing to do with the vanilla plant, such as wood pulp, clove oil, and pine bark. Vanillin is far less expensive than vanilla extract. Vanilla extract costs approximately $5-6 dollars per ounce, whereas vanillin costs around $0.10 to $0.30 per ounce. Yet real vanilla is prized especially in non-baked foods such as ice cream, custards, and yogurt. *See generally* https://www.bhg.com/recipes/how-to/bake/when-to-use-pure-vanilla-extract-or-imitation-vanilla-in-dessert/ ("That same vanillin flavor can be made without any real vanilla beans, so it's much more affordable (around $0.10 to $0.30 per ounce). Imitation vanilla ($1, Target) can have ingredients such as lignin, clove oil, pine

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 20-cv-7437-EMC
3

1  bark, fermented bran, and several others. . . . For best results, use pure vanilla extract (or paste)

2  for no-bake treats, simmered sauces and custards, and frozen desserts.").

3       15.    Section 401 of the Federal Food, Drug and Cosmetic Act ("FFDCA") directs the

4  FDA to establish standards and rules for food labeling where necessary to promote honesty and

5  fair dealing in the interest of consumers. The authority granted by Congress to the FDA enables

6  the agency to combat an economic problem: the marketing of foods from which traditional

7  constituents are removed or in which new or different (often cheaper and artificial) ingredients are

8  substituted. As such, the federal food standards are not safety standards, but rather, as the FDA

9  explains, intended to "protect consumers from contaminated products and economic fraud" and

10  have served as "a trusted barrier against substandard and fraudulently packaged food since their

11  enactment in the 1938 FFDCA."

12       16.    In order to combat vanilla fraud, the FDA has strict rules regarding use of the term

13  "vanilla" on the labels of food products.

14       17.    Only vanilla flavor independently derived from the vanilla plant is allowed to

15  labelled "vanilla" without any qualifiers. If the characterizing vanilla flavor comes in any part from

16  non-vanilla plant sources, the FDA mandates that the label must so inform consumers by including

17  "Natural" or "Artificial" "Flavored" or "With Other Natural Flavor," in letters not less than one-

18  half the height of the letters used for "Vanilla" and immediately adjacent to "Vanilla." 21 C.F.R.

19  § 101.22(i)(1).

20       18.    More specifically, 21 C.F.R. § 101.22(i)(1)(iii) provides:

21       If the food contains both a characterizing flavor from the product whose flavor
         is simulated and other natural flavor which simulates, resembles or reinforces
22       the characterizing flavor, the food shall be labeled in accordance with the
         introductory text and paragraph (i)(1)(i) of this section and the name of the food
23       shall be immediately followed by the words "with other natural flavor" in letters
         not less than one-half the height of the letters used in the name of the
24       characterizing flavor.

25       19.    California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code

26  section 109875, et seq. ("Sherman Law"), adopts all FDA regulations as state regulations (Section

27  110100).

28
────────────────────────────────────
THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 20-cv-7437-EMC
4

20.    Scientific testing of the Product by the Mass Spectrometry Facility, Food Innovation Center North, revealed that the characterizing vanilla flavor of the Product does not come independently from vanilla extract or other ingredients derived from the vanilla plant. Instead, the Product's vanilla flavor is spiked with vanillin, a vanilla flavor ingredient not derived from the vanilla plant, which simulates, resembles, or reinforces the vanilla flavor of the Product. *See* Mass Spectrometry Laboratory Analysis Report #7632, dated March 11, 2020, attached as Exhibit A.

21.    This conclusion is supported by the report's GC-MS analysis, shown below. GC-MS analysis is the method laboratories typically rely on in determining the presence of vanilla flavor components, because it is capable of detecting trace levels of compounds and there is minimal to no degradation of compounds in the extraction and detection process.

**Table 1**

**Sheehan & Associates, P.C., Project #7632**
**Chobani Vanilla Greek Yogurt**
**Production Code: L4 36 8216**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3914

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 11 | 40159 | diacetyl | 0.030 |
| 54 | 59959 | acetic acid | 0.045 |
| 194 | 1543348 | acetoin | 1.150 |
| 296 | 329010 | butyric acid | 0.245 |
| 309 | 35256 | hexanal | 0.026 |
| 326 | 337712 | ethyl lactate | 0.252 |
| 364 | 9511 | 2-methylbutyric acid | 0.007 |
| 384 | 1917 | furfuryl alcohol | 0.001 |
| 436 | 3048634 | lactic acid + trace of dimethylsulfoxide co-eulting | 2.271 |
| 464 | 549461 | dimethyl sulfone | 0.409 |
| 556 | 4160871 | hexanoic acid + trace of benzaldehyde | 3.099 |
| 565 | 25358 | octanal | 0.019 |
| 578 | 18546 | 2,4-heptadienal | 0.014 |
| 614 | 18311 | benzyl alcohol | 0.014 |
| 627 | 37594 | benzene acetaldehyde | 0.028 |
| 637 | 293834 | heptanoic acid | 0.219 |
| 663 | 4865 | 2-nonanone | 0.004 |
| 672 | 28231 | guiaicol | 0.021 |
| 680 | 386676 | nonanal | 0.288 |
| 698 | 43113 | cyclohexanecarboxylic acid | 0.032 |
| 707 | 128326 | maltol | 0.096 |
| 768 | 11589359 | octanoic acid | 8.633 |
| 790 | 23701282 | benzoic acid | 17.655 |
| 798 | 1342461 | naphthalene-d8 (internal standard) | 1.000 |
| 815 | 149763 | methyl nonanoate | 0.112 |
| 857 | 5204334 | nonanoic acid | 3.877 |
| 891 | 52126 | 2-undecanone | 0.039 |
| 905 | 111828 | 2,4-decadienal + glyceryl triacetate (Triacetin) | 0.083 |
| 955 | 9991798 | decanoic acid | 7.443 |
| 1016 | 109743912 | vanillin | 81.748 |
| 1041 | 806289 | 4-hydroxy-3-methoxybenzyl alcohol | 0.601 |
| 1056 | 28009 | 2-tridecanone | 0.021 |
| 1076 | 113684 | delta-decalactone | 0.085 |
| 1089 | 56876 | ? | 0.042 |
| 1108 | 3022639 | lauric acid | 2.252 |
| 1129 | 52639 | ethyl laurate | 0.039 |
| 1217 | 27908 | gamma-dodecalactone | 0.021 |
| 1246 | 70606 | delta-dodecalactone | 0.053 |
| 1261 | 176983 | myristic acid | 0.132 |
| 1288 | 31034 | ethyl myristate | 0.023 |
| 1484 | 52017 | ethyl palmitate | 0.039 |
| | | **Total (excluding internal standard)** | **131.165** |

*See* Exhibit A at page 5. Testing of Defendant's Product reveals vanillin (MS Scan # 1016) at 81.748 parts per million or PPM.

---

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 20-cv-7437-EMC
6

22.    Although vanillin is one of the many aromatic compounds found in vanilla extract, the amount of vanillin found in Defendant's Product demonstrates that the vanillin here is not from vanilla extract but is instead a flavoring agent that was added to the Product to simulate, resemble, or reinforce the Product's vanilla flavor. Moreover, the testing did not detect other aromatic compounds that would exist if vanilla extract or other ingredients derived from the vanilla was the source of the vanillin found in the Product.

23.    A comparison of the Product with other competing products that comply with FDA labeling requirements is revealing.

24.    As seen below, Defendant's competitor Siggi's, like Defendant, also labels its yogurt simply "Vanilla" with no qualifiers. Siggi's sells its premium vanilla yogurt at a similar price point to the Product. According to the same online grocery cited above, https://www.freshdirect.com/, Siggi's vanilla yogurt costs $1.79 for its 5.3 oz single serving size (compared to $1.49 for 5.3 oz of the Product). Siggi's, however, uses only vanilla extract to give its yogurt vanilla flavor.



25.    Telling, the GC-MS analysis of Siggi's vanilla yogurt, which is flavored with "Madagascar Bourbon Vanilla," shows vastly different results on its GC-MS analysis. Testing of

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 20-cv-7437-EMC
7

**14**

1 | Siggi's vanilla yogurt revealed vanillin (MS Scan # 999) at a mere 0.2556 PPM compared to the

2 | Product's level of vanillin at 81.748 PPM. Moreover, the GC-MS analysis of Siggi's vanilla yogurt

3 | detected the presence of aromatic compounds associated with real vanilla that are not found in

4 | Defendant's Product.

**Sheehan & Associates, P.C., Project #7632**
**Siggi's Vanilla Yogurt**
**Production Code: PL#36-8579**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3922

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 14-38 | 178276 | diacetyl | 0.0291 |
| 231 | 82546 | acetic acid | 0.0135 |
| 310 | 1081254 | acetoin | 0.1767 |
| 333 | 34525 | hexanal | 0.0056 |
| 369 | 811365 | butyric acid | 0.1326 |
| 407 | 10861 | 3-methylbutyric acid | 0.0018 |
| 418 | 21341 | 2-methylbutyric acid | 0.0035 |
| 437 | 18973 | furfuryl alcohol | 0.0031 |
| 449 | 60333 | pentanoic acid | 0.0099 |
| 504-530 | 17661628 | lactic acid + dimethyl sulfone | 2.8863 |
| 600 | 5354788 | hexanoic acid | 0.8751 |
| 666 | 321338 | heptanoic acid | 0.0525 |
| 679 | 25642 | 2-nonanone | 0.0042 |
| 689 | 55199 | guaiacol | 0.0090 |
| 694 | 945991 | methyl furoate | 0.1546 |
| 740 | 472525 | maltol | 0.0772 |
| 782 | 3810634 | octanoic acid | 0.6227 |
| 808 | 6119213 | naphthalene-d8 (internal standard) | 1.0000 |
| 822 | 29043096 | benzoic acid | 4.7462 |
| 834 | 840419 | hydroxymethylfurfural (HMF) + methyl nonanoate | 0.1373 |
| 857 | 50850 | benzene acetic acid | 0.0083 |
| 869 | 4050023 | nonanoic acid | 0.6619 |
| 885 | 138951 | 2-undecanone | 0.0227 |
| 902 | 152902 | propyl nonanoate | 0.0250 |
| 909 | 61206 | 2,4-decadienal | 0.0100 |
| 926 | 63657 | benzene propanoic acid | 0.0104 |
| 955 | 11695964 | decanoic acid | 1.9114 |
| 989 | 278816 | propyl decanoate | 0.0456 |
| 999 | 1564130 | vanillin | 0.2556 |
| 1021 | 207663 | undecanoic acid | 0.0339 |
| 1038 | 69185 | vanillyl ethyl ether | 0.0113 |
| 1053 | 37172 | 2-tridecanone | 0.0061 |
| 1073 | 64192 | delta-decalactone | 0.0105 |
| 1108 | 4110080 | lauric acid | 0.6717 |
| 1126 | 115725 | ethyl laurate | 0.0189 |
| 1177 | 22500 | tridecanoic acid | 0.0037 |
| 1200 | 34107 | gamma-dodecalactone | 0.0056 |
| 1212 | 46089 | 2-pentadecanone | 0.0075 |
| 1240 | 81361 | delta-dodecalactone | 0.0133 |
| 1249 | 32998 | myristoleic acid | 0.0054 |
| 1256 | 306075 | myristic acid | 0.0500 |
| 1282 | 10130 | ethyl myristate | 0.0017 |
| 1474 | 28477 | ethyl palmitate | 0.0047 |
| | | **Total (excluding internal standard)** | **13.7359** |

26 | 26.     Another competing vanilla yogurt product that is labeled similarly to the Product is

27 | Yoplait's "Oui" brand yogurt. As seen below Yoplait labels its vanilla Oui yogurt simply "Vanilla"

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 20-cv-7437-EMC

8

with no qualifiers. Yoplait uses only "Vanilla Extract" to flavor its Oui product. According to the same online grocery cited above, https://www.freshdirect.com/, Yoplait's Oui vanilla yogurt costs $1.69 for the 5.0 oz single serving size, a similar price point as the Product ($1.49 for 5.3 oz).



27.    The GC-MS analysis of the Oui vanilla yogurt is similar to that of Siggi's and revealed vanillin (MS Scan # 993) at 1.783 PPM, compared to the Defendant Product's level at 81.748 PPM, and detected the presence of various aromatic compounds associated with real vanilla that are not found in Defendant's Product.

**Table 1**

Sheehan & Associates, P.C., Project #7632-1
Yoplait Oui French Style Vanilla Yogurt
Production Code:RCM2 26525
Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS

Data File = TSQA3919

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 26 | 2133371 | diacetyl | 0.294 |
| 173 | 2481795 | acetic acid | 0.342 |
| 254 | 56061668 | acetoin | 7.715 |
| 361 | 5600484 | butyric acid | 0.771 |
| 367 | 3260072 | ethyl lactate | 0.449 |
| 408 | 4212737 | 1,2-propylene glycol | 0.580 |
| 429 | 88226 | hexyl alcohol | 0.012 |
| 442 | 86563 | 2-heptanone | 0.012 |
| 459 | 57638 | heptanal | 0.008 |
| 501 | 4641042 | lactic acid | 0.639 |
| 537 | 2921055 | dimethyl sulfone | 0.402 |
| 587 | 7124211 | hexanoic acid | 0.980 |
| 593 | 116243 | 2,4-heptadienal | 0.016 |
| 616 | 64178 | 3,4-dimethyl-2,5-furandione + trace of limonene | 0.009 |
| 636 | 95767 | benzene acetaldehyde | 0.013 |
| 640 | 182736 | trans-2-octenal | 0.025 |
| 654 | 290262 | heptanoic acid | 0.040 |
| 670 | 119023 | 2-nonanone | 0.016 |
| 680 | 234267 | guaiacol | 0.032 |
| 686 | 299981 | nonanal | 0.041 |
| 720 | 141094 | maltol | 0.019 |
| 763 | 6800530 | octanoic acid | 0.936 |
| 782 | 8114389 | benzoic acid | 1.117 |
| 789 | 102301 | 2-methoxy-4-methylphenol (p-methylguiaicol) | 0.014 |
| 801 | 7266374 | naphthalene-d8 (internal standard) | 1.000 |
| 851 | 4470919 | nonanoic acid | 0.615 |
| 870 | 116469 | 2-undecanone | 0.016 |
| 874 | 44069 | nonanoc acid, propylene glycol monoester (isomer) | 0.006 |
| 882 | 238468 | delta-nonalactone | 0.033 |
| 891 | 86335 | nonanoic acid, propylene glycol monoester | 0.012 |
| 902 | 159536 | 2,4-decadienal | 0.022 |
| 937 | 3287814 | decanoic acid | 0.452 |
| 955 | 108660 | ethyl decanoate | 0.015 |
| 976 | 89589 | 2-hexenal propylene glycol cyclic acetal (syn) | 0.012 |
| 982 | 38142 | 2-hexenal propylene glycol cyclic acetal (anti) | 0.005 |
| 993 | 12953076 | vanillin | 1.783 |
| 1008 | 236725 | decanoic acid, propylene glycol monoester | 0.033 |
| 1020 | 64693 | decanoic acid, propylene glycol monoester (isomer) | 0.009 |
| 1030 | 25513 | vanillyl ethyl ether | 0.004 |
| 1038 | 79272 | decanal, propylene glycol cyclic acetal | 0.011 |
| 1047 | 157511 | 2-tridecanone | 0.022 |
| 1067 | 896209 | delta-decalactone | 0.123 |
| 1094 | 474872 | lauric acid | 0.065 |
| 1121 | 92241 | ethyl laurate | 0.013 |
| 1208 | 89661 | gamma-dodecalactone | 0.012 |
| 1214 | 147133 | vanillin, propylene glycol cyclic acetal | 0.020 |
| 1235 | 153919 | delta-dodecalactone | 0.021 |
| 1250 | 201591 | myristic acid | 0.028 |
| 1277 | 22196 | ethyl myristate | 0.003 |
| 1312 | 84890 | vanillin glyceryl acetal | 0.012 |
| 1427 | 58550 | delta-tetradecalactone | 0.008 |
| 1433 | 24760 | palmitic acid | 0.003 |
| 1467 | 37222 | ethyl palmitate | 0.005 |
| | | **Total (excluding internal standard)** | **17.845** |

28.    In other words, Defendant's Product contains vanillin in levels that are more than **45 times** that of Oui and more than **319 times** that of Siggi's. Thus, the scientific testing of the Product and other properly labeled products, demonstrates that the Product relies upon added vanillin, not from the vanilla plant, to boost its vanilla flavor. Defendant violates 21 C.F.R. § 101.22(i)(1) by using "Vanilla" alone on its front label.

29.    Other competing products that add non-vanilla plant flavorings so indicate on the front of their products. The following are just a few yogurts that add the "With Other Natural Flavor" qualifier to their "Vanilla" label.

 

30.    These products are priced materially less than Defendant's Product, which is sold at $1.49 for 5.3 oz. According to the same online grocery cited above, https://www.freshdirect.com/, the vanilla "Original" Yoplait yogurt costs $0.99 for the 6.0 oz single serving size, and Brown Cow costs $1.19 for the 5.3 oz single serving size.

31.    In sum, whereas many competing yogurt products in the marketplace comply with federal regulation, 21 C.F.R. § 101.22(i)(1), Defendant's Product does not. Defendant charges more for its Products than it otherwise could by violating FDA labeling regulations.

**Reliance and Economic Injury**

32.    Plaintiff sought a yogurt product whose characterizing vanilla flavor is independently derived from the vanilla plant.

33.    Plaintiff read and relied on Defendant's label on the Product to believe that the characterizing flavor of the Product was vanilla and that the vanilla flavor came independently from the vanilla plant.

34.    Had Plaintiff known the truth – that the label Plaintiff relied upon in making the purchase was unlawful in that the vanilla flavor of the Product does not come independently from the vanilla plant – Plaintiff would not have purchased the Product at a premium price or bought the Product at all.

35.    The Product is priced comparably to other similar premium vanilla-flavored yogurt products that are flavored with vanilla extract, but costs more than vanilla-flavored yogurt products that disclose added flavoring on the front label.

36.    By engaging in its unlawful labelling, Defendant reaped and continues to reap increased sales and profits.

**CLASS ACTION ALLEGATIONS**

37.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class that Plaintiff seek to represent (the "Class") is composed of and defined as follows:

> All persons in California who have purchased Defendant's Product from
> October 23, 2016 to the date of judgment.

Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

38.    This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions. The Class is so numerous that the

1    individual joinder of all of its members is impracticable. Due to the nature of the trade and

2    commerce involved, Plaintiff believes that the total number of Class members is in the tens of

3    thousands and that members of the Class are geographically dispersed across California.  While

4    the exact number and identities of the Class members are unknown at this time, such information

5    can be ascertained through appropriate investigation and discovery.

6        39.    Common questions of law and fact exist as to all members of the Class, and these

7    common questions predominate over any questions affecting only individual members of the

8    Class.  These common legal and factual questions, which do not vary from Class member to Class

9    member, and which may be determined without reference to the individual circumstances of any

10   Class member include, but are not limited to, whether Defendant's labeling of its Product

11   constitute an unlawful consumer sales practice.

12       40.    Plaintiff's claims are typical of those of the Class because Plaintiff, like all

13   members of the Class, purchased a Product bearing the unqualified "Vanilla" representation on the

14   front of the packaging in a typical consumer setting and sustained injury from Defendant's

15   wrongful conduct.

16       41.    Plaintiff will fairly and adequately protect the interests of the Class and has retained

17   counsel who are experienced in litigating complex class actions.  Plaintiff has no interests that

18   conflict with those of the Class.

19       42.    A class action is superior to other available methods for the fair and efficient

20   adjudication of this controversy.  Individual joinder of all members of the Class is impracticable.

21   Even if individual members of the Class had the resources to pursue individual litigation, it would

22   be unduly burdensome to the courts in which the individual litigation would proceed.  Individual

23   litigation magnifies the delay and expense to all parties in the court system of resolving the

24   controversies engendered by Defendant's common course of conduct.   The class action device

25   allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair

26   and efficient handling of all Class members' claims in a single forum.  The conduct of this action

27   as a class action conserves the resources of the parties and of the judicial system and protects the

28

1  rights of the Class.  Furthermore, for many, if not most, a class action is the only feasible

2  mechanism that allows an opportunity for legal redress and justice.

3        43.    This action is maintainable as a class action under Federal Rule of Civil Procedure

4  23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the

5  Class, thereby making appropriate final injunctive relief respecting the Class as a whole.

6        44.    This action is maintainable as a class action under Federal Rule of Civil Procedure

7  23(b)(3) because the common questions of law and fact identified above, without limitation,

8  predominate over any questions affecting only individual members, and a class action is superior

9  to other available methods for the fair and efficient adjudication of this controversy.

10                                    **CAUSE OF ACTION**

11        **(Violation of California Business & Professions Code §§ 17200 *et seq.* –**

12                  **Unlawful Conduct Prong of the UCL**)

13                  **On Behalf of Plaintiff and the Class**

14        45.    Plaintiff  incorporates by reference all allegations contained in the complaint as if

15  fully set forth herein. California Business & Professions Code section 17200 ("UCL") prohibits

16  any "unlawful, unfair or fraudulent business act or practice."

17        46.    The acts, omissions, misrepresentations, practices, and non-disclosures of

18  Defendant, as alleged herein, constitute "unlawful" business acts and practices in that they violate

19  the FFDCA and its implementing regulations.

20        47.    More specifically, the Product is unlawfully because its label violates 21 C.F.R. §

21  101.22(i), including subsection (iii) that provides:

22        If the food contains both a characterizing flavor from the product whose flavor
          is simulated and other natural flavor which simulates, resembles or reinforces
23        the characterizing flavor, the food shall be labeled in accordance with the
          introductory text and paragraph (i)(1)(i) of this section and the name of the food
24        shall be immediately followed by the words "with other natural flavor" in letters
          not less than one-half the height of the letters used in the name of the
25        characterizing flavor.

26

27        48.    Defendant's conduct also violates the Sherman Law, which adopts all FDA

28  regulations as state regulations (Section 110100).

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 20-cv-7437-EMC
14

49.     The challenged statement made and actions taken by Defendant violate the FFDCA and the Sherman Law and therefore violates the "unlawful" prong of the UCL.

50.     Defendant leveraged its unlawful conduct to induce Plaintiff and members of the Class to purchase Products that were of lesser value and quality than advertised. Defendant's unlawful conduct caused Plaintiff and members of the Class to suffer injury and to lose money, as it denied them the benefit of the bargain when they decided to purchase Defendant's Product over other products that are properly labeled and less expensive. Had Plaintiff and the members of the Class been aware of Defendant's unlawful tactics, they would not have purchased Defendant's Product at all or would have paid less than what they did for it.

51.     In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful acts and practices and to commence corrective action.

52.     Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of Defendant's Products that were unjustly acquired through unlawful acts and practices.

53.     Plaintiff lacks an adequate remedy at law because the UCL, the only claim brought by Plaintiff, does not provide for damages. In addition, Plaintiff lacks an adequate remedy at law for future harm.

54.     THEREFORE, Plaintiff prays for relief as set forth below.

1                          **PRAYER FOR RELIEF**

2          THEREFORE, Plaintiff prays for judgment as follows:

3          1.      Certification of the Class, certifying Plaintiff as representative of the Class and

4          designating her counsel as counsel for the Class;

5          2.      Declaratory and injunctive relief pursuant California Business & Professions Code

6    §§ 17200, et seq.;

7          3.      Restitution and disgorgement pursuant California Business & Professions Code §§

8    17200, *et seq*.;

9          4.      Attorneys' fees;

10         5.      Costs of suit incurred; and

11         6.      Such further relief as this Court may deem just and proper.

12                          **JURY TRIAL DEMANDED**

13         Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this

14   lawsuit.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

1                                         Respectfully submitted,

2   Date: September 8, 2021
                                          **REESE LLP**
3

4                                  By:  */s/ Sue J. Nam*
                                          Sue J. Nam (State Bar No. 206729)
5                                         *snam@reesellp.com*
                                          Michael R. Reese (State Bar No. 206773)
6                                         *mreese@reesellp.com*
                                          100 West 93rd Street, 16th Floor
7                                         New York, New York 10025
                                          Telephone: (212) 643-0500
8                                         Facsimile: (212) 253-4272

9                                         **REESE LLP**
10                                        George V. Granade (Cal. State Bar No. 316050)
                                          *ggranade@reesellp.com*
11                                        8484 Wilshire Boulevard, Suite 515
                                          Los Angeles, California 90211
12                                        Telephone: (310) 393-0070

13                                        **SHEEHAN & ASSOCIATES, P.C.**
                                          Spencer Sheehan
14                                        *spencer@spencersheehan.com*
                                          60 Cuttermill Rd, Ste 409
15                                        Great Neck, New York 11021
                                          Telephone: (516) 303-0552
16

17                                        *Counsel for Plaintiff and the Proposed Class*

18

19

20

21

22

23

24

25

26

27

28
─────────────────────────────────────────────────
                        THIRD AMENDED CLASS ACTION COMPLAINT
                                Case No. 20-cv-7437-EMC
                                          17

**24**

## **EXHIBIT A**

# RUTGERS

New Jersey Agricultural
Experiment Station

Mass Spectrometry Facility
Food Innovation Center North
Rutgers, The State University of NJ
63 Dudley Road
New Brunswick, NJ 08901-8520

Thomas G. Hartman, Ph.D.
Laboratory Director
hartmantg@aol.com
Phone: 848-932-5543
Fax: 732-932-6776

March 11, 2020

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
505 Northern Blvd
Suite 311
Great Neck, NY 11021

spencer@spencersheehan.com

**CONFIDENTIAL**

**Mass Spectrometry Laboratory Analysis Report #7632**

**Flavor Analysis of Chobani Vanilla Greek Yogurt**

Dear Mr. Sheehan:

This is the report pertaining to the above-captioned samples that you submitted for flavor analysis.

**I      Sample Log**

The following samples were received for analysis:

1.      Chobani Vanilla Greek Yogurt, Production Code L4 36 8216

**II      Analysis Request**

The analysis request was to extract and analyze the flavor from the yogurt.

1

## III    Analysis Methodology

Yogurt was mixed and 10 g was transferred to a borosilicate glass test tube sealed with Teflon-lined, screw cap closure, matrix-spiked with 10 µg of naphthalene-$d_8$ internal standard (1.0 ppm w/v) and mixed thoroughly using a lab vortexor. The sample was thinned out by adding a few mL's of distilled water then divided into 4 equal portions, transferred to glass vials and extracted with equal volumes (1:1) of methylene chloride. The layers were allowed to separate and then the methylene chloride extracts isolated and pooled together. The pooled extracts were centrifuged 30 minutes at 2500 rpm to clarify (separate any water or emulsion) then dried with anhydrous sodium sulfate. The dried extract was concentrated under a gentle stream of nitrogen to a final volume of approximately 0.5 mL then transferred to a Purge & Trap apparatus (Scientific Instrument Services, Solid Sample P&T system) and subjected to Purge & Trap-Thermal Desorption-GC-MS analysis as follows:

## Purge & Trap-Thermal Desorption-GC-MS

Concentrated methylene chloride extract prepared as described above was evaporated to dryness in a stream of nitrogen gas inside the glass tubing of the purge & trap apparatus (SIS Solid Sample Purge & Trap Oven). Immediately upon reaching dryness the sample was subjected to P&T analysis by purging with nitrogen at 50 ml per minute for 30 minutes at 150°C. The exhaust of the P&T apparatus was fitted with a Tenax-TA adsorbent trap. The traps were then connected to the Short Path Thermal Desorption system and thermally desorbed directly into the GC-MS system for final analysis (SIS Model TD-4 Short Path Thermal Desorber). The thermal desorption conditions were 250°C for 5 minutes.

## GC-MS Analysis Methodology

Analyses of Tenax traps prepared as described above were conducted using a Scientific Instrument Services (SIS) model TD4 Short Path Thermal Desorber interfaced to the Varian 3400 GC directly coupled to a Finnigan TSQ-7000 triple stage quadrapole tandem mass spectrometer equipped with an Xcaliber data system. Thermal desorption conditions were 250°C for 5 minutes using sub-ambient, cryogenic GC column temperature programming. The GC was equipped with a 60 meter x 0.32 mm i.d. Guardian-ZB-5MS capillary column with a 1.0 µm

2

film thickness (Phenomonex).  The mass spectrometer was operated in electron ionization mode (70 eV) scanning masses 35-350 once each second.

## **Materials**

Naphthalene-$d_8$ used as internal standard for the study was purchased from Sigma-Aldrich Chemical Co, St. Louis MO.   Methylene chloride was purchased from Thermo Fisher Scientific.  All thermal desorption supplies were purchased from Scientific Instrument Services, Inc., Ringoes, NJ.

## IV    Results

The GC-MS analysis data for the yogurt flavor is summarized in Table 1. The GC-MS chromatogram corresponding to the Table is presented in Figure 1. From left to right, the Table lists the MS scan number (from centroid of peak), peak area integration, peak identification and then concentration data expressed in parts per million (ppm w/v).  The data is semi-quantitative and based on peak area ratio to the matrix-spiked internal standard (naphthalene-$d_8$) assuming a detector response factor of 1.0 with no correction for extraction efficiency.

If you have any questions or if I can be of further assistance to you then please don't hesitate to contact me.

Respectfully Submitted,

Thomas G. Hartman, Ph.D.
Mass Spectrometry Lab Director
& Research Professor

3

## Attachments

▶    Table 1, Analysis Results Summary

▶    Figure 1, GC-MS Chromatogram

▶    Analysis Data Forms

▶    Photo of Test Sample

4

**Table 1**

**Sheehan & Associates, P.C., Project #7632**
**Chobani Vanilla Greek Yogurt**
**Production Code: L4 36 8216**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA3914

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 11 | 40159 | diacetyl | 0.030 |
| 54 | 59959 | acetic acid | 0.045 |
| 194 | 1543348 | acetoin | 1.150 |
| 296 | 329010 | butyric acid | 0.245 |
| 309 | 35256 | hexanal | 0.026 |
| 326 | 337712 | ethyl lactate | 0.252 |
| 364 | 9511 | 2-methylbutyric acid | 0.007 |
| 384 | 1917 | furfuryl alcohol | 0.001 |
| 436 | 3048634 | lactic acid + trace of dimethylsulfoxide co-eulting | 2.271 |
| 464 | 549461 | dimethyl sulfone | 0.409 |
| 556 | 4160871 | hexanoic acid + trace of benzaldehyde | 3.099 |
| 565 | 25358 | octanal | 0.019 |
| 578 | 18546 | 2,4-heptadienal | 0.014 |
| 614 | 18311 | benzyl alcohol | 0.014 |
| 627 | 37594 | benzene acetaldehyde | 0.028 |
| 637 | 293834 | heptanoic acid | 0.219 |
| 663 | 4865 | 2-nonanone | 0.004 |
| 672 | 28231 | guiaicol | 0.021 |
| 680 | 386676 | nonanal | 0.288 |
| 698 | 43113 | cyclohexanecarboxylic acid | 0.032 |
| 707 | 128326 | maltol | 0.096 |
| 768 | 11589359 | octanoic acid | 8.633 |
| 790 | 23701282 | benzoic acid | 17.655 |
| 798 | 1342461 | naphthalene-d8 (internal standard) | 1.000 |
| 815 | 149763 | methyl nonanoate | 0.112 |
| 857 | 5204334 | nonanoic acid | 3.877 |
| 891 | 52126 | 2-undecanone | 0.039 |
| 905 | 111828 | 2,4-decadienal + glyceryl triacetate (Triacetin) | 0.083 |
| 955 | 9991798 | decanoic acid | 7.443 |
| 1016 | 109743912 | vanillin | 81.748 |
| 1041 | 806289 | 4-hydroxy-3-methoxybenzyl alcohol | 0.601 |
| 1056 | 28009 | 2-tridecanone | 0.021 |
| 1076 | 113684 | delta-decalactone | 0.085 |
| 1089 | 56876 | ? | 0.042 |
| 1108 | 3022639 | lauric acid | 2.252 |
| 1129 | 52639 | ethyl laurate | 0.039 |
| 1217 | 27908 | gamma-dodecalactone | 0.021 |
| 1246 | 70606 | delta-dodecalactone | 0.053 |
| 1261 | 176983 | myristic acid | 0.132 |
| 1288 | 31034 | ethyl myristate | 0.023 |
| 1484 | 52017 | ethyl palmitate | 0.039 |
| | | **Total (excluding internal standard)** | **131.165** |

**30**

C:\Xcalibur\data\TSQA3914                                           3/5/2020 4:16:04 PM



RT: 0.00 - 45.02

TSQA3914
Type: Unknown ID: 1 Row: 1
Sample Name:              Chobani Vanilla Greek Yogurt (Production Code: L4 36
                         8216), DCM Extract, 150C/30min, matrix spiked with w/w
                         1.0ppm Int. Std. by P&T-TD-GC-MS
Study:
Client:                  Sheehan & Associates, P.C., LLN7632
Laboratory:              Mass Spectrometry - Dr. Tom Hartman
Company:
Phone:
Instrument Method:       C:\Xcalibur\methods\voc45solventdelay8min.meth
Processing Method:
Vial:                    1
Injection Volume (µl):   10.00
Sample Weight:           0.00
Sample Volume (µl):      0.00
ISTD Amount:             0.00
Dil Factor:              1.00

### *SHORT PATH THERMAL DESORPTION DATA FORM*
### *MASS SPECTROMETRY LABORATORY*

ANALYST: Joe Scarsella          PROJECT #: 7632          DATE: 3/5/2020

PROJECT SPONSOR: Sheehan and Associates

INSTRUMENT: SCIENTIFIC INSTRUMENT SERVICES INC., (SIS) MODEL TD-2
　　　　　　SHORT PATH THERMAL DESORPTION SYSTEM & ACCESSORIES

TYPE OF ANALYSIS:　☐ DIRECT THERMAL DESORPTION (DTD)

　　　　　　　　　☒ PURGE & TRAP - THERMAL DESORPTION (P&T-TD)

### *PURGE & TRAP AND DIRECT THERMAL DESORPTION CONDITIONS:*

SAMPLE DESCRIPTION: Chobani Vanilla Greek Yogurt

SAMPLE SIZE: ———          SAMPLE MATRIX:　☐ GAS　☐ LIQUID　☒ SOLID

PURGE & TRAP APPARATUS:　☒ SIS SOLID MATRIX SAMPLING OVEN

☐ SIS LIQUID PURGE VESSEL　☐ WHEATON LIQUID SAMPLER　☐ SKC PUMP

☐ CUSTOM APPARATUS: _____

PURGE GAS:　☒ NITROGEN　☐ HELIUM　☐ AIR　PURGE GAS FLOW RATE: 50 mL/min

PURGE & TRAP TIME: 30 min　TEMPERATURE: 150°C　DRY PURGE TIME: ———

ADSORBENT TRAP:　☒ TENAX　☐ CARBOXEN-569　☐ OTHER: _____

ADSORBENT TRAP BED VOLUME:　☐ 2cm　☐ 4cm　☒ 6cm　☐ 8cm

GLT DESORPTION TUBE INSIDE DIAMETER:　☐ 3mm i.d.　☒ 4mm i.d.

INTERNAL STANDARD: naphthalene-d8　benzene-d6, toluene-d8　AMOUNT INTERNAL STANDARD: 1.0 ppm w/w

INTERNAL STANDARD SPIKE:　☒ MATRIX SPIKE　☐ ADSORBENT TRAP SPIKE

### *THERMAL DESORPTION CONDITIONS:*

DESORPTION TEMP.: 250°C　DESORPTION TIME: 5 min　INJ. TIME: 30 sec

INITIAL PURGE TIME: 10 sec　TYPE OF ANALYSIS :　☐ GC　☒ GC-MS

COMMENTS: _____

32

## TSQ-7000 MASS SPECTROMETRY ANALYSIS DATA FORM
### MASS SPECTROMETRY LABORATORY

DATA FILE(S): TSQA3914    PROJECT #: 7632    DATE: 3/5/2020

PROJECT SPONSOR: Sheehan and Associates    ANALYST: Joe Scarsella

SAMPLE DESCRIPTION: Chobani Vanilla Greek Yogurt

### GC CONDITIONS:

INSTRUMENT: Varian 3400    COLUMN: ZB5-MS    SERIAL #: —

LENGTH: 60m    DIAMETER: 0.32mm    FILM THICKNESS: 1.0um

TYPE OF INJECTION:    ☒ SPLIT    ☐ SPLITLESS    ☐ ON-COLUMN
                      ☐ HEADSPACE    ☒ THERMAL DESORPTION

INJ. LINER: ☐ CYCLOID ☐ 2mm Direct ☒ 4mm Direct ☐ _____ (Other)

INJECTION VOLUME: —    INJECTOR TEMPERATURE: 250°C

SEPTUM PURGE: ☒ YES ☐ NO    SPLIT RATIO: 10:1

CARRIER GAS: He    CARRIER FLOW (ml/min.): —    or PSI HEAD PRESS.: 20psi

TEMP. PROGRAM: -20°C → 260°C @ 10°c/min

GC-MS INTERFACE LINE TEMPERATURE : 280°C    GC MAINTENANCE:

☒ SEPTUM CHANGE    ☐ CLEAN & SILANIZE INJ. LINER    ☒ Column Bakeout

### MASS SPECTROMETER CONDITIONS:

INSTRUMENT: Finnigan MAT TSQ7000    DATA SYSTEM: Xcaliber

IONIZATION MODE: ☒ EI (70 eV) ☐ CI ☐ +ION ☐ -ION ☐ CID (MS-MS)

IF CI THEN INDICATE REAGENT GAS ☐ METHANE ☐ ISOBUTANE ☐ AMMONIA

ION SOURCE TEMP.: 185°C    FILAMENT EMISSION CURRENT: 400uA

TYPE OF ANALYSIS: ☒ GC-MS ☐ DCI ☐ EI/CI DIRECT PROBE ☐ BATCH INLET

☐ SIM MODE: ION(s) MONITORED: —

☐ MS-MS MODE: CID PRESSURE mT: —    COLLISION ENERGY V: —

☐ SRM MODE: DAUGHTER ION(S) MONITORED: —

DCI OR DIRECT PROBE TEMPERATURE RAMP: —

MASS RANGE: 35-350    SCAN RATE (seconds/decade): 1.0 sec

TUNE FILE: ei_tune    METHOD FILE: Voc45solventdelay8min.meth

COMMENTS: 

33





NO GMO INGREDIENTS     LIVE CULTURES

**Nutrition Facts**

About 5 servings per container

Serving size      3/4 cup (170g)

Amount per serving

**Calories**                **130**

|  | % Daily Value* |
|---|---|
| **Total Fat** 0g | **0%** |
| Saturated Fat 0g | **0%** |
| Trans Fat 0g | |
| **Cholesterol** 10mg | **3%** |
| **Sodium** 65mg | **3%** |
| **Total Carbohydrate** 16g | **6%** |
| Dietary Fiber <1g | **3%** |
| Total Sugars 14g | |
| Incl. 10g Added Sugars | **20%** |
| **Protein** 14g | **28%** |
| Vit. D 0mcg 0% • Calcium 169mg 15% | |
| Iron 0mg 0% • Potas. 220mg 4% | |

The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

Questions or comments? 1.877.847.6181

GRADE A ⒷⒹ KEEP REFRIGERATED

A portion of profits for a better world

**Ingredients:** Cultured nonfat milk, cane sugar, water, fruit pectin, natural flavors, guar gum, lemon juice concentrate, vanilla extract.

**6 live and active cultures:** S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus, L. Casei, and L. Rhamnosus.

Chobani, LLC, New Berlin, NY 13411
© 2019 Chobani, LLC
**chobani.com**

8 94700 01014 4

# Exhibit 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELENA NACARINO,

             Plaintiff,

    v.

CHOBANI, LLC,

             Defendant.

Case No. 20-cv-07437-EMC

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Docket No. 54

## I.    INTRODUCTION

Plaintiff Elena Nacarino ("Plaintiff") brings this putative class action against Defendant Chobani, LLC ("Defendant" or "Chobani") based in California consumer-protection law over allegedly unlawful labeling on a Chobani yogurt container. *See* Third Amended Complaint ("TAC"); Docket No. 51. Plaintiff now specifically alleges that the "unqualified 'Vanilla' representation on the front of the packaging, which she relied upon in making her purchase, violated FDA regulations in that the vanilla flavor of the Product *is not independently derived* from the vanilla plant but rather contains other non-vanilla plant flavoring that simulates, resembles, or reinforces the characterizing vanilla flavor of the Product." *Id.* ¶ 7 (emphasis added). Pending before the Court is Defendant's motion to dismiss Plaintiff's third amended complaint. *See* Motion to Dismiss ("MTD"); Docket No. 54. For the following reasons, the Court **DENIES** Defendant's motion to dismiss.

## II.    BACKGROUND

The Court previously noted that this case was one of many recent putative class actions targeting allegedly deceptive labeling on vanilla food products that are not flavored, either

exclusively or in significant part, with vanilla extract or vanilla bean. *See, e.g.*, *Clark v. Westbrae Natural, Inc.*, 2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ("*Clark I*"); *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020); *Zaback v. Kellogg Sales Co.*, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020).  Notably, many plaintiffs have focused on manufacturers' use of the term "vanilla" on product labels. *See, e.g.*, *Clark I*, 2020 WL 7043879; *Cosgrove*, 2020 WL 7211218; *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020).

Plaintiff's counsel filed this case on behalf of Plaintiff Elena Nacarino and a purported class of California consumers on October 23, 2020. *See* Complaint; Docket No. 1.  After a hearing on Defendant's motion to dismiss the second amended complaint, this Court issued an order granting in part and denying in part Defendant's motion to dismiss Plaintiff's second amended complaint with leave to amend. *See* Order; Docket No. 48 (August 9, 2021).

According to the second amended complaint, Plaintiff purchased a container of Chobani yogurt (the "Product") at a Whole Foods grocery store in San Francisco, California, in 2020.  SAC ¶ 8; Docket No. 26.  The Product is named "Greek Yogurt Vanilla Blended," displaying what Plaintiff terms the "Vanilla Representations" on its container :  (1) the word "Vanilla," without qualifiers, on the front; (2) images of the vanilla flower and vanilla bean on all sides; and (3) the following text on the back:

> Carried from some far-off, exotic place, where a little flower became a little bean. And that little bean, suspended and unremarkable, the cloak that conceals the magic within. Flavor like perfume, folded up in earthen envelopes, rich and warm and wonderful. *Entirely vanilla*, gently opening like the blossom that began it all.

*Id.* ¶¶ 2-5 (emphasis added).  Plaintiff relied on the vanilla representations in concluding that the Product's vanilla flavor comes "*exclusively* from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract," and in purchasing the Product. *See id.* ¶¶ 6, 8 (emphasis in original).  Plaintiff brought claims under (1) the unlawful prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) the unfair and fraudulent prongs of the UCL; (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (4) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq. See id.* ¶¶ 62-8.  Additionally, Plaintiff sought declaratory relief, restitution and

United States District Court
Northern District of California

2

1    disgorgement, injunctive relief, compensatory and punitive damages, and attorneys' fees and

2    costs.  *See id.*, Prayer for Relief at 25.

3              In its August 9, 2021 Order, the Court held that no reasonable consumer would take the

4    Product's use of the word "vanilla" on the front and the package's vanilla imagery as indicating

5    that the Product's flavor is derived *exclusively* from the vanilla plant, as the Product does not

6    display any statements "even arguably conveying that vanilla bean or extract is the exclusive

7    source of its vanilla flavor."  Order at 11-12.  The Court emphasized that "[h]ere, the Product

8    nowhere asserts that it is, *e.g.*, 'made with all-natural vanilla' or '100%' vanilla, nor displays any

9    other statements even arguably conveying that vanilla bean or extract is the exclusive source of its

10   vanilla flavor."  *Id.* at 13.  As such, the Court dismissed Plaintiff's claims under the unfair and

11   fraudulent prongs of the UCL, the FAL, and the CLRA without leave to amend "since further

12   amendment would be futile, given the manifest implausibility of her deceptive labeling

13   claims. . . ."  *Id.* at 15.

14             However, the Court found that Plaintiff "adequately alleged that the Product does not

15   comply with [21 C.F.R. §] 101.22(i), as she asserts that the Product's flavoring does not derive

16   exclusively from the vanilla plant and that its label does not include 'with other natural flavor' in

17   compliance with the prescriptive terms of Section 101.22(i)(1)(iii)."  *Id.* at 16.  Section

18   101.22(i)(1) provides in its entirety:

19                      (1) If the food contains no artificial flavor which simulates,
20                  resembles or reinforces the characterizing flavor, the name of the
                     food on the principal display panel or panels of the label shall be
21                  accompanied by the common or usual name of the characterizing
                     flavor, e.g., "vanilla", in letters not less than one-half the height of
22                  the letters used in the name of the food, except that:

23                      (i) If the food is one that is commonly expected to contain a
                     characterizing food ingredient, e.g., strawberries in "strawberry
24                  shortcake", and the food contains natural flavor derived from such
                     ingredient and an amount of characterizing ingredient insufficient to
25                  independently characterize the food, or the food contains no such
                     ingredient, the name of the characterizing flavor may be
26                  immediately preceded by the word "natural" and shall be
                     immediately followed by the word "flavored" in letters not less than
27                  one half the height of the letters in the name of the characterizing
                     flavor, e.g., "natural strawberry flavored shortcake," or "strawberry
28                  flavored shortcake".

United States District Court
Northern District of California

3

(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(i)(1). As relevant here, this Section states that a manufacturer can label its product as a "vanilla" product so long as it contains no artificial ingredients that provide the vanilla flavor, although there are certain exceptions. Additionally, § 101.22(i)(1)(iii) "means that if, for example a product does not contain enough real vanilla to independently characterize a product's vanilla flavor (hence, the product falls within (i)(1)(i)), *and* the product contains other natural flavors which simulate, resemble or reinforce the vanilla flavor, *then* the label must comply with (i)(1)(i) and have the word 'natural' precede 'vanilla' *and* it must also say 'with other natural flavor' after the name on the food." *Clark v. Westbrae Natural Inc.*, 2021 WL 1580827, at *6 (N.D. Cal. Apr. 22, 2021) ("*Clark II*").

The Court further explained in its Order that given the "allegedly stark differences in" the mass spectrometry testing results on the Product and competitor products noted in the SAC, Plaintiff "plausibly pled that the Product is not exclusively flavored with 'real' vanilla." Order at 16. "The marked differences in vanillin levels between the Product and competitor yogurts plausibly imply that the Product's vanillin does not come solely from the vanilla plant" and as such, the Court denied Defendant's motion to dismiss with respect to Plaintiff's claim under the UCL's unlawful prong which was predicated on the violation of the C.F.R. *Id.* at 17. The Court specifically found that "the difference in aromatic compound levels and the disparity among vanillin levels between the Product and competitor yogurts *provide[d] an adequate factual basis for [Plaintiff] to state a plausible federal violation and resultant claim under the UCL's unlawful prong.*" *Id.* (emphasis added).

Further, the Court determined that Plaintiff "may pursue only some of the equitable

4

39

remedies that she requests under the UCL's unlawful prong, *as she lacks an adequate remedy at law with respect to her request for injunctive relief but not her request for equitable restitution*." *Id*. at 19 (emphasis added). The Court acknowledged that Plaintiff does not seek damages under her UCL unlawful prong claim, but rather, she seeks an injunction and restitution and disgorgement of all monies from the sale of the Products that were unjustly acquired. *Id*. at 20. However, the Court noted that Plaintiff "does seek damages with respect to her unavailing CLRA claim." *Id*. Notably, the Court ultimately dismissed Plaintiff's request for equitable relief with respect to her claim for restitution or disgorgement under the UCL's unlawful prong since "she ha[d] not demonstrated that there is an inherent limitation of the legal remedy" of damages. *Id.* at 22. The Court emphasized that Plaintiff failed "to allege any specific facts—*e.g.*, that she would receive less compensation via damages than restitution—showing damages under the CLRA are necessarily 'inadequate or incomplete, and nothing in the record supports that conclusion.'" *Id*. (citations omitted). However, since the Court was unable to conclude that amendment would be futile, the Court granted Plaintiff leave to amend "to plead that damages are inadequate and that she is thus entitled to seek equitable restitution under the UCL's unlawful prong." *Id.* at 23. Thus, the Court permitted Plaintiff's UCL unlawful prong claim to proceed, specifically as to her request for injunctive relief. *Id.*

Notably, in its Order granting leave to amend, the Court acknowledged that the district court in *Elgindy v. AGA Service Co.*, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021), suggested that a plaintiff could pursue equitable remedies under the UCL where such claims were "rooted in a different theory" of liability and involved different factual allegations than her claims for damages. Order at 22 (quoting *Elgindy*, 2021 WL 1176535 at *15). The Court noted that in the instant case, Plaintiff's claims were rooted in the same allegations that labeling the Product "vanilla" is misleading to consumers *and* a violation of the FDA regulations. *Id*.

In response to the Court's grant of leave to amend, Plaintiff's Third Amended Complaint ("TAC") added the allegation that "Plaintiff lacks an adequate remedy at law because the UCL, the only claim brought by Plaintiff, does not provide for damages." TAC ¶ 53. Additionally, as noted above, Plaintiff adds a new factual allegation that the Product label violates FDA

United States District Court
Northern District of California

5

regulations, not because the vanilla flavor allegedly does not come *exclusively* from the vanilla plant, but because the "vanilla flavor of the Product does not come *independently* from the vanilla plant." *Id.* ¶ 34 (emphasis added). As noted above, Plaintiff previously alleged that "[s]cientific testing . . . revealed that the vanilla flavor of the Product does not come *exclusively from* . . . the vanilla plant" with regard to her deceptive labeling claims that were dismissed without leave to amend. SAC ¶ 36 (emphasis added). Plaintiff now alleges that the same "[s]cientific testing . . . revealed that the characterizing vanilla flavor of the Product does not come *independently* from vanilla extract or other ingredients derived from the vanilla plant" with regard to her FDA regulation violation claim. TAC ¶ 20 (emphasis added).

Defendant claims that Plaintiff's TAC should be dismissed primarily on the following two grounds: (1) Plaintiff "has again failed to allege why monetary damages are inadequate, as required by the Court's order"; and (2) "Plaintiff lacks standing to bring her UCL unlawful claim for injunctive relief" based on an intervening Ninth Circuit case *In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021). MTD at 2. Defendant also argues that if the Court declines to dismiss the TAC, the Court "should strike Plaintiff's new allegations that far exceed the scope of the Court's Order granting leave to amend." *Id.* Finally, Defendant asserts that "there is an independent ground for dismissal of the TAC in its entirety: Plaintiff fails to plausibly allege a violation of the UCL's unlawful prong, which requires that Plaintiff allege actual reliance and a resulting injury-in-fact." *Id.* at 3.

### III.     LEGAL STANDARD

A.     Failure to State a Claim (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d

United States District Court
Northern District of California

1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Claims sounding in fraud are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff bringing such a claim to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the heightened standard of Rule 9(b), a plaintiff must identify the ''who, what, when, where, and how'' of the alleged misconduct and explain how the statement or omission complained of was false or misleading. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The purpose of Rule 9(b) is to require that a plaintiff's allegations be "specific enough to give defendants notice of the particular misconduct which is alleged . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rule 9(b) allows, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Where a court dismisses a complaint, it "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

7

**B.**     Motion to Strike (Rule 12(f))

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial." *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). Motions to strike are generally disfavored. *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). A motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation. *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."). Statements that do not pertain to, and are not necessary to resolve, the issues in question are impertinent. *Id.* If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion to strike. *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057. Just as with a motion to dismiss, the court should view the pleading sought to be struck in the light most favorable to the nonmoving party. *Id.*

## IV.     DISCUSSION

**A.**     Failure to State a Claim Under UCL's Unlawful Prong

Presently, Plaintiff's sole claim for relief is under the unlawful prong of the UCL. Notably, Plaintiff specifically claims the Product's label was "unlawful" under the UCL insofar as it violated the Sherman Law, *see* Cal. Health & Saf. Code § 110100, which adopts and incorporates the federal Food and Drug Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and its food labeling regulations, *see* 21 C.F.R. § 101 *et seq.* TAC ¶ 19.

Defendant contends that Plaintiff's UCL claim should be dismissed in its entirety because Plaintiff fails to state a claim under the UCL's unlawful prong since she: (1) fails to plausibly

1  allege that her reliance on the Product caused her to be deceived such that she suffered an injury in

2  fact, and (2) fails to meet the heightened pleading requirements of (9)(b).  MTD at 14-18.

3        Plaintiff argues that the "law of the case precludes reconsideration" of this issue since the

4  Court already found that Plaintiff "'plausibly pled that the Product does not comply with 21

5  C.F.R. § 101.22(i) and thus violates the UCL's unlawful prong.'"  Opp'n at 4; Docket No. 55

6  (quoting Order at 15).  Plaintiff states that the Court based its finding that she plausibly pled her

7  claim under the unlawful prong of the UCL on "allegations in the SAC that remain in [her] TAC."

8  *Id.*

9        In its reply, Defendant emphasizes that "the law of the case is inapposite here" since

10  Plaintiff changed her factual allegations in the TAC and notes that the Court "only held that

11  Plaintiff alleged a violation of a federal regulation, but did not address whether [she] adequately

12  pleaded deception under the UCL's unlawful prong, which requires materiality, reliance and

13  injury."  Reply at 11.  Additionally, Defendant argues that "Plaintiff confirms that she is relying

14  on a strict liability standard—whether she adequately alleged a violation of 21 C.F.R. § 101.22(i)"

15  and emphasizes that this court and others in the Ninth Circuit have "rejected that theory for

16  purposes of stating a claim under the UCL's unlawful prong."  *Id.* at 12.  Further, Defendant

17  argues that Plaintiff failed to address its argument regarding the heightened pleading standard of

18  Rule 9(b) and therefore "effectively concedes the argument."  *Id.* at 13-14.

19        The UCL prohibits business acts or practices that are "unlawful."  Cal. Bus. & Prof. Code

20  § 17200.  As the California Supreme Court has explained, the unlawful prong of the UCL

21  "borrows violations of other laws and treats [them] . . . as unlawful practices independently

22  actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder."

23  *Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 383 (1992) (internal quotation omitted).

24  "Virtually any law can serve as the predicate for a section 17200 action."  *Klein v. Earth Elements,*

25  *Inc.*, 59 Cal. App. 4th 965, 969 (1997).  In order to state a claim under the UCL, while an unlawful

26  act may be predicated upon (and hence effectively incorporating), *e.g.*, federal regulations,

27  standing under the UCL independently requires that the plaintiff is a "person who has suffered

28  injury in fact and has lost money or property *as a result of* the unfair competition."  Cal. Bus. &

9

**44**

United States District Court
Northern District of California

Prof. Code § 17204 (emphasis added).

As noted above, the Court previously held that Plaintiff "adequately alleged that the Product does not comply with Section 101.22(i), as she assert[ed] that the Product's flavoring does not derive exclusively from the vanilla plant and that its label does not include 'with other natural flavor' in compliance with the prescriptive terms of Section 101.22(i)(1)(iii)." Order at 16. The Court explicitly held that "since the Product's label only includes the term 'Vanilla,' [Plaintiff] has adequately alleged that the Product does not comply with Section 101.22(i)(1)(iii)." *Id.* Taken as a given plausible claim of a violation of federal law, the Court turns to Defendant's argument that Plaintiff has failed to adequately plead loss of money or property as a result of a violation – *i.e.* reliance (in the case of misrepresentation) as required by the UCL.

1.    Plausibility of Allegations Pertaining to Reliance

Defendant specifically argues that "Plaintiff's TAC fails to plausibly allege that her reliance on the Product label caused her to be deceived such that she suffered an injury-in-fact." MTD at 14. Defendant claims that "Plaintiff cannot seek UCL relief—even under the UCL's unlawful prong—based on a strict liability theory" by merely pleading a violation of an FDA regulation. *Id.* at 15. Defendant further notes that "[d]espite the Court's finding that her interpretation of the Product label was implausible as a matter of law, Plaintiff now alleges that she 'read and relied on Defendant's label on the Product to believe that the characterizing flavor of the Product was vanilla and that the vanilla flavor came independently from the vanilla plant.'" *Id.* at 16 (quoting TAC ¶ 33). Defendant argues that Plaintiff "could not have plausibly reached this conclusion given that (1) the front label states 'vanilla,' which the Court concluded 'merely indicates flavor and not an ingredient source,' and (2) the ingredient list expressly provides that the Product includes 'natural flavors' in addition to vanilla extract." *Id.* (quoting Order at 10). As such, Defendant asserts that "Plaintiff fails to plausibly allege that she relied on the Product's 'vanilla' label to conclude that the Product's vanilla flavor 'came independently' from the vanilla plant, and *as a result* of the alleged misrepresentation, was deceived and suffered an injury or loss of money." *Id.*

In *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310 (2011), the California Supreme Court made

clear that where the essence of the claim is based on misrepresentations, "as a result of" under Section 17204 "means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* at 326 (citation and quotations omitted). The California Supreme Court explained that because "reliance is the causal mechanism of fraud," a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *Id.* (citation omitted). To satisfy the causation requirement, plaintiffs are required to plead and prove that they actually relied on the statement at issue. *See Great Pac. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (citing *Kwikset*, 51 Cal. 4th at 326-27). Notably, this appears true of all UCL claims, regardless of whether they are brought under the unfair, unlawful, or fraudulent prong. *Swearingen v. Late July Snacks LLC*, No. 13-cv-04324-EMC, 2017 WL 4641896, at *2 (N.D. Cal. Oct. 16, 2017) (holding reliance is required to establish standing under the UCL unlawful prong and granting the defendant's motion to dismiss to the extent it seeks to dismiss any UCL claim based on strict liability without showing reliance).

The test of reliance is not inherently based on objective standard. The reasonable consumer test of reliance is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation. The predicate violation here – California's Sherman Law – does not require reliance as measured by a reasonable consumer. As the Ninth Circuit in an unpublished order in *Bruton v. Gerber Products Company*, 703 Fed. Appx. 468, 471-472 (9th Cir. 2017) stated, the best reading of California precedent is that California's Sherman Law incorporates standards set by FDA regulations, and the FDA regulations include no requirement that the public be likely to experience deception. The Court thus reversed the district court's grant of summary judgment on the plaintiff's claims that the labels were unlawful in violation of the UCL.

Although this Court stated in its prior order that Plaintiff plausibly alleged a violation under the UCL's unlawful prong, *see* Order at 16-17, it did not address the question of reliance as Defendant had not advanced the argument made herein that actual reliance under *Kwikset* must be shown here. The Court now addresses this issue. Plaintiff alleges that she "sought a yogurt

11

product whose characterizing vanilla flavor is independently derived from the vanilla plant" and "read and relied on Defendant's label on the Product to believe that the characterizing flavor of the Product was vanilla and that the vanilla flavor came independently from the vanilla plant." TAC ¶¶ 32-33. Additionally, Plaintiff contends that had she "known the truth—that the label Plaintiff relied upon in making the purchase was unlawful in that the vanilla flavor of the Product does not come independently from the vanilla plant—[she] would not have purchased the Product at a premium price or bought the Product at all." *Id.* ¶ 34. Although given the Court's prior determination that no reasonable consumer would conclude the package implies the vanilla flavor is derived exclusively (or independently) from the vanilla plant, Plaintiff has arguably sufficiently pled her *actual* reliance resulting in her alleged injury in this case.

Accordingly, the Court **DENIES** Defendant's motion to dismiss for failure to state a claim.

2.    Heightened Pleading Standard of Rule 9(b)

Additionally, Defendant argues that Plaintiff fails to "satisfy the heightened pleading standard of Rule (9)(b)." MTD at 17. Defendant specifically claims that Plaintiff "fails to explain *how* she relied on any representations on the label to reach the illogical conclusion that the Product's vanilla flavor is 'independently derived' from the vanilla plant, based on the word 'Vanilla,' and an ingredient list that includes both 'vanilla extract' and 'natural flavors.'" *Id*. at 18 (emphasis added).

Notably, "[t]he Court looks to the 'gravamen' of Plaintiff's causes of action to determine if the causes of action are grounded in fraud . . . . Usually, violations of the Sherman Law and FDA labeling regulations constitute misleading actions that are grounded in fraud." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1098 (N.D. Cal. 2017). In *Hadley*, Judge Koh considered Plaintiff's similar admission that the "FDA regulations at issue are intended to prevent the consuming public from being misled" in determining that Plaintiff's unlawful prong UCL claim was grounded in fraud. *Hadley*, 243 F. Supp. 3d at 1098-99 (dismissing UCL unlawful claim that alleged a "bare technical violation" of federal regulations). As noted above, fraud allegations are subject to the heightened pleading standard under Rule 9(b) and as such, "[a]verments of fraud must be accompanied by "'the who, what, when, where, and how' of the misconduct charged," as

12

well as the circumstances indicating fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Here, Plaintiff does explain *how* she relied on representations on the label to reach the conclusion that the Product's vanilla flavor is "independently derived" from the vanilla plant. She explicitly alleges that she "read and relied on Defendant's label on the Product to believe that the characterizing flavor of the Product was vanilla and that the vanilla flavor came independently from the vanilla plant." TAC ¶ 33. Contrary to Defendant's assertion, it appears that Plaintiff's allegations satisfy 9(b)'s *how* requirement.

Thus, the Court **DENIES** Defendant's motion to dismiss for failure to state a claim on the basis that Plaintiff failed to satisfy heightened pleading requirements of Rule (9)(b).

B.     Adequacy of Legal Remedy

Plaintiff specifically alleges that she "lacks an adequate remedy at law because the UCL, the only claim [now] brought by Plaintiff, does not provide for damages." TAC ¶ 53.

Defendant argues that the TAC still fails to allege that monetary damages are inadequate and argues that Plaintiff's allegation that the UCL does not provide for damages is conclusory." MTD at 4. Further, Defendant states that Plaintiff failed to "add any factual allegations to explain how monetary damages are inherently inadequate to redress her alleged harm and still 'has not demonstrated that there is an inherent limitation of the legal remedy.'" *Id.* at 4 (quoting Order at 22).

In her opposition, Plaintiff states that the "TAC is crystal clear that [she] relied upon [Defendant's] unlawful label, and her injury was monetary" and notes that she "seeks restitution and disgorgement of [Defendant's] ill-gotten gains, as expressly permitted under the UCL." Opp'n at 8. Plaintiff claims that Defendant is "ultimately tak[ing] issue with how, not whether, Plaintiff has pled that she does not have an adequate remedy at law" and emphasizes that plaintiffs are "'masters of the complaint.'" *Id.* at 11 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987). Plaintiff argues that she "amended her allegations to show that there is an inherent limitation on the legal remedy in that damages are simply not permitted under the sole unlawful claim she asserts factually and as a cause of action." *Id.* Plaintiff states that she "has neither pled

nor sought legal remedies in the TAC" and "argues that equitable restitution goes beyond the damages available to her because Plaintiff has no damages available to her." *Id.*

In its reply, Defendant argues that Plaintiff's assertion that "because the Court dismissed her claim under the CLRA, she is unable to seek damages[,]" is "premised on a fundamental misunderstanding of the law." Reply at 3; Docket No. 57. Defendant states that Plaintiff "misconstrues 'inherent limitation' to mean 'unavailable.'" *Id.* Defendant emphasizes that "the Court explained that Plaintiff's 'inability to obtain damages here results from her CLRA claim's failure on the merits; she has not demonstrated that there is an inherent limitation of the legal remedy that renders it inadequate.'" *Id.* (quoting Order at 22). Defendant further claims that "whether Plaintiff is able to pursue a CLRA claim for damages is irrelevant to this inquiry." *Id.* Defendant agrees that Plaintiff is the "master of her complaint" and notes that she "sought damages in all three of her prior complaints" and that only "now she does not seek damages because the Court dismissed her claim as inadequately pled. But whether or not her claim for damages was dismissed on the merits or voluntarily, she cannot escape the fact that she sought damages under the CLRA and her request for restitution is based on a loss of monetary value." *Id.* at 4.

"[A] federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). This includes the equitable principle that in order to obtain an equitable remedy, a plaintiff must lack an "adequate remedy at law." *Mort v. U.S.*, 86 F.3d 890, 892 (9th Cir. 1996); *see also Anderson v. Apple Inc.*, No. 3:20-cv-02328-WHO, 2020 WL 6710101, at *7 (N.D. Cal. Nov. 16, 2020) ("[The adequate remedy at law] principle applies squarely to an award of restitution – an equitable remedy – under the UCL."). Judge Seeborg explained in *Sonner*, "[i]n the Ninth Circuit, the relevant test is whether an adequate damages remedy is available, not whether the plaintiff elects to pursue it, or whether she will be successful in that pursuit." *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom. Sonner*, 971 F.3d 834.

As the Court noted in its prior order, in *Sonner*, a consumer brought a putative class action

14

against a company that marketed and sold a liquid dietary supplement, asserting damages and equitable restitution claims for false or misleading advertising in violation of the UCL and CLRA, based on allegations that the company's advertisements and packages encouraging consumers to use the supplement to help keep their joints flexible and lubricated impliedly promoted the supplement as a remedy for pain and stiffness in arthritic joints. *Sonner*, 971 F.3d at 837-838. Following the consumer's amendment of the complaint to drop the CLRA damages claim on the eve of trial, the district court granted the company's motion to dismiss for failure to state a claim and denied leave to amend the complaint to reallege a CLRA damages claim. *Id.* at 838.

On appeal, the Ninth held that the consumer was not entitled to equitable restitution for violation of the UCL and CLRA since the consumer failed to establish that she lacked an adequate remedy at law for false or misleading advertisement claims against the company and thus, the consumer was not entitled to equitable restitution for a violation of the UCL and CLRA. *Id.* at 844. The Ninth Circuit noted that the consumer conceded that she sought "the same sum in equitable restitution as 'a full refund of the purchase price'—$32,000,00—as she requested in damages to compensate her for the same past harm." *Id.* The Ninth Circuit concluded that the consumer failed to "explain how the same amount of money for the exact same harm is inadequate or incomplete . . . ." *Id.* The Ninth Circuit further held that the district court did not abuse its discretion in denying the consumer leave to amend her complaint for a third time to reallege a damages claim for false or misleading advertisement under the CLRA against the company, emphasizing that the consumer strategically chose to amend the complaint on the eve of trial to drop the damages claim and seek only equitable restitution, the company opposed the request to amend and argued that the consumer needed to establish lack of a legal remedy before seeking equitable restitution and warned that it would bring a motion to dismiss on that basis, and the district court cautioned the consumer prior to amendment about the risk she was taking in dropping the damages claim on the eve of trial. *Id.* at 845.

*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action. *See Guzman v. Polaris Indus. Inc.*, No. 8:19-cv-01543-FLA (KESx), 2021 WL 2021454, at *11 (C.D. Cal. May 12, 2021) (in

15

United States District Court
Northern District of California

granting the defendants' motion for summary judgment the court explained that the plaintiff sought damages for violations of the CLRA in addition to restitution under the UCL in the second amended complaint but failed to identify facts to establish an inadequate legal remedy and the court noted that "the relevant question, however, is not whether [the plaintiff] has pleaded legal remedies, but whether he could have sought an adequate legal remedy."), appeal filed May 19, 2021 (No. 21-55520).  Similarly, where the plaintiff had an adequate legal remedy but forsook it (e.g. by failure to abide by the statute of limitations), the plaintiff cannot be said to have been without an adequate legal remedy.  *See Guzman*, 2021 WL 2021454, at *11.

Thus, while a plaintiff may not through actions within its control forsake an adequate legal remedy and then claim it has no adequate legal remedy, thereby opening the door to otherwise identical equitable relief, the analysis is less clear where the legal remedy has been denied despite plaintiff's best efforts.  In particular, it is not clear whether the plaintiff must demonstrate there is some structural impediment to an equivalent legal remedy (such as a statutory limit) as opposed to e.g. a failure of factual proof on the legal claim.  Although this Court in its prior order suggested the plaintiff must demonstrate there is some "inherent limitation" on the legal remedy (Order at 22; Docket No. 48), other courts have indicated imposing such a burden at the pleading state may be premature.  The Court takes note of those decisions and refines its analysis, at least as it applies at this pleading stage.

In *Junhan Jeong v. Nexo Financial LLC, et. al.*, No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022), in addition to several other claims, the plaintiff sought damages under breach of contract and UCL claims, as well as restitution under the UCL and injunctive relief under the UCL and CLRA.  On a motion to dismiss, the court distinguished *Sonner* when analyzing the plaintiff's claim for restitution under the UCL at the pleading stage, noting that "[c]ourts in the Ninth Circuit are divided on how exacting a standard *Sonner* imposes on plaintiffs who plead claims for equitable remedies at the pleading stage."  *Id*. at*27 (citing *Byton N. Am. Co. v. Breitfeld*, No. CV 19–10563–DMG (JEMx), 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) (referencing an "intra-circuit split on the issue of whether courts may allow UCL claims to proceed past the pleading stage when other adequate remedies exist" but holding that in the

16

absence of controlling authority, the court would allow the plaintiffs to plead UCL claims in the alternative, even when other adequate remedies may exist) (citation omitted)).  The court found "that *Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial" and as such, "provides limited guidance for pleading claims for legal and equitable relief."  *Id*.  In so finding, the court noted other cases where courts "d[id] not consider *Sonner* to impose strict requirements at the pleading stage."  *Id*. (citing *Freeman v. Indochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal. 2020) ("Plaintiff may allege claims in the alternative at the pleading stage.  The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law."); *Byton*, 2020 WL 3802700, at *9 ("[T]he Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent.")).  The court emphasized that, "in light of *Sonner's* limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper."  *Id*.  Thus, "[g]iven the general liberal policy courts have toward pleading in the alternative," the court held that the plaintiff could "proceed with his equitable restitution claim at this stage even though he is also seeking contract damages" and that the court could "reassess at a later stage of the case . . . ."  *Id*.

In *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022), Judge Orrick similarly ruled on a motion to dismiss that "because *Sonner* was decided at a later posture, I agree with the plaintiffs that, if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case . . . [and that] it is too early to determine whether the plaintiffs' legal remedies will ultimately be adequate, so it makes sense to defer this determination."

These ruling are consistent with Federal Rule of Civil Procedure 8 which allows for pleading in the alternative.  Specifically, Rule 8 states that a claim for relief must contain "a demand for relief sought, *which may include relief in the alternative or different types of relief*."  Fed. R. Civ. P. 8(a)(3) (emphasis added).  *See Sagastume v. Psychemedics Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage.") (citations omitted).

17

Similar to the plaintiff in *Junhan Jeong,* 2022 WL 174236, Plaintiff here initially pled a claim for damages under the CLRA and a claim for restitution under the UCL.  After the Court dismissed Plaintiff's CLRA claim on the merits, Plaintiff now pleads that there is an inadequate legal remedy since she has no other basis to assert damages.  *See* TAC ¶ 53.  Moreover, as discussed below, Plaintiff has added allegations that arguably distinguishes her UCL claim to some extent from the prior CLRA claim.  Thus, "[w]hile the Court may reassess at a later stage of this case, it declines to trim out Plaintiff's equitable restitution claim at this early stage." *Junhan Jeong,* 2022 WL 174236, at *27.  The issue of Plaintiff's entitlement to seek the equitable remedy of restitution may be revisited at a later stage.

As such, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for restitution.

C.      Standing to Seek Injunctive Relief

Defendant specifically claims that under *In re Coca-Cola Products Marketing & Sales Practices Litigation (No. II)*, No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021), Plaintiff lacks standing under Article III to pursue injunctive relief since her "conditional promise to purchase a reformulated product is insufficient as [a] matter of law" and she has not attempted to allege that she has or imminently will suffer from any "imminent or particularized harm."  *Id.* at 11.  As such, Defendant argues that Plaintiff's UCL claim should be dismissed in its entirety with prejudice.  *Id.*

Plaintiff broadly asserts that "the law of the case precludes reconsideration of issues already decided by this Court."  Opp'n at 4.  Plaintiff argues that "Defendant identifies no proper basis for this Court to reconsider its prior rulings that Plaintiff plausibly pled her claim under the unlawful prong of the UCL and that she has standing with respect to that claim."  *Id.* at 9.  Plaintiff specifically argues that *In re Coca-Cola* does not constitute an intervening change in the law as it simply reiterated the standing requirement of *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018).  *Id.* at 6-7.

Defendant argues that an "intervening change in the law" constitutes an exception to the law of the case.  Reply at 7; *see United States v. Moore*, No. 20-30273, 857 Fed. Appx. 409 (9th

18

Cir. 2021) (the Ninth Circuit recognizes the following exceptions to the law of the case doctrine: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial). Defendant contends that the Ninth Circuit's decision in *In re Coca-Cola* constitutes intervening authority warranting reconsideration. Defendant specifically argues that "Plaintiff's allegation[] that she 'would likely purchase' the product again in the future if it was reformulated is insufficient under the Ninth Circuit's recent decision." *Id.*

As the Court previously noted, when seeking injunctive relief, the injury-in-fact requirement is met when the consumer alleges that she (1) cannot "rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) might purchase the product again, "as she may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 969-70. Notably, the Court previously held that Plaintiff had "standing to seek injunctive relief, albeit solely with respect to her claim under the UCL's unlawful prong." Order at 18. The Court expressly found that Plaintiff had "standing to pursue injunctive relief under *Davidson's* first scenario, as she has alleged that she cannot rely on the Product's advertising or labeling, and that she will not purchase the Product again despite her desire to." *Id.* at 19. The Court emphasized that Plaintiff's specific allegation that she "*would purchase the Product again in the future* if the Product were reformulated such that the vanilla flavor came exclusively from the ingredients derived from the vanilla plant or the Product were not deceptively labeled" satisfied *Davidson's* first prong. *Id.* (quoting SAC ¶ 9). Plaintiff similarly claims in the TAC that she "would purchase the Product again in the future if the Product were reformulated such that the characterizing vanilla flavor of the Product is independently derived from the vanilla plant or if the labelling complied with federal and state regulations." TAC ¶ 8.

In *In re Coca-Cola*, Coca-Cola appealed a district court order granting class certification in a multidistrict consumer action alleging mislabeling of Coke. *In re Coca-Cola Products Marketing & Sales Practices Litigation (No. II)*, 2021 WL 3878654 at *1. The plaintiffs claimed that "phosphoric acid is a chemical preservative or an artificial flavor; that Coca-Cola misled the

19

public by using the advertising slogan 'no artificial flavors. no preservatives added. since 1886' even though Coke contains phosphoric acid; and that Coca-Cola continues to mislabel its product by not including a required disclosure that phosphoric acid is an 'artificial flavor' or a 'preservative.'" *Id*. The Ninth Circuit explained that "*Davidson* offered two non-exclusive examples of threatened future harm a consumer complaining of assertedly false labeling might plausibly allege: 'she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to' and 'she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.'" *Id*. (quoting *Davidson*, 889 F.3d at 969-70). The Ninth Circuit noted that two of the plaintiffs, Engurasoff and Dube, did not specify whether they would want to purchase Coke in the future and concluded that "[w]ithout any stated desire to purchase Coke in the future, [they did] not have standing to pursue injunctive relief." *Id*. at *2. Additionally, the Ninth Circuit noted that four of the plaintiffs, Ogden, Merritt, Sowizrol, and Lazaroff, "submitted declarations stating that they 'would consider purchasing' Coke depending on 'several factors, including but not limited to what disclosures Coca-Cola provided regarding phosphoric acid or any other ingredient in Coke, whether Coca-Cola removed phosphoric acid, and what, if anything replaced phosphoric acid, and the price of [Coke] relative to other beverages.'" *Id*. The Ninth Circuit emphasized that the "'threatened injury must be certainly impending to constitute injury in fact'" and held that "[t]hese plaintiffs' declarations that they would 'consider' purchasing properly labeled Coke are insufficient to show an actual or imminent threat of future harm." *Id*. (citations omitted). Additionally, as for two plaintiffs, Woods and Marino, that asserted that "they would be interested in purchasing Coke again if its labels were accurate, regardless of whether it contained chemical preservatives or artificial flavors," the Ninth Circuit concluded that this allegation of a bare procedural violation could not satisfy the demands of Article III standing as it was "insufficient to demonstrate that they suffered any particularized adverse effects." *Id*. Thus, the Ninth Circuit held that none of the plaintiffs had demonstrated the requisite harm or imminence required under *Davidson*, and as such, had "not adequately alleged an injury in fact and do not have standing to pursue injunctive relief." *Id*. at

20

*3.

It appears that *In re Coca-Cola* explains and expands upon *Davidson's* standing requirement, and this is sufficient to warrant reconsideration. However, *In re Coca-Cola* does not change the outcome here. It is factually distinguishable. The *In re Coca-Cola* plaintiffs either: (1) did not specify whether they would purchase the allegedly mislabeled Coke in the future; (2) alleged that they "would consider purchasing" Coke depending on several factors, including but not limited to what disclosures Coca-Cola provided regarding phosphoric acid or any other ingredient in Coke; or (3) asserted that "they would be interested in purchasing Coke again if its labels were accurate, regardless of whether it contained chemical preservatives or artificial flavors." *See In re Coca-Cola Products Marketing & Sales Practices Litigation (No. II)*, 2021 WL 3878654 at *2. In contrast to the *In re Coca-Cola* plaintiffs, Plaintiff here alleges that she would purchase the Product again in the future if the Product were reformulated such that the characterizing vanilla flavor of the Product is independently derived from the vanilla plant *or* if the labelling complied with federal and state regulations. *See* TAC ¶ 8. Plaintiff alleges more than "a bare procedural violation" and that the Court's prior finding that Plaintiff establish standing for injunctive relief still obtains. *See* Order at 19 ("Every consumer who satisfies *Davidson's* first scenario would purchase the contested product only 'if' it changed in some way."); *see also Vizcarra v. Unilever U.S., Inc.*, 2020 WL 4016810, at *6 (N.D. Cal. July 16, 2020) (finding that the plaintiff had standing where she alleged that she would purchase an ice cream product again "if it were truly flavored as labeled and advertised"); *cf. Lanovaz v. Twinings N. Am., Inc.*, 726 Fed. Appx. 590, 591 (9th Cir. 2018) (finding that a plaintiff lacked standing where she only alleged that she would "consider buying" a product again).

Thus, the Court **DENIES** Defendant's motion to dismiss Plaintiff's request for injunctive relief on standing grounds.

D.    Striking New Allegations

If the Court does not dismiss Plaintiff's UCL claim in its entirety, Defendant argues in the alternative that the Court should strike Plaintiff's revised allegations under Rule 12(f) for exceeding the scope of the Court's order granting leave to amend with regard to her claim for

21

equitable relief.  MTD at 12.  Defendant states that the Court's "Order granted Plaintiff limited leave to amend her complaint to plead that damages are inadequate."  *Id.*  Defendant argues that not only did Plaintiff fail to plead that damages are an inadequate remedy "but she added new and different allegations to her TAC, in an effort to bolster her claim that the Product's label fails to comply with FDA's regulations."  *Id.*  Defendant emphasizes that "Plaintiff's prior complaints were based on her theory that [Defendant's] label was deceptive based on her allegations that the Product's vanilla flavoring did not come 'exclusively from the vanilla plant,' [but now she] contends that the vanilla flavor does not come 'independently' from the 'vanilla plant.'"  *Id.* (quoting SAC ¶ 8, TAC ¶¶ 33-34).  Defendant specifically states that Plaintiff's "improper amendments include the following allegations:

- Adding the image of the 5.3-ounce product label (*id.* ¶ 2), which was not included in the SAC;

- Repackaging her allegations that the Product's vanilla flavor does not come "exclusively from the vanilla plant" (SAC ¶ 8) to allege that the "characterizing vanilla flavor" of the Product is not "independently derived from the vanilla plant" (TAC ¶¶ 7, 8, 32) or "does not come independently from . . . the vanilla plant," (*id.* ¶¶ 20, 33, 34);

- Removing images of the back product label (SAC ¶¶ 5, 26)

- Adding conclusory allegations regarding laboratory testing results of other products (TAC ¶ 28);

- Adding [the] allegation that Plaintiff purchased the 32 ounce size Product (*id.* ¶ 7);

- Adding allegations regarding the source and characteristics of vanillin (*id.* ¶¶ 14, 22);

- Changing her purported "benefit of the bargain allegations" [] from alleging that she was denied the benefit of the bargain because she would have purchased other products that "contain the same or immaterially different amounts of real vanilla" (SAC ¶ 68), to alleging that she would have purchased other products that "are properly labeled . . ." (TAC ¶ 50); and

- Changing her requested remedy from a request for injunctive relief to "commence a corrective advertising campaign" (SAC ¶ 69) to a request for injunctive relief ordering Chobani to "commence corrective action" (TAC ¶ 51).

*Id.* at 12-13.  Further, Defendant states that "this case is past the point where Plaintiff may file an

United States District Court
Northern District of California

1    amended complaint as a matter of course" and argues that Plaintiff's new allegations are outside

2    the scope of the Court's Order and an "impermissible attempt to change her factual allegations

3    without leave of Court as required under Rule 15." *Id*. at 13.

4         In her opposition Plaintiff notes that she "took into account this Court's analysis of

5    *Elgindy*" and states that all of her new allegations "stem directly from the Court's Order

6    dismissing her deception claims and granting her leave to amend her complaint to plead that

7    damages are inadequate." Opp'n at 13. Plaintiff claims that "[u]nder the unusual circumstances

8    of this case, where only the claim under the UCL's unlawful prong survived, Plaintiff amended

9    her complaint in good faith." *Id.* Moreover, she argues that striking her allegations would be

10   improper even if this Court finds that she exceeded the scope of the amendment the Court

11   authorized because "that by itself does not necessarily warrant striking the unauthorized

12   allegations." *Id*. at 14. Further, Plaintiff states that nothing in the TAC is redundant, immaterial,

13   or scandalous, and "certainly nothing that is prejudicial." *Id*. at 15. Additionally, Plaintiff argues

14   that she did "not put forth any new allegations of which Defendant was unaware or that increases

15   its expenditure of time and money from litigating spurious issues" and as such, there are "no

16   grounds to strike any of Plaintiff's allegations in the TAC." *Id*.

17        In its reply, Defendant argues that "[n]either Rule 12(f) nor Rule 15 permit Plaintiff to

18   impermissibly change factual or legal allegations beyond the scope of the Court's order granting

19   leave to amend." Reply at 10. Additionally, Defendant claims that Plaintiff "clearly prejudices"

20   Defendant "by revising her core allegations many months into litigation in her fourth complaint,"

21   but that even if Defendant was not prejudiced, the Court could still appropriately grant the motion

22   to strike. *Id.* at 11.

23        "District [c]ourts in this circuit generally allow plaintiffs to add new claims and/or parties

24   to an amended complaint where a prior order of dismissal granted leave to amend without

25   limitation." *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13–cv–01025–MCE–AC,

26   2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014) (citing *Katz v. Cal–W. Reconveyance Corp.*,

27   09–CV–04866–LHK, 2010 WL 3768049 (N.D. Cal. Sept. 21, 2010)); *see, e.g.*, *Cover v. Windsor

28   Surry Co.*, Case No. 14–cv–05262, 2016 WL 3421361, at *3 (N.D. Cal. June 22, 2016) (citation

                                                23

United States District Court
Northern District of California

omitted); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10–CV–01390–LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (citations omitted); *Topadzhikyan v. Glendale Police Dep't*, No. CV 10–387 CAS (SSx), 2010 WL 2740163, at *3 n.1 (C.D. Cal. July 8, 2010). "However, . . . where leave to amend is given to cure deficiencies in certain specified claims, courts have held that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *Ketab Corp. v. Mesriani & Assocs.*, 2:14–cv–07241–RSWL (MRW), 2015 WL 8022874, at *8 (C.D. Cal. Dec. 4, 2015) (citing *DeLeon*, 2010 WL 4285006, at *3); *see, e.g.*, *Jameson Beach Prop. Owners Ass'n*, 2014 WL 4925253, at *3 ("[W]here a prior court order granted limited leave to amend, [d]istrict [c]ourts in this circuit generally strike new claims or parties contained in an amended complaint when the plaintiff did not seek leave to amend." (citing *Benton v. Baker Hughes*, CV–12–07735–MMM, 2013 WL 3353636 (C.D. Cal. June 30, 2013) and *Crane v. Yarborough*, CV 05–8534–DSF, 2012 WL 1067956 (C.D. Cal. Mar. 29, 2012))). *See also Raiser v. City of Los Angeles*, No. CV 13-2925 RGK (RZ), 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014) (district court dismissed the plaintiff's second amended complaint because the plaintiff continued to name several defendants whom the court had dismissed from the action and because "many if not all of the changes in the second amended complaint exceed[ed] the scope of leave granted by the [c]ourt . . . ."). *But see Khan v. K2 Pure Sols., L.P.*, Case No. 12–cv–05526–WHO, 2013 WL 6503345, at *11 (N.D. Cal. Dec. 4, 2013) ("Exceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof." (quoting *Lamumba Corp. v. City of Oakland*, No. 05–cv–2712, 2006 WL 3086726, at *4 (N.D. Cal. Oct. 30, 2006))). "Thus, whether a district court will accept new claims and/or parties in an amended complaint after a motion to dismiss will depend on whether the plaintiff was granted leave to amend with or without limitation." *Jameson Beach Prop. Owners Ass'n*, 2014 WL 4925253, at *3 (citing *Urista v. Bank of Am., N.A.*, C11–03097–HRL, 2012 WL 10596, at *3 (N.D. Cal. Jan. 3, 2012)). "In all of these cases, courts looked at the specific language of the prior order to determine whether or not leave to amend was granted without limitation." *Id.*

As noted above, the Court's Order expressly "[g]ave [Plaintiff] leave to amend her complaint to plead that damages are inadequate and that she is thus entitled to seek equitable

24

United States District Court
Northern District of California

1    restitution under the UCL's unlawful prong." Order at 23. In finding that Plaintiff failed to

2    demonstrate that there was an inherent limitation of the legal remedy, the Court noted that

3    *Elgindy*, 2021 WL 116535 "suggested that a plaintiff could pursue equitable remedies under the

4    UCL where such claims were 'rooted in a different theory' of liability that involved different

5    allegations that her claims for damages." *Id*. at 22 (quoting *Elgindy*, 2021 WL 116535 at *15).

6    Further, the Court noted that Plaintiff's various claims were rooted in the same allegations that the

7    labeling of the Product was misleading to consumers and a violation of FDA regulations. *Id*.

8         Defendant appears correct in that the Court's order was somewhat limited as it specifically

9    granted Plaintiff leave to amend her remaining claim under the UCL's unlawful prong to plead the

10   inadequacy of legal remedies with respect to her request for equitable restitution. However, by

11   now solely alleging a single claim under the UCL's unlawful prong based on the new and different

12   theory that Defendant's labeling violated FDA regulations since the Product is not derived

13   independently from the vanilla plant, Plaintiff took note of the Court's emphasis on *Elgindy* (*see*

14   Order at 22). More specifically, since *Elgindy*, 2021 WL 116535 at *15 states that a plaintiff can

15   pursue equitable remedies under the UCL where such claims were rooted in a different theory.

16   The Court's prior Order granting leave to amend was predicated on this. It appears that Plaintiff's

17   new allegations pertaining to her new and different theory—that the Product's vanilla flavor is not

18   independently derived from the vanilla plant—are permissibly within the scope of the Court's

19   Order. As such, Plaintiff's new allegations regarding laboratory testing of other related products

20   as well as her new allegations regarding the source and characteristics of vanillin arguably support

21   Plaintiff's new theory. On the other hand, Plaintiff's other new allegations — that she purchased

22   the 32 ounce size of the Product; that she is now seeking injunctive relief ordering Defendant to

23   commence corrective action when she previously requested injunctive relief to commence a

24   corrective advertising campaign; and changing her benefit of the bargain allegations to allege that

25   she would have purchased other products that are properly labeled — are not within the scope of

26   the Court's Order granting leave to amend. Those allegations are thus struck.

27        The Court thus **GRANTS** in part and **DENIES** in part Defendant's motion to strike

28   Plaintiff's new allegations.

25

### V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss and **GRANTS** in **PART** and **DENIES** in **PART** Defendant's motion to strike Plaintiff's new allegations in the TAC.

This order disposes of Docket No. 54.


**IT IS SO ORDERED**.


Dated: February 4, 2022

_____
EDWARD M. CHEN
United States District Judge

1   CLAUDIA M. VETESI (CA SBN 233485)
    CVetesi@mofo.com
2   NICOLE V. OZERAN (CA SBN 302321)
    NOzeran@mofo.com
3   LENA GANKIN (CA SBN 333047)
    LGankin@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482, U.S.A.
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   Attorneys for Defendant
    CHOBANI LLC

8

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/04/2023**
**Clerk of the Court**
BY: JUDITH NUNEZ
**Deputy Clerk**

        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 COUNTY OF SAN FRANCISCO

10

11  | MIKHAIL GERSHZON, on behalf of | CASE NO. CGC-22-603042 |
    himself and all others similarly situated,

12                                  **DEFENDANT CHOBANI LLC'S**
                                    **REQUEST FOR JUDICIAL**
13              Plaintiff,          **NOTICE IN SUPPORT OF**
                                    **MOTION TO STAY**
14      v.                          **PROCEEDINGS**

15  CHOBANI LLC,                    Dept:  613
                                    Judge:  Hon. Andrew Y.S. Cheng
16              Defendant.          Date: TBD
                                    Time:  TBD
17
                                    Date Action Filed:  November 18, 2022
18

19

20

21

22

23

24

25

26

27

28

Pursuant to California Evidence Code Sections 452 and 453, Defendant Chobani LLC hereby requests that the Court take judicial notice of the following documents in support of its Motion to Stay Proceedings:

- A copy of the Third Amended Complaint ("TAC") filed in *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC (AGT)).  A true and correct copy of the *Nacarino* TAC is attached to the concurrently-filed Declaration of Claudia M. Vetesi as **Exhibit 2**.

- A copy of the Order Denying Defendant's Motion to Dismiss TAC in *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC (AGT)).  A true and correct copy the *Nacarino* Order Denying Defendant's Motion to Dismiss TAC is attached to the concurrently-filed Declaration of Claudia M. Vetesi as **Exhibit 3**.

The Court may take judicial notice of **Exhibits 2 and 3**, which are highly relevant to issues raised in Chobani's Motion to Stay Proceedings.  The authenticity of **Exhibits 2 and 3** cannot be questioned because they are part of an official court record.  Evid. Code, § 452, subd. (h) (authorizing judicial notice of "facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy").

California Evidence Code Section 452(d) authorizes this Court to take judicial notice of **Exhibits 2 and 3** because it is a "[r]ecord[] of . . . any court of record of the United States." California courts routinely take judicial notice of documents filed in other court proceedings. (See, e.g., *People v. Lawley* (2002) 27 Cal.4th 102, 116, fn. 2 & 163, fn. 24 [taking judicial notice of court files and transcripts from another case]; *People v. Moreno* (2003) 108 Cal.App.4th 1, 4, fn. 3 [taking judicial notice of record in prior appeal]; *PG & E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1220, fn. 38  [judicially noticing complaints filed against defendant in other proceedings], amended by (Cal., Sept. 3, 2004, S125954, 2004 Cal. Lexis 8581).)

Accordingly, Chobani respectfully requests that the Court take judicial notice of **Exhibits 2 and 3**, attached to the concurrently-filed Vetesi Declaration.

1  Dated:  January 4, 2023                    MORRISON & FOERSTER LLP

2

3                                             By:  _____

4                                                  Claudia M. Vetesi

5                                                  *Attorneys for Defendant*
                                                   *Chobani LLC*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8          SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                 COUNTY OF SAN FRANCISCO
10

11 | MIKHAIL GERSHZON, on behalf of | CASE NO. CGC-22-603042
himself and all others similarly situated, |

12 | Plaintiff, | **[PROPOSED] ORDER GRANTING DEFENDANT CHOBANI LLC'S MOTION TO STAY PROCEEDINGS**

13 | v. |

14 | CHOBANI LLC, | Dept: 613
Judge: Hon. Andrew Y.S. Cheng

15 | Defendant. | Date: TBD
Time: TBD

16 |

17 | | Date Action Filed: November 18, 2022

18

19
20
21
22
23
24
25
26
27
28

1    TO PLAINTIFF MIKHAIL GERSHZON AND HIS COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE THAT on _____ at _____, Defendant Chobani LLC's

3    ("Chobani") Motion to Stay Proceedings, pending resolution of *Nacarino v. Chobani LLC* (N.D.

4    Cal., No. 20-cv-7437-EMC (AGT), came for hearing before the Honorable Andrew Y.S. Cheng in

5    in Department 613 of the San Francisco Superior Court located at 400 McAllister Street, San

6    Francisco, California.

7    Having considered the parties' written and oral submissions, the Court finds:

8    Good cause appearing, Chobani's Motion to Stay Proceedings is **GRANTED**.

9

10    **IT IS SO ORDERED**.

11

12    Dated: _____

13                                                          _____
                                                          Hon. Andrew Y.S. Cheng
14                                                          Judge of the Superior Court

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING DEFENDANT CHOBANI LLC'S MOTION TO STAY PROCEEDINGS
CASE NO. CGC-22-603042

2

1

2

3

4

5

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO

10

| | |
|---|---|
| 11   MIKHAIL GERSHZON, on behalf of himself and all others similarly situated, | CASE NO. CGC-22-603042 |
| 12                        Plaintiff, | **[PROPOSED] ORDER GRANTING DEFENDANT CHOBANI LLC'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO STAY** |
| 13   v. | |
| 14   CHOBANI LLC, | Dept:  613 |
| 15                        Defendant. | Judge:  Hon. Andrew Y.S. Cheng |
| 16 | Date: TBD<br>Time:  TBD |
| 17 | Date Action Filed:  November 18, 2022 |

18

19

20

21

22

23

24

25

26

27

28

1

**[PROPOSED] ORDER**

2      The Court, having considered the arguments of counsel and the pleadings and papers filed in

3  connection with Defendant's Chobani LLC's request for judicial notice in support of its Motion

4  to Stay, and good cause appearing, hereby **GRANTS** Defendant's request.  The Court takes

5  judicial notice of the following documents, attached to the Declaration of Claudia M. Vetesi:

6          **Exhibit 2**:  A true and correct copy of the Third Amended Complaint ("TAC") filed in

7      *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC (AGT)).

8          **Exhibit 3**:  A true and correct copy of the Order Denying Defendant's Motion to Dismiss

9      TAC in *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC (AGT)).

10

11      **IT IS SO ORDERED.**

12

13   Dated:                                   _____

14                                                Hon. Andrew Y.S. Cheng
                                                 Judge of the Superior Court
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  NICOLE V. OZERAN (CA SBN 302321)
   NOzeran@mofo.com
3  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482, U.S.A.
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  Attorneys for Defendant
   CHOBANI LLC

8

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/04/2023**
**Clerk of the Court**
BY: JUDITH NUNEZ
**Deputy Clerk**

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  COUNTY OF SAN FRANCISCO

11 | MIKHAIL GERSHZON, on behalf of | Case No. CGC-22-603042 |

12 | himself and all others similarly situated, | **PROOF OF SERVICE** |

13 |                    Plaintiff, | Dept: 613 |

14 |            v. | Judge: Hon. Andrew Y.S. Cheng |

15 | CHOBANI LLC, | Date Action Filed: November 18, 2022 |

16 |                    Defendant. |

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION

2      I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
is 425 Market Street, San Francisco, CA 94105.  I am not a party to the within cause, and I am
3   over the age of eighteen years.

4      I further declare that on January 4, 2023, I served a copy of:

5    **DEFENDANT CHOBANI LLC'S NOTICE OF MOTION AND MOTION TO
     STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN
6    SUPPORT THEREOF**

7    **DECLARATION OF CLAUDIA M. VETESI IN SUPPORT OF DEFENDANT
     CHOBANI LLC'S MOTION TO STAY PROCEEDINGS WITH EXHIBITS 1 - 3**
8

9    **DEFENDANT CHOBANI LLC'S REQUEST FOR JUDICIAL NOTICE IN
     SUPPORT OF MOTION TO STAY PROCEEDINGS**
10

11    **[PROPOSED] ORDER GRANTING MOTION TO STAY PROCEEDINGS**

12    **[PROPOSED] ORDER GRANTING DEFENDANT CHOBANI LLC'S REQUEST
      FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO STAY**
13

14    ☒   **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC 2.251]** by
         electronically mailing a true and correct copy through Morrison & Foerster LLP's
15       electronic mail system from cmiddleman@mofo.com to the email address(es) set
         forth below, or as stated on the attached service list per agreement in accordance
16       with Code of Civil Procedure section 1010.6 and CRC Rule 2.251.

17

| Sue J. Nam<br>Michael R. Reese<br>REESE LLP<br>100 West 93rd Street, 16th Floor<br>New York, NY 10025<br>snam@reesellp.com<br>mreese@reesellp.com | *Attorneys for Plaintiff* |
|---|---|
| George V. Granade<br>REESE LLP<br>8484 Wilshire Boulevard, Suite 515<br>Los Angeles, CA 90211<br>ggranade@reesellp.com | *Attorneys for Plaintiff* |

18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE
CASE NO. CGC-22-603042
SF:5264326                                    2

1      I declare under penalty of perjury under the laws of the State of California that the
2   foregoing is true and correct.

3      Executed at Honolulu, Hawaii, this 4th day of January, 2023.

4

5
_____                    _____
         Caitlin Middleman                                    (signature)
              (type)

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MIKHAIL GERSHZON, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CHOBANI LLC,<br><br>　　　　　Defendant. | Case No. CGC-22-603042<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CHOBANI LLC'S *EX PARTE* APPLICATION FOR EXTENSION OF TIME**<br><br>Dept. 613<br>Judge: Hon. Andrew Y. S. Cheng<br>Date Action Filed: Nov. 18, 2022 |

**<u>INTRODUCTION</u>**

Plaintiff Mikhail Gershzon ("Plaintiff") opposes the *ex parte* application of Chobani LLC ("Defendant" or "Chobani") for an extension of time to respond to Plaintiff's Complaint. The right to seek *ex parte* relief is subject to strict procedural and substantive requirements. *See* CRC 3.1200 *et seq.* However, Chobani does not cite or even attempt to meet the key requirement, namely that the "applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." CRC 3.1202. Chobani submitted only the Declaration of Claudia M. Vetesi in Support of Defendant Chobani LLC's *Ex Parte* Application for Extension of Time ("Vetesi Decl."). However, nowhere in this declaration does Ms. Vetesi claim or support a claim of any "irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." Instead of making the requisite affirmative factual showing in a declaration, Chobani set forth only the unsubstantiated statement in its memorandum of law that it "will face undue burden and will waste substantial resources . . . if Chobani is forced to brief a response to Plaintiff's Complaint in this case, only for the Motion to Stay to be granted." Defendant Chobani LLC's *Ex Parte* Application for Extension of Time and Memorandum of Points and Authorities in Support Thereof ("Def. App.") at 4:6-8. In other words, Chobani attempts to bootstrap this *ex parte* application to its motion for a stay, which it filed concurrently. By doing so, Chobani makes clear the glaring flaw in both this application and Chobani's stay motion.

First, there is nothing to stay in this case. The initial case management conference is not until March 22, 2023. Plaintiff has not served any discovery and has no immediate plans to serve any discovery in this case. *See* Declaration of Sue J. Nam in Opposition to Defendant Chobani LLC's *Ex Parte* Application for Extension of Time and in Opposition to Chobani LLC's Motion to Stay ("Nam Decl."), at ¶ 20. Indeed, once Chobani responds to the Complaint and depending on how it responds, Plaintiff would consider any proposed stay of this case pending certain decisions in *Nacarino v. Chobani, LLC*, 20-cv-07437-EMC (N.D. Cal.) or a coordination of discovery in the cases, which would likely obviate Chobani's motion for a stay. Tellingly, Chobani

1    never proposed a stay prior to its filing that motion. *Id.* at ¶ 21.

2          Second, if "the *Gershzon* complaint is a near verbatim recitation" of the allegations in Ms.

3    Nacarino's Third Amended Complaint as Chobani claims, Def. App. at 2:13-14, then Chobani

4    need not waste "substantial resources" or "be severely prejudiced," *id.* at 2:11-12, in providing a

5    timely response because Chobani already moved to dismiss the Third Amended Complaint, lost

6    that motion, then answered the Third Amended Complaint in *Nacarino*. Chobani did not, nor could

7    it, submit any sworn declaration explaining its inability to file in this case a timely response to the

8    Complaint. After all before this Court, it had the time and resources to file an *ex parte* application

9    and a motion for a stay, and Chobani **rejected** Plaintiff's offer of an extension of time to respond

10    to the Complaint until January 20. Nam Decl. at ¶¶ 16-17.

11          The truth is that Chobani seeks *ex parte* relief from this Court, not because it faces **any**

12    hardship—let alone irreparable harm or immediate danger—but to strategically position itself in

13    the *Nacarino* case before the federal court. In the *Nacarino* case, Chobani faces a deadline of

14    January 12, 2023 to file a motion that the plaintiff representing a class of California consumers

15    cannot be awarded the equitable remedy of restitution in federal court under federal precedent,

16    namely, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). *See* Def. App. at 3:6-9.

17    Indeed, this case now before Your Honor was filed on behalf of the same class of California

18    consumers for restitution precisely because Chobani is challenging their right to obtain this relief

19    in federal court, whereas this Court can unquestionably award such relief. *See* Nam Decl. at ¶ 7.

20          In offering an extension of time for Chobani to respond to the Complaint, Plaintiff's

21    counsel made clear that she would only agree to an extension of time that falls before the plaintiff

22    in *Nacarino* would have to oppose Chobani's *Sonner* motion. *Id.* at ¶ 12. However, counsel for

23    Plaintiff made an error with respect to that date, misstating it as February 9 instead of January 26.

24    *Id.* at ¶ 13. Chobani took advantage of counsel's mistake to negotiate and file a stipulation that

25    extended Chobani's deadline to respond to the Complaint until after the opposition to Chobani's

26    motion in *Nacarino* is actually due. *Id.* at ¶¶ 13-15. As soon as counsel for Plaintiff discovered her

27    mistake, she informed Chobani's counsel on December 12 that Plaintiff would provide an

28

1   extension of time for Chobani to respond to the Complaint only until January 20 so that the plaintiff

2   in *Nacarino* would have Chobani's response to the Complaint before her opposition to Chobani's

3   motion in federal court is due on January 26. *Id.* at ¶ 16. The proposed date of January 20 would

4   have given Chobani more time than it would have if it were served through its registered agent and

5   falls weeks after the winter holidays. *Id.* Chobani's counsel nonetheless rejected this offer of

6   extension of time. *Id.* at ¶ 17 ("we cannot agree to your proposed date of January 20").

7   Chobani undoubtedly will file a demurrer to the Complaint in this case, making arguments

8   that it already lost before the federal court or arguments about equitable relief that are wholly

9   inapplicable to this case. With this *ex parte* application, Chobani is attempting to avoid laying bare

10  its true motive behind its *Sonner* motion to be filed in federal court. Chobani is not seeking a ruling

11  about the equitable powers of federal court but rather seeking to avoid being held accountable in

12  **any** court for **any** remedy for the millions of dollars Chobani unjustly reaped with its unlawful

13  practices.

14  Chobani's *ex parte* application for an extension of time to respond to Plaintiff's Complaint

15  until 30 days after the Court rules on Chobani's motion to stay should be denied. If the Court is

16  amenable to granting Chobani any extension of time, which it need not be, that extension should

17  be for no later than January 20, 2023, which was offered to but rejected by Chobani without valid

18  justification.

19  **FACTS**

20  On November 18, 2022, Plaintiff Gershzon filed the Complaint against Chobani on behalf

21  of himself and a class of California consumers. In his Complaint, Plaintiff Gershzon brought only

22  one cause of action for one relief. He alleged that Chobani's labelling of its Greek Yogurt Vanilla

23  Blended product (the "Product") violates the "unlawful" prong of California's Unfair Competition

24  Law ("UCL") by violating federal food labeling law and the California Sherman Food, Drug, and

25  Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), which adopts

26  all FDA regulations as state regulations. Plaintiff Gershzon sought only restitution.

27  Counsel for Plaintiff Gershzon is also counsel for the plaintiff and the same proposed class

28

of California consumers in *Nacarino*, pending in the United States District Court for the Northern District of California before the Honorable Edward M. Chen. The *Nacarino* plaintiff's operative complaint, the Third Amended Complaint ("TAC"), was filed on September 8, 2021. The TAC also brought only one cause of action, alleging that Chobani's labelling of the Product violates the "unlawful" prong of the UCL by violating federal food labeling law and the Sherman Law. However, the *Nacarino* plaintiff sought both injunctive relief for prospective harm and restitution for past harm. Chobani moved to dismiss the TAC. The district court denied Chobani's motion on February 4, 2022, and Chobani filed its answer to the TAC on March 14, 2022. The parties then commenced discovery, which is on-going. *See* Nam Decl. at ¶¶ 4-5.

On October 18, 2022, Chobani sought, and was granted, leave of the federal court to file a motion challenging the *Nacarino* plaintiff's ability to seek the remedy of equitable restitution under the UCL in federal court. The federal court adopted Chobani's proposed schedule for that motion and ordered that Chobani's motion is due on January 12, 2023; plaintiff's opposition is due on January 26, 2023, and Chobani's reply is due on February 9, 2023. *See* Nam Decl. at ¶ 6.

On December 1, 2022, the Clerk of the Court issued the summons in this case. *Id.* at ¶ 8. On the same day, counsel for Plaintiff Gershzon emailed counsel for Chobani, who appeared as counsel in the *Nacarino* case, attached a copy of the Summons and Complaint, and asked if counsel would accept service of those filings on behalf of Chobani. *Id.* at ¶ 9.

To be clear, Chobani is a U.S. company that is registered to do business in California. Service of the Complaint on Chobani through its registered agent in California for service of process would have been fast, simple, and for a nominal cost. The **only** reason counsel for Plaintiff Gershzon reached out to defense counsel in the *Nacarino* case was as a matter of professional courtesy. *Id.* at ¶ 10.

As the correspondence among counsel indicate, Chobani's counsel requested an extension of time until February 17, citing "upcoming deposition in *Nacarino* [completed on December 16], holidays, and travel schedules." *Id.* at ¶ 11; *see* also Exhibit 2 to Vetesi Decl., at 10-11.

In response, Plaintiff's counsel, in relevant part, stated:

---

PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION FOR EXTENSION OF TIME
CASE NO. CGC-22-603042
4

> We believe this case affects Chobani's proposed motion regarding the availability of equitable restitution in federal court in the Nacarino case, which is due on January 12. We would like Chobani to respond to the Gershzon complaint before our reply is due on February 9.

Nam Decl. at ¶ 12; Exhibit 2 to Vetesi Decl. at 10. In her email, Plaintiff's counsel made an error with respect to the February 9th date. Per Chobani's proposed schedule adopted by the district court, **Chobani's reply** is due on February 9, 2023 and **the plaintiff's opposition** is due on January 26, 2023. Nam Decl. at ¶ 13. On December 6, 2022, counsel for Chobani wrote in relevant part, "we do not understand why you need our response in *Gershzon* to respond to the *Sonner* motion before Judge Chen." *Id.* ¶ 14. Thus, counsel for Chobani understood that counsel for Plaintiff wanted Chobani's response to the Complaint in *Gershzon* before plaintiff in *Nacarino* responded to Chobani's *Sonner* motion, even she allegedly did not understand why. Chobani, however, never corrected the obvious mistake regarding the due date for the opposition and proceeded to negotiate and file a stipulation for an extension of time until February 4, 2023, after the due date for the plaintiff's opposition in *Nacarino* to respond to Chobani's *Sonner* motion. *Id.* ¶ 14; Exhibit 2 to Vetesi Decl. at 10.

As soon as Plaintiff's counsel discovered her mistake, she informed Chobani's counsel on December 12, 2022 that the extension of time would only be until January 20, so that the plaintiff in *Nacarino* would have Chobani's response to the Complaint before her opposition to Chobani's motion in federal court, due on January 26 not February 9. The proposed date of January 20 would have given Chobani more time than it would have if it were served through its registered agent and falls weeks after the winter holidays. Nam Decl. at ¶ 16. Counsel for Chobani nonetheless refused to agree to the proposed extension of time to respond to the Complaint, stating in relevant part: "We disagree that there is any basis for tying the extension to respond in this matter to the *Sonner* motion in *Nacarino*. But more importantly, we cannot agree to your proposed date of January 20." *Id.* at ¶ 17; Exhibit 2 to Vetesi Decl. at 7. *See also* Vetesi Decl. at ¶ 4 (. . . "Chobani does not agree that there is any basis for tying the extension to respond in this matter to the *Sonner* motion in

1    *Nacarino*.").[1]

2    On December 13, 2022, counsel for Plaintiff responded:

3    This is absurd. We will call the clerk and tell them the stip was filed in error.
     Then we will use a process server, and Chobani's answer will be due 30 days
4    from today.

5    It is bad form that you are trying to take advantage of my clear error regarding
     the time to oppose your motion.
6

7    We were trying to accommodate MoFo so that, first, it would be the counsel
     on this new case, and, second, so that an answer would not be due immediately
8    after the holidays.

9    I guess no good deed goes unpunished.

10   Nam Decl. at ¶ 18;  Exhibit 2 to Vetesi Decl. at 7. On December 13, 2022, Chobani's counsel

11   informed Plaintiff's counsel that Chobani no longer agrees to have counsel accept service of the

12   Complaint. Nam Decl. at ¶ 19;  Exhibit 2 to Vetesi Decl. at 7. Plaintiff served Chobani by personal

13   delivery of the Complaint to Chobani's registered agent. Chobani's time to respond is January 12,

14   2023. Nam Decl. at  ¶ 19; Vetesi Decl. at ¶ 6 ("Chobani's current deadline to answer or to otherwise

15   respond to the Complaint is January 12, 2023.").

16   The initial case management conference in this case is set for March 22, 2023. Plaintiff has

17   not served any discovery and has no immediate plans to serve any discovery in this case. Nam

18   Decl. at  ¶ 20.

19   **ARGUMENT**

20   Chobani has wholly failed to meet its burden for this *ex parte* application.

21   Chobani failed to submit the requisite factual support. California Rules of Court provides:

22   "An applicant must make an affirmative factual showing in a declaration containing competent

23   testimony based on personal knowledge of irreparable harm, immediate danger, or any other

24   statutory basis for granting relief ex parte." CRC 3.1202. Instead of making this affirmative factual

25   _____

26   [1] Chobani changed its position in its motion to stay, arguing in that motion: "Chobani's *Sonner*
     motion will necessarily implicate *Gershzon . . . .*" *See* Defendant Chobani LLC's Notice of Motion
27   and Motion to Stay Proceedings; Memorandum of Points and Authorities in Support Thereof
     ("Motion to Stay"), at 7:1-2.

28

1    showing in a declaration, Chobani only set forth the unsubstantiated statements in its memorandum

2    of law that it "will face undue burden and will waste substantial resources . . . if Chobani is forced

3    to brief a response to Plaintiff's Complaint in this case, only for the Motion to Stay to be granted."

4    Def. App. at 4:6-8. This is not sufficient legally and belied factually by Chobani's own

5    characterization of the Complaint as "identical" and "duplicative" of the operative complaint that

6    it already moved to dismiss then answered in *Nacarino*. Def. App. at 2, 4, 5.

7         Chobani brazenly claims that it is somehow seeking to "conserve judicial and party

8    resources" and "avoid unnecessary overlapping briefing on nearly identical issues," Def. App. at

9    4:11-13, when it is Chobani that is engaging in wholly unnecessary motion practice. The most

10   obvious way that Chobani can conserve resources and avoid overlapping briefing on nearly

11   identical issues is by timely answering the Complaint instead of filing a demurrer that either raises

12   the same arguments already rejected by the federal court in *Nacarino* or raises arguments regarding

13   the availability of equitable relief that is wholly inapplicable to this case that asserted only a UCL

14   claim for which no damages are statutorily available.

15        Chobani was served a courtesy copy of the Summons and Complaint on December 2, 2022

16   and personally served with the Summons and Complaint on  December 13, 2022. Chobani has

17   more than sufficient time and resources to respond to the Complaint by January 12, 2023, and

18   Chobani does not contend otherwise. Certainly, if Chobani had the time and resources to make this

19   application and its Motion to Stay on January 4, 2023, then it can respond to the Complaint by

20   January 12. Accordingly, Chobani has not shown good cause for any extension of time and

21   certainly not for an extension until 30 days after the resolution of its motion to stay.

22        Chobani's motion for a stay is merely a strategic vehicle to justify this application for an

23   extension of time. There is nothing to stay. Plaintiff has not served any discovery in this case and

24   has no immediate plans to serve discovery in this case. Nam Decl. at ¶ 20. Chobani tellingly never

25   discussed or requested a stay with Plaintiff prior to filings its Motion to Stay. Once Chobani

26   responds to his Complaint, Chobani's Motion to Stay may very well be obviated because the

27   parties may be able to agree to a stay or coordination of discovery. *Id.* at ¶ 21. Of course, how

28

1    Chobani responds to the Complaint, either by answering the Complaint or filing a demurrer, affects

2    if and how the two cases can be coordinated to best conserve the resources of the parties and the

3    courts. Chobani's motion to stay is a transparent effort to bootstrap this application for an extension

4    of time to respond to the Complaint until after Chobani briefs its *Sonner* motion in federal court.

5         Chobani's contention that "Plaintiff will suffer no prejudice as a result of this extension,"

6    Def. App. at 2:16, is patently false. The class of California consumers whom Plaintiff Gershzon

7    and Plaintiff Nacarino seek to represent absolutely will be prejudiced by Chobani's attempt to

8    avoid responding to the Complaint and take positions in this case that contradict its position in

9    *Nacarino*. Chobani argues that "the potential for unseemly conflict is significant." Def. Mot. at

10   2:12-13. This is true for Chobani, not the courts. Chobani will reveal in its response to the

11   Complaint what surely will be "unseemly conflict" between its position before this Court and its

12   position in federal court.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CONCLUSION</u>

2    Chobani's *ex parte* application for an extension of time to respond to Plaintiff's Complaint

3  until 30 days after the Court rules on Chobani's motion to stay should be denied.

4

Respectfully submitted,

5
Date: January 9, 2023

6    **REESE LLP**

7

8    By: _____

9    _____

10   Sue J. Nam (State Bar No. 206729)
     *snam@reesellp.com*

10   Michael R. Reese (State Bar No. 206773)

11   *mreese@reesellp.com*
     100 West 93rd Street, 16th Floor

12   New York, New York 10025
     Telephone: (212) 643-0500

13   Facsimile: (212) 253-4272

14
     **REESE LLP**

15   George V. Granade (Cal. State Bar No. 316050)
     *ggranade@reesellp.com*

16   8484 Wilshire Boulevard, Suite 515
     Los Angeles, California 90211

17   Telephone: (310) 393-0070

18
     *Counsel for Plaintiff and the Proposed Class*

19

20

21

22

23

24

25

26

27

28

**REESE LLP**
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MIKHAIL GERSHZON, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br>vs.<br><br>CHOBANI LLC,<br><br>　　　　　Defendant. | Case No. CGC-22-603042<br><br>**DECLARATION OF SUE J. NAM IN OPPOSITION TO DEFENDANT CHOBANI LLC'S *EX PARTE* APPLICATION FOR EXTENSION OF TIME AND IN OPPOSITION TO CHOBANI LLC'S MOTION TO STAY**<br><br>Dept. 613<br>Judge: Hon. Andrew Y. S. Cheng<br>Date Action Filed: Nov. 18, 2022 |

I, SUE J. NAM, declare as follows:

1.    I am a member of Reese LLP, counsel for plaintiff Mikhail Gershzon ("Plaintiff") and the proposed class in the above-captioned action. I submit this declaration in opposition to the ex parte application of defendant Chobani LLC ("Chobani') for an extension of time and in opposition to Chobani's motion for stay, both filed in this action on January 4, 2023.

2.    The facts set forth in this declaration are based upon my personal knowledge, and I would competently testify to them if called upon to do so.

3.    On November 18, 2022, Plaintiff Gershzon filed the Complaint against Chobani on behalf of himself and a class of California consumers. In his Complaint, Plaintiff Gershzon brought only one cause of action for one relief. He alleged that Chobani's labelling of its Greek Yogurt Vanilla Blended product (the "Product") violates the "unlawful" prong of California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200, by violating federal food labeling law and the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), which adopts all FDA regulations as state regulations. Plaintiff Gershzon sought only restitution.

4.    Reese LLP, counsel for Plaintiff Gershzon, is also counsel for the plaintiff Elena Nacarino and the same proposed class of California consumers in *Nacarino v. Chobani, LLC*, 20-cv-07437-EMC (N.D. Cal.), pending in the United States District Court for the Northern District of California before the Honorable Edward M. Chen. The *Nacarino* plaintiff's operative complaint, the Third Amended Complaint ("TAC"), was filed on September 8, 2021. Like the Complaint in this matter, the TAC also brought only one cause of action, alleging that Chobani's labelling of the Product violates the "unlawful" prong of the UCL by violating federal food labeling law and the Sherman Law. However, the *Nacarino* plaintiff sought both injunctive relief for prospective harm and restitution for past harm.

5.    On February 4, 2022, the district court denied Chobani's motion to dismiss the TAC in *Nacarino*, and Chobani filed its answer to the TAC on March 14, 2022. The parties then commenced discovery, which is on-going.

6.    On October 18, 2022, Chobani sought, and was granted, leave of the federal court to file a motion challenging the *Nacarino* plaintiff's ability to seek the remedy of equitable restitution under the UCL in federal court under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). The federal court adopted Chobani's proposed schedule for that *Sonner* motion and ordered that Chobani's motion is due on January 12, 2023; plaintiff's opposition is due on January 26, 2023, and Chobani's reply is due on February 9, 2023.

7.    The reason Plaintiff Gershzon filed his action on behalf of the same class of California consumers for the same UCL claim in the *Nacarino* case is precisely because Chobani challenges their right to obtain restitution under federal equitable principles in federal court. Gershzon does not and cannot seek damages here under his UCL claim, the only cause of action he asserted in the Complaint.

8.    On December 1, 2022, the Clerk of the Court issued the Summons in this case.

9.    On the same day, I emailed counsel for Chobani, who appeared as counsel in the *Nacarino* case, attached a copy of the Summons and Complaint, and asked if counsel would accept service of those filings on behalf of Chobani. A copy of this correspondence is attached as Exhibit 2 to Claudia M. Vetesi in Support of Defendant Chobani LLC's *Ex Parte* Application for Extension of Time ("Vetesi Decl."), at 11.

10.    To be clear, Chobani is a U.S. company that is registered to do business in the state of California. Service of the Complaint on Chobani through its registered agent in California for service of process would be fast, simple, and for a nominal cost. The **only** reason I reached out to defense counsel in the *Nacarino* case was as a matter of professional courtesy, **not** because serving Chobani in person presented any difficulty.

11.    Chobani's counsel requested an extension of time until February 17, citing "upcoming deposition in *Nacarino* [completed on December 16], holidays, and travel schedules." Exhibit 2 to Vetesi Decl. at 10-11.

12.    In response, I stated by email dated December 5, in relevant part:

> We believe this case affects Chobani's proposed motion regarding the availability of equitable restitution in federal court in the Nacarino case, which is due on January

12. We would like Chobani to respond to the Gershzon complaint before our reply is due on February 9.

*Id.* at 10.

13.     In my email, I made an error with respect to the February 9th date. Per Chobani's proposed schedule for its *Sonner* motion, adopted by the district court, **Chobani's reply** is due on February 9, 2023 and **the plaintiff's opposition** is due on January 26, 2023.

14.     On December 6, 2022, counsel for Chobani wrote in relevant part, "we do not understand why you need our response in *Gershzon* to respond to the *Sonner* motion before Judge Chen." *Id.* at 10.

15.     Counsel for Chobani proceeded to negotiate and file a stipulation for an extension of time until February 4, 2023, after the plaintiff's opposition is due. *Id.* at 9.

16.     As soon as I discovered my mistake, I informed Chobani's counsel on December 12, 2022, that the extension of time could only be until January 20, so that the plaintiff in *Nacarino* would have Chobani's response to the Complaint before her opposition to Chobani's motion in federal court, due on January 26, not February 9. *Id.* at 8. The proposed date of January 20 would have given Chobani more time than it would have if it were served through its registered agent and falls weeks after the winter holidays.

17.     By email dated December 12, counsel for Chobani nonetheless refused to agree to my proposed extension of time to answer. Counsel for Chobani stated in relevant part, "We disagree that there is any basis for tying the extension to respond in this matter to the *Sonner* motion in *Nacarino*. But more importantly, we cannot agree to your proposed date of January 20." *Id.* at 7.

18.     By email on December 13, 2022, I responded:

This is absurd. We will call the clerk and tell them the stip was filed in error. Then we will use a process server, and Chobani's answer will be due 30 days from today.

It is bad form that you are trying to take advantage of my clear error regarding the time to oppose your motion.

We were trying to accommodate MoFo so that, first, it would be the counsel on this new case, and, second, so that an answer would not be due immediately after the

holidays.

I guess no good deed goes unpunished.

*Id.* at 7.

19.     By email on December 13, 2022, Chobani's counsel stated, "we no longer agree to accept service of the complaint." *Id.* at 7. That same day, Plaintiff easily served Chobani by personal delivery of the Complaint to its registered agent. Chobani's time to respond is January 12, 2023.

20.     The initial case management conference in this case is set for March 22, 2023. Plaintiff has not served any discovery in this case and has no immediate plans to serve any discovery in this case.

21.     Counsel for Chobani never discussed with me or any other counsel representing Plaintiff any coordination of this case and the *Nacarino* case before filing its motion to stay. When Chobani responds to the Complaint, counsel for Plaintiff would be happy to discuss a stay of discovery or coordination of discovery between the two cases with the goal of conserving the resources of the parties and the courts.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated: January 9, 2023

_____
Sue J. Nam

Declaration of Sue J. Nam In Opposition to Defendant's
Ex Parte Application and Motion to Stay
*Gershzon v. Chobani LLC*, Case No. CGC-22-603042
4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**F I L E D**

San Francisco County Superior Court

JAN 1 1 2023

CLERK OF THE COURT

BY: _____

Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 613

MIKHAIL GERSHZON, on behalf of himself
and all others similarly situated,

                    Plaintiff,

    vs.

CHOBANI LLC,

                    Defendant.

Case No. CGC-22-603042

ORDER DENYING DEFENDANT CHOBANI
LLC'S *EX PARTE* APPLICATION FOR
EXTENSION OF TIME

       On January 4, 2023, Defendant filed an *ex parte* application for extension of time to respond to Plaintiff's complaint.

       On January 9, 2023, Plaintiff filed his opposition.

       Defendant's response is due on January 12, 2023. (Decl. of Claudia M. Vetesi ISO Defendant Chobani LLC's *Ex Parte* Application for Extension of Time, ¶ 6; Decl. of Sue J. Nam in Opposition to Chobani LLC's *Ex Parte* Application for Extension of Time and In Opposition to Chobani LLC's Motion to Stay, ¶ 19.)

       The Court determines that this matter can be determined without hearing and **DENIES** Defendant's *ex parte* application.

       Defendant requests "an extension extending the deadline for Chobani to answer or otherwise

1

response to Plaintiff's Complaint until 30 days after the Court has ruled on Chobani's Motion to Stay, which Chobani filed concurrently with this Ex Parte Application." (Ex Parte App. at 1.) Defendant argues that if its time to respond is not extended until after the Court has ruled on its motion to stay, "Chobani will have to waste substantial resources to defend against another identical lawsuit and will be severely prejudiced." (*Id.* at 2.)

Defendant has not shown "irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." (California Rules of Court, rule 3.1202, subd. (c).) Moreover, Defendant's arguments are inconsistent as Defendant argues both that it will be "severely prejudiced" and will "waste substantial resources" by having to respond to the Complaint and the "*Gershzon* complaint is a near verbatim recitation" of the remaining allegations in *Nacarino v. Chobani LLC*, No. 3:20-cv-07437 (N.D. Cal.). (Ex Parte App. at 2-3.)

Defendant must respond to the Complaint by **January 12, 2023**.


IT IS SO ORDERED.


Dated:  January 11, 2023

_____
ANDREW Y.S. CHENG
Judge of the Superior Court

*Gershzon v. Chobani*, CGC-22-603042 Order Denying Defendant's Ex Parte Application

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.251)

I, Ericka Larnauti, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On January 11, 2023, I electronically served the attached document via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:  January 11, 2023

Mark Culkins, Interim Clerk

By: _____

Ericka Larnauti, Deputy Clerk

1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482, U.S.A.
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Attorneys for Defendant
   CHOBANI LLC

7

               SUPERIOR COURT OF THE STATE OF CALIFORNIA

8

                        COUNTY OF SAN FRANCISCO

9

10 MIKHAIL GERSHZON, on behalf of             CASE NO. CGC-22-603042
   himself and all others similarly situated,
11
                                              **DEFENDANT CHOBANI LLC'S**
12             Plaintiff,                      **ANSWER TO UNVERIFIED**
                                              **COMPLAINT**
13        v.
                                              Dept: 613
14 CHOBANI LLC,                               Judge: Hon. Andrew Y. S. Cheng

15             Defendant.                     Date Action Filed: November 18, 2022

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Defendant Chobani LLC ("Chobani") hereby files this Answer to the unverified

2   Complaint ("Complaint") for violation of California's Unfair Competition Law, Cal. Bus. & Prof.

3   Code § 17200 et seq. filed by plaintiff Mikhail Gershzon ("Gershzon" or "Plaintiff").

## GENERAL DENIAL

5   Pursuant to California Code of Civil Procedure section 431.30(d), Chobani generally

6   denies each and every allegation in the Complaint and further denies that Plaintiff is entitled to

7   any relief of any kind in any amount.

## AFFIRMATIVE DEFENSES

9   Chobani has not completed its investigation of the facts of this case, has not completed

10  discovery in this matter, and has not completed preparation for trial.  The affirmative defenses

11  asserted herein are based on Chobani's knowledge, information, and belief at this time, and

12  Chobani specifically reserves the right to modify, amend, or supplement any affirmative defenses

13  contained herein at any time.  Chobani reserves the right to assert additional defenses as

14  information is gathered through discovery and investigation.  In asserting these defenses, Chobani

15  does not assume the burden of proof or persuasion on any matters as to which Plaintiff has the

16  burden of proof or persuasion.

## FIRST AFFIRMATIVE DEFENSE

### (Statute of Limitations)

19  Some or all of the claims of putative class members are time-barred to the extent their

20  claims arose before the applicable statute of limitations periods from the filing of the Complaint.

## SECOND AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

23  The Complaint fails to state a claim upon which relief may be granted.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Standing)

26  Plaintiff and members of the putative class lack standing because they have not suffered

27  any cognizable injury-in-fact.

28

1

1

**FOURTH AFFIRMATIVE DEFENSE**

2

(Adequate Remedy at Law)

3    The claims are barred, in whole or in part, insofar as they seek equitable relief for claims

4    for which there is an adequate legal remedy.

5

**FIFTH AFFIRMATIVE DEFENSE**

6

(Satisfaction of Guarantees, Representations, and/or Warranties)

7    If any warranty, guarantee, or other representation with respect to any of the products

8    involved in this case was made by Chobani, then each such warranty, guarantee, or representation

9    was fully satisfied.

10

**SIXTH AFFIRMATIVE DEFENSE**

11

(Express Preemption)

12    The claims should be dismissed by reason of express preemption by the Food Drug and

13    Cosmetic Act, 21 U.S.C. Sec. 341, *et seq*.

14

**SEVENTH AFFIRMATIVE DEFENSE**

15

(Implied Preemption)

16    The claims should be dismissed by reason of implied preemption by the Food Drug and

17    Cosmetic Act, 21 U.S.C. Sec. 341, *et seq.*

18

**EIGHTH AFFIRMATIVE DEFENSE**

19

(Field Preemption)

20    The claims should be dismissed by reason of field preemption by the Food Drug and

21    Cosmetic Act, 21 U.S.C. Sec. 341, *et seq.*

22

**NINTH AFFIRMATIVE DEFENSE**

23

(Abstention)

24    The claims should be dismissed because the Court should abstain from proceeding since

25    the labeling issues raised by the action are within the jurisdiction of the United States Food and

26    Drug Administration.

27

**TENTH AFFIRMATIVE DEFENSE**

28

(Compliance)

2

The claims should be dismissed because the labels at issue fully comply with the United States Food and Drug Administration's regulations, standards, and policies.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Primary Jurisdiction)

The claims should be dismissed pursuant to the doctrine of primary jurisdiction because Plaintiff's claims raise issues that should be addressed in the first instance by the United States Food and Drug Administration.

## TWELFTH AFFIRMATIVE DEFENSE

### (Res Judicata and Collateral Estoppel)

The claims are barred by the doctrines of *res judicata* and collateral estoppel, including but not limited to any judgment in the matter *Nacarino v. Chobani LLC*, No. 20-cv-7437-EMC (AGT) (N.D. Cal.).

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

The claims are barred in whole or in part by the doctrine of waiver.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

The claims are barred in whole or in part by the doctrine of unclean hands.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Laches)

The claims are barred in whole or in part by the doctrine of laches.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Additional Affirmative Defenses)

Defendant hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves the right to amend its Answer to assert such defenses.

DEFENDANT'S ANSWER TO UNVERIFIED COMPLAINT
CASE NO. CGC-22-603042

**PRAYER FOR RELIEF**

WHEREFORE, Chobani prays for the following relief:

1.      Dismissing the Complaint with prejudice;

2.      That judgment on the Complaint be entered in favor of Chobani;

3.      That this Court finds that this suit cannot be maintained as a class action;

4.      That this Court denies Plaintiff or the members of the purported class relief of any kind;

5.      That Defendant be awarded its costs incurred, including reasonable attorneys' fees; and

6.      For such other or further relief as this Court may deem just and equitable.


Dated:  January 12, 2023                    MORRISON & FOERSTER LLP


                                            By: _____
                                                 Claudia M. Vetesi

                                                 *Attorneys for Defendant*
                                                 *Chobani LLC*

DEFENDANT'S ANSWER TO UNVERIFIED COMPLAINT
CASE NO. CGC-22-603042

1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482, U.S.A.
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Attorneys for Defendant
   CHOBANI LLC

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO

10 MIKHAIL GERSHZON, on behalf of            Case No. CGC-22-603042

11 himself and all others similarly situated,   **PROOF OF SERVICE**

12                      Plaintiff,            Dept:  613
                                             Judge:  Hon. Andrew Y.S. Cheng
13        v.
                                             Date Action Filed:  November 18, 2022
14 CHOBANI LLC,

15                      Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

1    I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
2  is 425 Market Street, San Francisco, CA 94105.  I am not a party to the within cause, and I am
   over the age of eighteen years.

3    I further declare that on January 12, 2023, I served a copy of:

4    **DEFENDANT CHOBANI LLC'S ANSWER TO UNVERIFIED COMPLAINT**

5

6    ☒    **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC 2.251]** by
         electronically mailing a true and correct copy through Morrison & Foerster LLP's
7        electronic mail system from cmiddleman@mofo.com to the email address(es) set
         forth below, or as stated on the attached service list per agreement in accordance
8        with Code of Civil Procedure section 1010.6 and CRC Rule 2.251.

| | |
|---|---|
| 9  Sue J. Nam<br>Michael R. Reese<br>10 REESE LLP<br>100 West 93rd Street, 16th Floor<br>11 New York, NY 10025<br>snam@reesellp.com<br>12 mreese@reesellp.com | *Attorneys for Plaintiff* |
| 13 George V. Granade<br>REESE LLP<br>14 8484 Wilshire Boulevard, Suite 515<br>Los Angeles, CA 90211<br>15 ggranade@reesellp.com | *Attorneys for Plaintiff* |

16

17

18    I declare under penalty of perjury under the laws of the State of California that the
   foregoing is true and correct.

19    Executed at Honolulu, Hawaii, this 12th day of January, 2023.

20

21 _____          _____
         Caitlin Middleman                          *Caitlin K Middleman*
22           (type)                                      (signature)

23

24

25

26

27

28

1

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

2

3

4

5

6

7

*Counsel for Plaintiff and the Proposed Class*

8

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9

## FOR THE COUNTY OF SAN FRANCISCO

10

11

MIKHAIL GERSHZON, on behalf of himself and all others similarly situated,

Case No. CGC-22-603042

12

Plaintiff,

**PLAINTIFF'S OPPOSITION TO DEFENDANT CHOBANI LLC'S MOTION TO STAY PROCEEDINGS**

13

vs.

14

CHOBANI LLC,

15

Defendant.

Dept. 613
Judge: Hon. Andrew Y. S. Cheng
Date Action Filed: Nov. 18, 2022

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiff Mikhail Gershzon ("Plaintiff") opposes the motion filed by Chobani LLC ("Defendant" or "Chobani") to stay proceedings in this action pending resolution of *Nacarino v. Chobani, LLC*, 20-cv-07437-EMC (N.D. Cal.), before the Honorable Edward M. Chen in the United States District Court for the Northern District of California. *See* Defendant Chobani LLC's Notice of Motion and Motion to Stay Proceedings; Memorandum of Points and Authorities in Support Thereof (the "Motion" or "Def. Mot.").

This Motion is wholly premature. There is nothing to stay in this case. The initial case management conference is not until March 22, 2023. Plaintiff has not served any discovery and has no immediate plans to serve any discovery in this case. *See* Declaration of Sue J. Nam in Opposition to Defendant Chobani LLC's *Ex Parte* Application for Extension of Time and in Opposition to Chobani LLC's Motion to Stay ("Nam Decl."), at ¶ 20. Indeed, now that Chobani has answered the Complaint pursuant to this Court's Order Denying Defendant Chobani LLC's *Ex Parte* Application for Extension of Time, dated January 11, 2022 (the "Order"), the parties can discuss how best to coordinate discovery in this case with *Nacarino*. Tellingly, Chobani never proposed a stay or other coordination of this case with *Nacarino* prior to its filing this Motion. *Id.* at ¶ 21.

Chobani's Motion should be denied.

**FACTS**

The bulk of the facts here is not in dispute. *See* Def. Mot. at 2-8; Nam Decl. at ¶¶ 3-20 Counsel for Plaintiff Gershzon is also counsel for the plaintiff Elena Nacarino and essentially the same proposed class of California consumers in *Nacarino*. The plaintiff in *Nacarino* initially brought claims with respect to Chobani's labelling of its Greek Yogurt Vanilla Blended product (the "Product") for damages under California's False Advertising Law ("FAL") and California's Consumer Legal Remedies Act ("CLRA"), as well as equitable relief pursuant to California's Unfair Competition Law ("UCL"). Judge Chen dismissed the FAL, CLRA, and UCL claim under the unfair and fraudulent prongs for failure to state a claim. However, Judge Chen refused

1    to dismiss the plaintiff's claim that Chobani violated the unlawful prong of the UCL by violating

2    federal food labeling law and the California Sherman Food, Drug, and Cosmetic Law, Cal.

3    Health & Saf. Code section 109875, et seq. ("Sherman Law"), which adopts all FDA regulations

4    as state regulations.

5        On September 8, 2021, the plaintiff filed the operative complaint in *Nacarino*, the Third

6    Amended Complaint ("TAC"). The TAC alleged only one cause of action for violation of the

7    unlawful prong of the UCL and sought the equitable reliefs of injunctive relief for prospective

8    harm and restitution for past harm. Chobani moved to dismiss the TAC. The district court denied

9    Chobani's motion on February 4, 2022, and Chobani filed its answer to the TAC on March 14,

10    2022. The parties then commenced discovery, which is on-going.

11        On October 18, 2022, Chobani sought, and was granted, leave of the federal court to file

12    a motion challenging the *Nacarino* plaintiff's ability to seek the remedy of equitable restitution

13    in federal court under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971

14    F.3d 834 (9th Cir. 2020). Def. Mot. at 1, 6-7. The federal court adopted Chobani's proposed

15    schedule for that motion and ordered that Chobani's motion is due on January 12, 2023;

16    plaintiff's opposition is due on January 26, 2023, and Chobani's reply is due on February 9,

17    2023. *See* Nam Decl. at ¶ 6.

18        On November 18, 2022, Plaintiff Gershzon filed the Complaint against Chobani on

19    behalf of himself and a class of California consumers. In his Complaint, Plaintiff Gershzon

20    brought only one cause of action. He alleged that Chobani's labelling of the Product violates the

21    unlawful prong of the UCL by violating federal food labeling law and the Sherman Law. He

22    sought only one form of relief—restitution. Plaintiff Gershzon does not, and cannot, seek

23    damages for his UCL claim. *See* California Business & Professions Code § 17203.

24        The filing of this Complaint is hardly "gamesmanship" or "forum shopping" as Chobani

25    contends. Def. Mot. at 2:2-4. This case before Your Honor was filed on behalf of the same class

26    of California consumers for restitution precisely because Chobani is challenging their right to

27    obtain this relief in federal court, whereas this Court can unquestionably award restitution in this

28

1   case for a violation of the UCL, the sole cause of action asserted here. *See* Nam Decl. at ¶ 7.

2   With the filing of his Complaint, Plaintiff sought to substantively protect the right of consumers

3   to seek restitution should he and the putative class prevail on the merits, the very remedy that

4   Chobani is attacking in federal court.

5          Chobani previously made every effort to avoid responding to the Complaint in this case

6   before the *Nacarino* plaintiff must file her opposition to its *Sonner* motion. After rejecting an

7   offer of extension of time until January 20 offered by Plaintiff's counsel, Chobani filed an *ex*

8   *parte* application on January 4, 2023 for an extension of time until after this Motion is decided.

9   In the context of an extension of its time to respond to the Complaint, Chobani repeatedly

10  suggested that its response to the *Gershzon* complaint is unrelated to the *Sonner* motion that it

11  will file in *Nacarino*. Chobani's counsel claimed, "we do not understand why you need our

12  response in *Gershzon* to respond to the *Sonner* motion before Judge Chen." Nam Decl. at ¶ 14.

13  Defense counsel also stated, "We disagree that there is any basis for tying the extension to the

14  respond in this matter to the *Sonner* motion in *Nacarino*." Nam Decl. at ¶ 17. *See also*

15  Declaration of Claudia M. Vetesi in Support of Defendant Chobani LLC's *Ex Parte* Application

16  for Extension of Time dated January 4, 2023 ("Vetesi Decl. for *Ex Parte* Application") at ¶ 4

17  (". . . Chobani does not agree that there is any basis for tying the extension to respond in this

18  matter to the *Sonner* motion in *Nacarino*.").

19         However, in this Motion, Chobani has flipped-flopped. It now argues: "Chobani's *Sonner*

20  motion will necessarily implicate *Gershzon* . . . ." *See* Def. Mot. at 7:1-2.

21         The initial case management conference in this case is set for March 22, 2023. Plaintiff

22  has not served any discovery and has no immediate plans to serve any discovery in this case.

23  Nam Decl. at  ¶ 20.

24         Counsel for Chobani never discussed with counsel for Plaintiff any coordination of this

25  case and the *Nacarino* case before filing its motion to stay. Now that Chobani has answered the

26  Complaint pursuant to Your Honor's Order, counsel for Plaintiff would be happy to discuss a

27  stay of discovery or coordination of discovery between the two cases to best conserve the

28

1    resources of the parties and the courts. Nam Decl. at ¶ 21. Chobani's Motion is premature given

2    that the Motion can be obviated with the parties' own coordination now that Chobani has

3    answered the Complaint.

4                                    **ARGUMENT**

5            All of the factors cited by Chobani in its Motion, Def. Mot. at 9, weigh against a stay in

6    this case.

7            First, the filing of this case was not designed "solely to harass an adverse party." To the

8    contrary, this case was filed because Chobani is actively seeking in federal court to prevent the

9    class of consumers Plaintiff seeks to represent from being awarded the equitable remedy of

10   restitution. Nam Decl. at ¶ 7. This Court unquestionably can award restitution in this case

11   because the only cause of action asserted here is under the UCL, which only permits equitable

12   relief. *See* California Business & Professions Code § 17203.

13           Second, there is no risk of "unseemly conflicts with courts of other jurisdiction." Def.

14   Mot. at 11-12. Plaintiff has not served any discovery in this case and has no immediate plans to

15   serve discovery in this case. Chobani answered the Complaint on January 13, 2023 without filing

16   a demurrer. The parties now can proceed with coordinating the two cases to reduce or eliminate

17   any conflicts. The only risk of "unseemly conflicts" is for Chobani, not the courts. Chobani

18   already revealed conflicting positions before this Court. *Compare* Vetesi Decl. for *Ex Parte*

19   Application at ¶ 4 (". . . Chobani does not agree that there is any basis for tying the extension to

20   respond in this matter to the *Sonner* motion in *Nacarino*") *with* Def. Mot. at 7:1-2 ("Chobani's

21   *Sonner* motion will necessarily implicate *Gershzon* . . . ."). *See also* Order at 2 ("Moreover,

22   Defendant's arguments are inconsistent . . . .").

23           With respect to the third and fourth factors, Plaintiff agrees that many issues can be

24   addressed and resolved in the first instance by the U.S. District Court for the Northern District of

25   California before whom *Nacarino* is pending. Given Chobani's position about the similarity of

26   the allegations between the Third Amended Complaint in *Nacarino* and the Complaint filed here,

27   Def. Mot. at 3-5, and the fact that Judge Chen denied Chobani's motion to dismiss in *Nacarino*,

28

---

1    Chobani declined to file a demurrer and instead answered the Complaint.

2        However, any decision that Judge Chen may issue on Chobani's *Sonner* motion will **not**

3    impact the restitution that this Plaintiff or the class of California consumers he seeks to represent

4    in this case, and Chobani's argument otherwise is patently frivolous. *Sonner* is about equitable

5    remedies in **federal court**. Whether a federal court can grant equitable remedies is not a merits

6    question but rather a "threshold jurisdictional question." *Sonner*, 971 F.3d 839. *See also Guthrie*

7    *v. Transamerica Life Insurance Company*, 561 F.Supp.3d 869, 880 (N.D. Cal. 2021) ("A

8    dismissal for lack of equitable jurisdiction, moreover, is not a dismissal on the merits.

9    Accordingly, though the issue is not squarely before me, it seems that plaintiffs could simply

10   refile their claims in state court if they were dismissed in federal court on this ground.") (internal

11   citations omitted).

12       In addition, the **only** cause of action asserted in the Complaint is violation of the unlawful

13   prong of the UCL. Plaintiff in this case never asserted a claim for damages or made allegations

14   that could support a cause of action for damages. Accordingly, Chobani is simply wrong in

15   arguing that its *Sonner* motion before the *Nacarino* court "may resolve or provide guidance as to

16   whether Mr. Gershzon can pursue his claims for equitable relief where he has an adequate

17   remedy at law." Def. Mot. at 7:9-10. There is no question here whether Plaintiff has an adequate

18   remedy at law. He does **not** because the UCL, the only cause of action brought by Plaintiff,

19   allows only for equitable relief and does not allow for damages. *See* California Business &

20   Professions Code § 17203.

21                              **<u>CONCLUSION</u>**

22       There is nothing to stay in his case at this juncture. Plaintiff has not served any discovery

23   and has no immediate plans to serve any discovery in this case. The parties have not had an

24   opportunity to discuss coordination of this case with *Nacarino*. Chobani's Motion to Stay should

25   be denied as premature and likely to be obviated.

26

27

28

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS

1

2   Date: January 13, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**REESE LLP**

By: _____

Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

*Counsel for Plaintiff and the Proposed Class*

**REESE LLP**
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

### SUPERIOR COURT FOR THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MIKHAIL GERSHZON, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br>vs.<br><br>CHOBANI LLC,<br><br>    Defendant. | Case No. CGC-22-603042<br><br>**DECLARATION OF SUE J. NAM IN OPPOSITION TO DEFENDANT CHOBANI LLC'S *EX PARTE* APPLICATION FOR EXTENSION OF TIME AND IN OPPOSITION TO CHOBANI LLC'S MOTION TO STAY**<br><br>Dept. 613<br>Judge: Hon. Andrew Y. S. Cheng<br>Date Action Filed: Nov. 18, 2022 |

1    I, SUE J. NAM, declare as follows:

2        1.      I am a member of Reese LLP, counsel for plaintiff Mikhail Gershzon ("Plaintiff")

3    and the proposed class in the above-captioned action. I submit this declaration in opposition to the

4    ex parte application of defendant Chobani LLC ("Chobani') for an extension of time and in

5    opposition to Chobani's motion for stay, both filed in this action on January 4, 2023.

6        2.      The facts set forth in this declaration are based upon my personal knowledge, and

7    I would competently testify to them if called upon to do so.

8        3.      On November 18, 2022, Plaintiff Gershzon filed the Complaint against Chobani on

9    behalf of himself and a class of California consumers. In his Complaint, Plaintiff Gershzon brought

10   only one cause of action for one relief. He alleged that Chobani's labelling of its Greek Yogurt

11   Vanilla Blended product (the "Product") violates the "unlawful" prong of California's Unfair

12   Competition Law ("UCL"), California Business & Professions Code section 17200, by violating

13   federal food labeling law and the California Sherman Food, Drug, and Cosmetic Law, Cal. Health

14   & Saf. Code section 109875, et seq. ("Sherman Law"), which adopts all FDA regulations as state

15   regulations. Plaintiff Gershzon sought only restitution.

16       4.      Reese LLP, counsel for Plaintiff Gershzon, is also counsel for the plaintiff Elena

17   Nacarino and the same proposed class of California consumers in *Nacarino v. Chobani, LLC*, 20-

18   cv-07437-EMC (N.D. Cal.), pending in the United States District Court for the Northern District

19   of California before the Honorable Edward M. Chen. The *Nacarino* plaintiff's operative complaint,

20   the Third Amended Complaint ("TAC"), was filed on September 8, 2021. Like the Complaint in

21   this matter, the TAC also brought only one cause of action, alleging that Chobani's labelling of

22   the Product violates the "unlawful" prong of the UCL by violating federal food labeling law and

23   the Sherman Law. However, the *Nacarino* plaintiff sought both injunctive relief for prospective

24   harm and restitution for past harm.

25       5.      On February 4, 2022, the district court denied Chobani's motion to dismiss the TAC

26   in *Nacarino*, and Chobani filed its answer to the TAC on March 14, 2022. The parties then

27   commenced discovery, which is on-going.

28

6.      On October 18, 2022, Chobani sought, and was granted, leave of the federal court to file a motion challenging the *Nacarino* plaintiff's ability to seek the remedy of equitable restitution under the UCL in federal court under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). The federal court adopted Chobani's proposed schedule for that *Sonner* motion and ordered that Chobani's motion is due on January 12, 2023; plaintiff's opposition is due on January 26, 2023, and Chobani's reply is due on February 9, 2023.

7.      The reason Plaintiff Gershzon filed his action on behalf of the same class of California consumers for the same UCL claim in the *Nacarino* case is precisely because Chobani challenges their right to obtain restitution under federal equitable principles in federal court. Gershzon does not and cannot seek damages here under his UCL claim, the only cause of action he asserted in the Complaint.

8.      On December 1, 2022, the Clerk of the Court issued the Summons in this case.

9.      On the same day, I emailed counsel for Chobani, who appeared as counsel in the *Nacarino* case, attached a copy of the Summons and Complaint, and asked if counsel would accept service of those filings on behalf of Chobani. A copy of this correspondence is attached as Exhibit 2 to Claudia M. Vetesi in Support of Defendant Chobani LLC's *Ex Parte* Application for Extension of Time ("Vetesi Decl."), at 11.

10.      To be clear, Chobani is a U.S. company that is registered to do business in the state of California. Service of the Complaint on Chobani through its registered agent in California for service of process would be fast, simple, and for a nominal cost. The **only** reason I reached out to defense counsel in the *Nacarino* case was as a matter of professional courtesy, **not** because serving Chobani in person presented any difficulty.

11.      Chobani's counsel requested an extension of time until February 17, citing "upcoming deposition in *Nacarino* [completed on December 16], holidays, and travel schedules." Exhibit 2 to Vetesi Decl. at 10-11.

12.      In response, I stated by email dated December 5, in relevant part:

> We believe this case affects Chobani's proposed motion regarding the availability of equitable restitution in federal court in the Nacarino case, which is due on January

1
2
12. We would like Chobani to respond to the Gershzon complaint before our reply is due on February 9.

3
*Id.* at 10.

4
13. In my email, I made an error with respect to the February 9th date. Per Chobani's
5
proposed schedule for its *Sonner* motion, adopted by the district court, **Chobani's reply** is due on
6
February 9, 2023 and **the plaintiff's opposition** is due on January 26, 2023.

7
14. On December 6, 2022, counsel for Chobani wrote in relevant part, "we do not
8
understand why you need our response in *Gershzon* to respond to the *Sonner* motion before Judge
9
Chen." *Id.* at 10.

10
15. Counsel for Chobani proceeded to negotiate and file a stipulation for an extension
11
of time until February 4, 2023, after the plaintiff's opposition is due. *Id.* at 9.

12
16. As soon as I discovered my mistake, I informed Chobani's counsel on December
13
12, 2022, that the extension of time could only be until January 20, so that the plaintiff in *Nacarino*
14
would have Chobani's response to the Complaint before her opposition to Chobani's motion in
15
federal court, due on January 26, not February 9. *Id.* at 8. The proposed date of January 20 would
16
have given Chobani more time than it would have if it were served through its registered agent and
17
falls weeks after the winter holidays.

18
17. By email dated December 12, counsel for Chobani nonetheless refused to agree to
19
my proposed extension of time to answer. Counsel for Chobani stated in relevant part, "We
20
disagree that there is any basis for tying the extension to respond in this matter to the *Sonner*
21
motion in *Nacarino*. But more importantly, we cannot agree to your proposed date of January 20."
22
*Id.* at 7.

23
18. By email on December 13, 2022, I responded:

24
This is absurd. We will call the clerk and tell them the stip was filed in error. Then we will use a process server, and Chobani's answer will be due 30 days from today.

25
26
It is bad form that you are trying to take advantage of my clear error regarding the time to oppose your motion.

27
We were trying to accommodate MoFo so that, first, it would be the counsel on this new case, and, second, so that an answer would not be due immediately after the

28

holidays.

I guess no good deed goes unpunished.

*Id.* at 7.

19.    By email on December 13, 2022, Chobani's counsel stated, "we no longer agree to accept service of the complaint." *Id.* at 7. That same day, Plaintiff easily served Chobani by personal delivery of the Complaint to its registered agent. Chobani's time to respond is January 12, 2023.

20.    The initial case management conference in this case is set for March 22, 2023. Plaintiff has not served any discovery in this case and has no immediate plans to serve any discovery in this case.

21.    Counsel for Chobani never discussed with me or any other counsel representing Plaintiff any coordination of this case and the *Nacarino* case before filing its motion to stay. When Chobani responds to the Complaint, counsel for Plaintiff would be happy to discuss a stay of discovery or coordination of discovery between the two cases with the goal of conserving the resources of the parties and the courts.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated: January 9, 2023

_____

Sue J. Nam

1   CLAUDIA M. VETESI (CA SBN 233485)
    CVetesi@mofo.com
2   LENA GANKIN (CA SBN 333047)
    LGankin@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California 94105-2482, U.S.A.
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   Attorneys for Defendant
    CHOBANI LLC

7

**ELECTRONICALLY**

**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/23/2023**
**Clerk of the Court**
BY: ANNIE PASCUAL
Deputy Clerk

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SAN FRANCISCO

10  MIKHAIL GERSHZON, on behalf of       CASE NO. CGC-22-603042
    himself and all others similarly situated,
11
                                         **DEFENDANT CHOBANI LLC'S**
12              Plaintiff,               **ANSWER TO UNVERIFIED**
                                         **COMPLAINT**
13      v.
                                         Dept: 613
14  CHOBANI LLC,                         Judge: Hon. Andrew Y. S. Cheng

15              Defendant.               Date Action Filed:  November 18, 2022

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendant Chobani LLC ("Chobani") hereby files this Answer to the unverified

2    Complaint ("Complaint") for violation of California's Unfair Competition Law, Cal. Bus. & Prof.

3    Code § 17200 et seq. filed by plaintiff Mikhail Gershzon ("Gershzon" or "Plaintiff").

4    **GENERAL DENIAL**

5    Pursuant to California Code of Civil Procedure section 431.30(d), Chobani generally

6    denies each and every allegation in the Complaint and further denies that Plaintiff is entitled to

7    any relief of any kind in any amount.

8    **AFFIRMATIVE DEFENSES**

9    Chobani has not completed its investigation of the facts of this case, has not completed

10   discovery in this matter, and has not completed preparation for trial.  The affirmative defenses

11   asserted herein are based on Chobani's knowledge, information, and belief at this time, and

12   Chobani specifically reserves the right to modify, amend, or supplement any affirmative defenses

13   contained herein at any time.  Chobani reserves the right to assert additional defenses as

14   information is gathered through discovery and investigation.  In asserting these defenses, Chobani

15   does not assume the burden of proof or persuasion on any matters as to which Plaintiff has the

16   burden of proof or persuasion.

17   **FIRST AFFIRMATIVE DEFENSE**

18   (Statute of Limitations)

19   Some or all of the claims of putative class members are time-barred to the extent their

20   claims arose before the applicable statute of limitations periods from the filing of the Complaint.

21   **SECOND AFFIRMATIVE DEFENSE**

22   (Failure to State a Claim)

23   The Complaint fails to state a claim upon which relief may be granted.

24   **THIRD AFFIRMATIVE DEFENSE**

25   (Lack of Standing)

26   Plaintiff and members of the putative class lack standing because they have not suffered

27   any cognizable injury-in-fact.

28

1

1  **FOURTH AFFIRMATIVE DEFENSE**

2  (Adequate Remedy at Law)

3  The claims are barred, in whole or in part, insofar as they seek equitable relief for claims

4  for which there is an adequate legal remedy.

5  **FIFTH AFFIRMATIVE DEFENSE**

6  (Satisfaction of Guarantees, Representations, and/or Warranties)

7  If any warranty, guarantee, or other representation with respect to any of the products

8  involved in this case was made by Chobani, then each such warranty, guarantee, or representation

9  was fully satisfied.

10  **SIXTH AFFIRMATIVE DEFENSE**

11  (Express Preemption)

12  The claims should be dismissed by reason of express preemption by the Food Drug and

13  Cosmetic Act, 21 U.S.C. Sec. 341, *et seq.*

14  **SEVENTH AFFIRMATIVE DEFENSE**

15  (Implied Preemption)

16  The claims should be dismissed by reason of implied preemption by the Food Drug and

17  Cosmetic Act, 21 U.S.C. Sec. 341, *et seq.*

18  **EIGHTH AFFIRMATIVE DEFENSE**

19  (Field Preemption)

20  The claims should be dismissed by reason of field preemption by the Food Drug and

21  Cosmetic Act, 21 U.S.C. Sec. 341, *et seq.*

22  **NINTH AFFIRMATIVE DEFENSE**

23  (Abstention)

24  The claims should be dismissed because the Court should abstain from proceeding since

25  the labeling issues raised by the action are within the jurisdiction of the United States Food and

26  Drug Administration.

27  **TENTH AFFIRMATIVE DEFENSE**

28  (Compliance)

2

1    The claims should be dismissed because the labels at issue fully comply with the United

2    States Food and Drug Administration's regulations, standards, and policies.

3                        **ELEVENTH AFFIRMATIVE DEFENSE**

4                                  (Primary Jurisdiction)

5    The claims should be dismissed pursuant to the doctrine of primary jurisdiction because

6    Plaintiff's claims raise issues that should be addressed in the first instance by the United States

7    Food and Drug Administration.

8                        **TWELTH AFFIRMATIVE DEFENSE**

9                          (Res Judicata and Collateral Estoppel)

10   The claims are barred by the doctrines of *res judicata* and collateral estoppel, including

11   but not limited to any judgment in the matter *Nacarino v. Chobani LLC*, No. 20-cv-7437-EMC

12   (AGT) (N.D. Cal.).

13                      **THIRTEENTH AFFIRMATIVE DEFENSE**

14                                      (Waiver)

15   The claims are barred in whole or in part by the doctrine of waiver.

16                      **FOURTEENTH AFFIRMATIVE DEFENSE**

17                                  (Unclean Hands)

18   The claims are barred in whole or in part by the doctrine of unclean hands.

19                       **FIFTEENTH AFFIRMATIVE DEFENSE**

20                                      (Laches)

21   The claims are barred in whole or in part by the doctrine of laches.

22                       **SIXTEENTH AFFIRMATIVE DEFENSE**

23                            (Additional Affirmative Defenses)

24   Defendant hereby gives notice that it intends to rely upon such other defenses as may

25   become available or apparent during the course of discovery and thus reserves the right to amend

26   its Answer to assert such defenses.

27

28

3

**PRAYER FOR RELIEF**

WHEREFORE, Chobani prays for the following relief:

1.       Dismissing the Complaint with prejudice;

2.       That judgment on the Complaint be entered in favor of Chobani;

3.       That this Court finds that this suit cannot be maintained as a class action;

4.       That this Court denies Plaintiff or the members of the purported class relief of any kind;

5.       That Defendant be awarded its costs incurred, including reasonable attorneys' fees; and

6.       For such other or further relief as this Court may deem just and equitable.

Dated:  January 23, 2023                    MORRISON & FOERSTER LLP

                                         By:  *Claudia Vetesi*
                                              _____
                                              Claudia M. Vetesi
                                              ***Attorneys for Defendant***
                                              ***Chobani LLC***

4

1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482, U.S.A.
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Attorneys for Defendant
   CHOBANI LLC

7

**ELECTRONICALLY**

**F I L E D**

*Superior Court of California,*
*County of San Francisco*

**01/23/2023**
**Clerk of the Court**
BY: ANNIE PASCUAL
Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SAN FRANCISCO

10

11

12  MIKHAIL GERSHZON, on behalf of          CASE NO. CGC-22-603042
    himself and all others similarly situated,

13                  Plaintiff,             **DECLARATION OF LENA**
                                           **GANKIN REGARDING RE-**
14          v.                             **FILING OF CHOBANI LLC'S**
                                           **ANSWER TO UNVERIFIED**
15  CHOBANI LLC,                           **COMPLAINT**

16                  Defendant.             Dept: 613
                                           Judge: Hon. Andrew Y. S. Cheng
17
                                           Date Action Filed:  November 18, 2022
18

19       **DECLARATION OF LENA GANKIN IN SUPPORT OF DEFENDANT'S NOTICE OF**
20                                    **ERRATA**

21       I, Lena Gankin, declare and state as follows:

22       1.      I am an attorney at law, duly licensed to practice before all courts of the State of

23  California, and am an associate at Morrison & Foerster LLP, counsel of record for Defendant

24  Chobani LLC ("Chobani") in the above-captioned action.  I make this declaration in support of

25  Chobani's re-filing of its Answer.  I have personal knowledge of the facts set forth in this

26  declaration, and if called to testify thereto, I could and would competently do so.

27       2.      On January 11, 2023, this Court ordered Chobani to respond to Plaintiff's

28  Complaint by January 12, 2023.

───────────────────────────────────────────────────────────
GANKIN DECL. ISO CHOBANI'S TIMELY FILING OF ITS ANSWER

3.      On January 12, 2023, Chobani timely filed its Answer using One Legal.  I oversaw the filing and worked with Morrison & Foerster's Docketing Department to complete the filing. Immediately after filing its Answer, Chobani served Plaintiff's counsel with copies of the Answer via email.

4.      On Saturday, January 21, 2023, Morrison & Foerster's Docketing Department was notified that Chobani's January 12, 2023 Answer was rejected by the court clerk.  The notice of rejection states: "This matter is designated complex litigation.  Please only use authorized vendor file and serve xpress."  In filing Chobani's Answer, Morrison & Foerster's Docketing Department inadvertently used One Legal to file, as opposed to File & Serve Xpress.

5.      On January 23, 2023, I called this Court's Clerk at (415) 551-3840.  The Clerk advised me to re-file the Answer using File & Serve Xpress and update the date of the Answer to today's date.

6.      Chobani is thus hereby re-filing its Answer to Plaintiff's Unverified Complaint.

7.      Chobani requests that the Court preserve the original submission date for the file stamp since this correction was made in a timely manner.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  January 23, 2023

_____
Lena Gankin

GANKIN DECL. ISO CHOBANI'S TIMELY FILING OF ITS ANSWER

1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482, U.S.A.
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Attorneys for Defendant
   CHOBANI LLC

7

**ELECTRONICALLY**

**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/23/2023**
**Clerk of the Court**
BY: ANNIE PASCUAL
Deputy Clerk

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF SAN FRANCISCO

10  MIKHAIL GERSHZON, on behalf of          Case No. CGC-22-603042

11  himself and all others similarly situated,   **PROOF OF SERVICE**

12               Plaintiff,                 Dept:  613
                                            Judge:  Hon. Andrew Y.S. Cheng
13       v.
                                            Date Action Filed:  November 18, 2022
14  CHOBANI LLC,

15               Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. CGC-22-603042
SF:5522934                                      1

1    I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
2 is 425 Market Street, San Francisco, CA 94105.  I am not a party to the within cause, and I am
over the age of eighteen years.

3    I further declare that on January 23, 2023, I served a copy of:

4    **DEFENDANT CHOBANI LLC'S ANSWER TO UNVERIFIED COMPLAINT;
DECLARATION OF LENA GANKIN REARDING FILING OF CHOBANI
5 LLC'S ANSWER TO UNVERIFIED COMPLAINT**

6    ☒    **BY FILE & SERVEXPRESS:**  I caused the above document(s) to be
7       electronically served on the interested parties identified by using File &
ServeXpress, and electronically served the listed document(s) upon the attorney(s)
8       of record for each party in this case at the email address(es) registered for such
service through File & ServeXpress.

9

| | |
|---|---|
| Sue J. Nam<br>Michael R. Reese<br>REESE LLP<br>100 West 93rd Street, 16th Floor<br>New York, NY 10025<br>snam@reesellp.com<br>mreese@reesellp.com | *Attorneys for Plaintiff* |
| George V. Granade<br>REESE LLP<br>8484 Wilshire Boulevard, Suite 515<br>Los Angeles, CA 90211<br>ggranade@reesellp.com | *Attorneys for Plaintiff* |

10
11
12
13
14
15
16
17

18    I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

19

20    Executed at Concord, California, this 23rd day of January, 2023.

21
_____        _____
22       Robin L. Sexton                    (signature)
(type)

23
24
25
26
27
28

PROOF OF SERVICE
CASE NO. CGC-22-603042
SF:5522934                                    2

1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  NICOLE V. OZERAN (CA SBN 302321)
   NOzeran@mofo.com
3  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482, U.S.A.
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  Attorneys for Defendant
   CHOBANI LLC

8

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**01/26/2023**
**Clerk of the Court**
BY: ANNIE PASCUAL
*Deputy Clerk*

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                   COUNTY OF SAN FRANCISCO

11  MIKHAIL GERSHZON, on behalf of

12  himself and all others similarly situated,

13                   Plaintiff,

14         v.

15  CHOBANI LLC,

16                   Defendant.

17

| | |
|---|---|
| Case No. CGC-22-603042 | |

**NOTICE OF HEARING ON DEFENDANT CHOBANI LLC'S MOTION TO STAY PROCEEDINGS**

Dept: 613
Judge: Hon. Andrew Y.S. Cheng
Date: March 22, 2023
Time: 10:00 a.m.

Date Action Filed: November 18, 2022

18

19

20

21

22

23

24

25

26

27

28

1    TO EACH PARTY AND ATTORNEY OF RECORD IN THIS ACTION:

2    PLEASE TAKE NOTICE THAT Defendant Chobani LLC's Motion to Stay

3   Proceedings, served and filed on January 4, 2023, has been set for hearing on March 22,

4   2023, at 10:00 a.m. in Department 613 of the Superior Court for the City and County of San

5   Francisco, 400 McAllister Street, San Francisco, California.

6

7   Dated:  January 26, 2023                    MORRISON & FOERSTER LLP

8

9                                          By:  _Claudia Vetesi_____

10                                              Claudia M. Vetesi

11                                              **Attorneys for Defendant**
                                                **Chobani LLC**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, CA 94105.  I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on January 26, 2023, I served a copy of:

**NOTICE OF HEARING ON DEFENDANT CHOBANI LLC'S MOTION TO STAY PROCEEDINGS**

☒    **BY FILE & SERVEXPRESS:**  I caused the above document(s) to be electronically served on the interested parties identified by using File & ServeXpress, and electronically served the listed document(s) upon the attorney(s) of record for each party in this case at the email address(es) registered for such service through File & ServeXpress.

| | |
|---|---|
| Sue J. Nam<br>Michael R. Reese<br>REESE LLP<br>100 West 93rd Street, 16th Floor<br>New York, NY 10025<br>snam@reesellp.com<br>mreese@reesellp.com | *Attorneys for Plaintiff* |
| George V. Granade<br>REESE LLP<br>8484 Wilshire Boulevard, Suite 515<br>Los Angeles, CA 90211<br>ggranade@reesellp.com | *Attorneys for Plaintiff* |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Francisco, California, this 26th day of January, 2023.

| Kim Means | *Kim Means* |
|:---:|:---:|
| (type) | (signature) |

1   CLAUDIA M. VETESI (CA SBN 233485)
    CVetesi@mofo.com
2   LENA GANKIN (CA SBN 333047)
    LGankin@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California 94105-2482, U.S.A.
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   Attorneys for Defendant
    CHOBANI LLC

7

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**02/24/2023**
**Clerk of the Court**
BY: ERNALYN BURA
Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10  MIKHAIL GERSHZON, on behalf of          Case No. CGC-22-603042

11  himself and all others similarly situated,   **DEFENDANT CHOBANI LLC'S REPLY**
                                                  **IN SUPPORT OF MOTION TO STAY**
12              Plaintiff,                        **PROCEEDINGS**

13      v.                                        Dept: 613
                                                  Judge: Hon. Andrew Y.S. Cheng
14  CHOBANI LLC,                                  Date: March 22, 2023
                                                  Time: 10:00 am
15              Defendant.
                                                  Date Action Filed: November 18, 2022
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     ALL RELEVANT FACTORS FAVOR A STAY ............................................... 3

        A.      The First Factor: Without a Stay in This Case, Chobani Will Have to
                Defend Against Another Identical Lawsuit Filed by Plaintiff's Counsel ............... 3

        B.      The Second Factor: Staying This Case Will Prevent Unseemly Conflicts
                and Inconsistent Results ........................................................................................ 4

        C.      The Third Factor: Because the *Nacarino* Case Encompasses This Case, the
                *Nacarino* Court Is Better Situated to Determine the Issues Implicated in
                Both Actions ........................................................................................................... 6

        D.      The Fourth Factor: *Nacarino* Is Pending in Federal Court in California—a
                "Critical Factor" That Weighs Heavily in Favor of a Stay ..................................... 6

III.    CONCLUSION .................................................................................................... 7

1

## **TABLE OF AUTHORITIES**

2

3
**Page(s)**

4

**Cases**

5
*Berg v. MTC Elecs. Techs. Co.*
   (1998) 61 Cal.App.4th 349 ................................................................. 6
6

7
*Caiafa Professional Law Corp. v. State Farm Fire & Casualty Co.*
   (1993) 15 Cal.App.4th 800 ............................................................. 3, 6
8

9
*Cornejo v. Big Lots Stores, Inc.*
   (Super. Ct. Sacramento County, Nov. 18, 2022, No. 34-2022-00322614-CU-
   OE-GDS) 2022 Cal. Super. LEXIS 82928 ................................................. 5
10

11
*Dockery v. Frontier Communications Corp.*,
   (Super. Ct. Sacramento County, Aug. 24, 2021, No. 34-2021-00295726-CU-
   OE-GDS) 2021 Cal. Super. LEXIS 98257, at *8-9 ................................... 4
12

13
*McDaniel v. Save Mart Cos.*
   (Super. Ct. Sacramento County, July 12, 2021, No. 34-2021-00291895-CU-
   OE-GDS) 2021 Cal. Super. LEXIS 13733 ............................................... 4
14

15
*Nacarino v. Chobani LLC*
   (N.D. Cal., No. 20-cv-7437-EMC) ........................................................ 1
16

17
*Sonner v. Premier Nutrition Corp.*
   (9th Cir. 2020) 971 F.3d 834.............................................................. 1
18

19
*Thomson v. Continental Insurance Co.*
   (1967) 66 Cal. 2d 738 ........................................................................ 3
20

21
*Tre v. Am. Honda Motor Co.*
   (Super. Ct. Alameda County, Sept. 17, 2020, No. RG19039655) 2020 Cal.
   Super. LEXIS 62135 ........................................................................... 5

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In her Opposition to Chobani's Motion to Stay, Plaintiff concedes that the "bulk of the facts here is not in dispute"—because this matter is virtually identical to *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC), a putative class action challenging the same labeling of Chobani's Vanilla Blended yogurt pending in the Northern District of California.  (Plaintiff's Opposition to Chobani's Motion to Stay ("Opp.") at 1.)  In its Motion to Stay, Chobani requested that this matter be stayed under the Court's discretionary power to promote judicial efficiency and to avoid potentially inconsistent rulings.  (Defendant's Motion to Stay ("Motion") at 1-2.)  The *Nacarino* matter has been pending for over two years:  the parties have engaged in discovery, produced documents, taken depositions, and have a case schedule for class certification.  Most importantly, if a class is certified in *Nacarino* as defined in the operative complaint, that class would *fully subsume* the putative class in this matter, mooting this case.

Plaintiff makes two main arguments in response, but neither has any merit.

*First*, Plaintiff contends that he seeks different remedies in this case, and that this case would not be fully subsumed by *Nacarino*.  But everything Plaintiff seeks here is addressed in *Nacarino* (plus some).  In *Nacarino*, the plaintiff brings a single claim under the UCL's unlawful prong (the same as Mr. Gershzon).  She seeks restitution, among other equitable remedies, as her claim for damages was dismissed.[1]  As Chobani detailed in its Motion, the parties in *Nacarino* have now fully briefed and argued whether the federal court has jurisdiction to award the equitable remedy of restitution under *Sonner v. Premier Nutrition Corp.* (9th Cir. 2020) 971 F.3d 834.[2]  If the federal court finds that it can award equitable relief, then Ms. Nacarino will seek to certify (1) a class of California consumers; (2) who purchased the Vanilla Blended yogurt from October 23, 2016-present; and (3) will seek restitution, among other relief. (Dkt. No. 51, *Nacarino v. Chobani LLC* (N.D. Cal., No. 20-cv-7437-EMC).)  Such a class would fully

---

[1] In addition to equitable restitution, the *Nacarino* complaint seeks injunctive relief.  (Dkt. No. 51, *Nacarino v. Chobani* LLC (N.D. Cal., No. 20-cv-7437-EMC).)

[2] The hearing on Chobani's *Sonner* motion was held on February 23, 2023.

1    encompass the putative class here:  Mr. Gershzon seeks to certify (1) a class of California

2    consumers; (2) who purchased the Vanilla Blended yogurt from November 18, 2018-present; and

3    (3) will seek restitution.  (Compl. ¶¶ 39; Prayer for Relief.)  For this reason, Chobani requests that

4    at the very least, the Court stay this matter until the federal court decides whether Ms. Nacarino

5    can pursue restitution on behalf of the putative class.   If so, then there is no class to pursue here.

6        **Second,** Plaintiff argues this Motion is premature because there is "nothing to stay in this

7    case" given "Plaintiff has not served any discovery and has no immediate plans to serve any

8    discovery in this case."  (Opp. at 1.)  Plaintiff also contends that Chobani did not reach out to

9    discuss a stay before filing its Motion, and that Plaintiff is "happy to discuss a stay of discovery

10   or coordination of discovery" with *Nacarino*.  (*Id.* at 3.)  As an initial matter, without a stay, there

11   is no guarantee that Plaintiff will hold off on serving discovery.  Indeed, Plaintiff notes only that

12   he has "no immediate" plans to serve discovery.  (*Id.* at 1, 3-5.)  As Chobani has shown, engaging

13   in any discovery would be inefficient given that this case may be moot depending on the

14   *Nacarino* court's ruling on Chobani's *Sonner* motion.

15       Moreover, Plaintiff is mistaken that Chobani did not discuss its Motion with Plaintiff.  On

16   January 4, 2023, Chobani informed Plaintiff's counsel of its intention to seek a stay and extension

17   of its responsive pleading.  Plaintiff's counsel stated that they would "be opposing both the

18   motion to stay and the application for extension," and did not suggest any compromise was

19   possible.  (*See* Ex. A.)  In light of Plaintiff's statement in its Opposition brief that it would be

20   happy to discuss a stay, Chobani reached out to Plaintiff's counsel again on January 17 to ask if

21   Plaintiff would agree to formalize a stay of this matter pending the *Nacarino* court's decision on

22   the *Sonner* motion.  Plaintiff did not agree.  (*Id.*)

23       As set forth in Chobani's Motion and below, all of the relevant factors weigh in favor of a

24   stay here.  Accordingly, Chobani respectfully submits that the Court should exercise its judicial

25   discretion to stay this matter as it would be inefficient to litigate the same case in two forums,

26   especially where the *Nacarino* action is substantially ahead of this matter procedurally.  At the

27   very least, Chobani submits that this Court should stay the case until the *Nacarino* court decides

28

1  whether the putative class there can seek restitution.  If so, then the putative class here is fully

2  subsumed in the long-pending *Nacarino* case.

3  **II.    ALL RELEVANT FACTORS FAVOR A STAY**

4  As discussed in Chobani's Motion, in determining whether to exercise discretion to grant

5  a stay in favor of an earlier-filed federal action, California courts consider four factors laid out in

6  *Thomson v. Continental Insurance Co.* (1967) 66 Cal. 2d 738, 746-747 and *Caiafa Professional*

7  *Law Corp. v. State Farm Fire & Casualty Co.* (1993) 15 Cal.App.4th 800, 804, 807: (1) the

8  importance of discouraging multiple litigation designed solely to harass an adverse party; (2)

9  avoiding unseemly conflicts with the courts of other jurisdictions; (3) whether the rights of the

10  parties can best be determined by the court of the other jurisdiction; and, (4) whether the federal

11  action is pending in California.  (Mot. at 1-2, 8-9.)  Each of these factors weighs in favor of a stay

12  here.

13  **A.    The First Factor: Without a Stay in This Case, Chobani Will Have to**
**Defend Against Another Identical Lawsuit Filed by Plaintiff's Counsel**

14

15  The *Nacarino* and *Gershzon* complaints are virtually indistinguishable, meaning that

16  Chobani will be required to engage in duplicative litigation if a stay is not granted.  In response,

17  Plaintiff does not dispute that the *Nacarino* and *Gershzon* complaints are nearly identical, and

18  ***admits*** that "many issues can be addressed and resolved in the first instance by the U.S. District

19  Court for the Northern District of California before whom *Nacarino* is pending."  (Opp. at 4.)

20  Plaintiff is correct.  Chobani will face undue burden if both *Nacarino* and *Gershzon* proceed

21  simultaneously, because Chobani will be required to litigate the same issues and respond to the

22  same discovery in two forums.

23  This is particular true given, as discussed above, that this matter may be fully subsumed

24  by *Nacarino*, and rendered moot.  While Plaintiff argues that "any decision that Judge Chen may

25  issue on Chobani's *Sonner* motion will not impact the restitution that this Plaintiff or the class of

26  California consumers he seeks to represent in this case," this is wrong.  (Opp. at 5.)  Chobani's

27  fully-briefed *Sonner* motion will determine whether the putative class in *Nacarino* will be able to

28

obtain equitable restitution in federal court.  If the *Nacarino* court decides that the putative class can seek restitution, then Ms. Nacarino will seek to certify (1) a class of California consumers; (2) who purchased Vanilla Blended yogurt from October 23, 2016 to the present; and (3) will seek restitution, among other remedies.  Mr. Gershzon also seeks to certify (1) a class of California consumers; (2) who purchased Vanilla Blended yogurt from November 18, 2018 to the present (a narrower time frame than *Nacarino*); and (3) will seek restitution.  If Ms. Nacarino's class is certified, this case can no longer proceed.[3]

"California courts regularly stay later filed class or representative cases when an earlier filed case that asserts the same claims on behalf of the same group is already pending." (*McDaniel v. Save Mart Cos.* (Super. Ct. Sacramento County, July 12, 2021, No. 34-2021-00291895-CU-OE-GDS) 2021 Cal. Super. LEXIS 13733, at *6) [collecting cases].)  For example, in *McDaniel*, the Sacramento County Superior Court granted defendant's stay in an employment class action where, as here, (1) there was no claim being brought that was not already present in the earlier-filed actions; (2) Plaintiff fell within the putative classes in the earlier actions; and (3) the remedies sought in the actions overlapped.  (*Id.* at pp. *5-6.)  Similarly, in *Dockery v. Frontier Communications Corp.*, the court granted defendant's motion to stay in light of an earlier-filed federal action because the claims in both suits were premised on the same allegations and the class period in the state court action fell into the federal court action's class period.  ((Super. Ct. Sacramento County, Aug. 24, 2021, No. 34-2021-00295726-CU-OE-GDS) 2021 Cal. Super. LEXIS 98257, at *8-9) [further noting that "burdening two Court systems to determine identical legal issues in parallel would not be in the interest of judicial efficiency and would be adverse to the public interest."].)  Accordingly, staying this matter pending at least the outcome of Chobani's *Sonner* motion in *Nacarino* will promote judicial efficiency and discourage multiple litigation.

### B.    The Second Factor: Staying This Case Will Prevent Unseemly Conflicts and Inconsistent Results

Permitting this matter to proceed while *Nacarino* is pending runs the risk that the courts

---

[3] Chobani intends to oppose class certification in the *Nacarino* matter.

REPLY IN SUPPORT OF MOTION TO STAY
CASE NO. CGC-22-603042

SF:5364491

4

1    will issue conflicting and inconsistent rulings.  (See *Cornejo v. Big Lots Stores, Inc.* (Super. Ct.

2    Sacramento County, Nov. 18, 2022, No. 34-2022-00322614-CU-OE-GDS) 2022 Cal. Super.

3    LEXIS 82928, at *6 [granting a stay of the state court action in light of a nearly identical and

4    earlier-filed class action in federal court, given the "significant potential for inconsistent

5    rulings."].)  In response, Plaintiff argues that there is no risk of "unseemly conflicts with courts of

6    other jurisdictions" because "Plaintiff has not served any discovery in this case" and has no

7    "immediate plans" to do so.  (Opp. at 4.)  This misses the mark.

8          As an initial matter, Plaintiff has not formally agreed to stay the case, nor would Plaintiff

9    agree to a negotiated stay when Chobani requested.  Indeed, Plaintiff has raised the

10    "coordination" of discovery, suggesting that he envisions these matters proceedings in parallel.

11    (Opp. at 3-4.)  Moreover, there would undoubtedly be motion practice in this case, as well as the

12    potential for class certification and summary judgment, which could result in conflicting rulings

13    with the *Nacarino* court.  And there is also a significant risk that this Court and the *Nacarino*

14    court may issue conflicting rulings on discovery matters, dispositive motions, and other pre-trial

15    and trial issues.  (*Cornejo*, *supra*, 2022 Cal. Super. LEXIS 82928, at p. *6) [discussing the risk

16    that "concurrently maintaining both cases would create an unnecessary waste of both judicial and

17    litigation resources, and will result in duplicative, time-consuming, burdensome, and expensive

18    discovery and motion practice."]; *Tre v. Am. Honda Motor Co.* (Super. Ct. Alameda County,

19    Sept. 17, 2020, No. RG19039655) 2020 Cal. Super. LEXIS 62135, at *3-4 [granting a stay in a

20    putative class action in deference to an earlier class action alleging substantially identical claims,

21    because "[a]llowing this action to proceed in parallel with the federal action risks conflicting

22    orders on matters left to judicial discretion, including discovery rulings, class definitions,

23    deadlines, and other procedural matters."].)  The substantive issues are complicated and demand

24    the uniformity that only a single court can provide.

25          Accordingly, the second *Thomson*/*Caiafa* factor also favors granting Chobani's Motion.

26

27

28

1

2

**C.    The Third Factor: Because the *Nacarino* Case Encompasses This Case, the *Nacarino* Court Is Better Situated to Determine the Issues Implicated in Both Actions**

3    Given that this matter is virtually identical to *Nacarino*, which the parties have been

4    litigating for over two years, adjudicating the *Nacarino* action first will, at a minimum, streamline

5    the issues in this case.  In response, Plaintiff admits that "many issues can be addressed and

6    resolved in the first instance by the U.S. District Court for the Northern District of California

7    before whom *Nacarino* is pending." (Opp. at 4.)  Accordingly, Plaintiff's agreement with

8    Chobani with regard to this factor counsels in favor of granting Chobani's Motion to Stay.  (See

9    e.g., *Berg v. MTC Elecs. Techs. Co.* (1998) 61 Cal.App.4th 349, 363 [affirming stay of state court

10    proceeding because the federal court action would resolve "at least some of the key issues

11    between the parties."].)

12

13

**D.    The Fourth Factor: *Nacarino* Is Pending in Federal Court in California—a "Critical Factor" That Weighs Heavily in Favor of a Stay**

14    Finally, in determining whether to stay an action in favor of a duplicative action, the court

15    must consider as a "critical factor" whether the federal action is pending in California or some

16    other state.  (*Caiafa*, *supra*, 15 Cal.App.4th at p. 804.)  That a duplicative action is proceeding in

17    California federal court may favor a stay because the federal court is of "equal convenience to the

18    parties and witnesses as is the state court[.]" (*Id.* at p. 807.)  Plaintiff's Opposition is silent with

19    regard to this factor, because there is no dispute that *Nacarino* is pending in the Northern District

20    of California and that a stay of proceedings in light of *Nacarino* will not prejudice or

21    inconvenience the parties or witnesses.

22

23

24

25

26

27

28

1

III.   **CONCLUSION**

2

For the foregoing reasons, Chobani respectfully requests that this Court stay the

3

proceedings in this action pending resolution of the related and overlapping *Nacarino v. Chobani*

4

*LLC* (N.D. Cal., No. 20-cv-7437-EMC), or at least until resolution of Chobani's *Sonner* motion in

5

*Nacarino*.

6

7

Dated:  February 24, 2023                    MORRISON & FOERSTER LLP

8

9

By: _____

10

Claudia M. Vetesi

*Attorneys for Defendant*

11

*Chobani LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482, U.S.A.
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Attorneys for Defendant
   CHOBANI LLC

7

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**02/24/2023**
**Clerk of the Court**
BY: ERNALYN BURA
Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10  MIKHAIL GERSHZON, on behalf of            Case No. CGC-22-603042

11  himself and all others similarly situated,   **PROOF OF SERVICE**

12                      Plaintiff,              Dept: 613
                                               Judge: Hon. Andrew Y.S. Cheng
13          v.
                                               Date Action Filed: November 18, 2022
14  CHOBANI LLC,

15                      Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
          I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, CA 94105.  I am not a party to the within cause, and I am over the age of eighteen years.

3
          I further declare that on February 24, 2023, I served a copy of:

4
**DEFENDANT CHOBANI LLC'S REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS; AND**

5
6
**DECLARATION OF CLAUDIA M. VETESI IN SUPPORT OF CHOBANI LLC'S REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS**

7
8
☒    **BY FILE & SERVEXPRESS:**  I caused the above document(s) to be electronically served on the interested parties identified by using File & ServeXpress, and electronically served the listed document(s) upon the attorney(s) of record for each party in this case at the email address(es) registered for such service through File & ServeXpress.

9
10

| | |
|---|---|
| Sue J. Nam<br>Michael R. Reese<br>REESE LLP<br>100 West 93rd Street, 16th Floor<br>New York, NY 10025<br>snam@reesellp.com<br>mreese@reesellp.com | *Attorneys for Plaintiff* |
| George V. Granade<br>REESE LLP<br>8484 Wilshire Boulevard, Suite 515<br>Los Angeles, CA 90211<br>ggranade@reesellp.com | *Attorneys for Plaintiff* |

11
12
13
14
15
16
17
18
19
          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

20
          Executed at Pleasant Hill, California, this 24th day of February, 2023.

21
22
23
_____          *Mary J. Beaudrow*_____
          Mary Beaudrow                                           (signature)
          (type)

24
25
26
27
28

PROOF OF SERVICE
CASE NO. CGC-22-603042
SF:5322934

2

1   CLAUDIA M. VETESI (CA SBN 233485)
    CVetesi@mofo.com
2   LENA GANKIN (CA SBN 333047)
    LGankin@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California 94105-2482, U.S.A.
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   Attorneys for Defendant
    CHOBANI LLC

7

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**02/24/2023**
**Clerk of the Court**
BY: ERNALYN BURA
Deputy Clerk

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO

10  MIKHAIL GERSHZON, on behalf of              Case No. CGC-22-603042

11  himself and all others similarly situated,  **DECLARATION OF CLAUDIA M.
                                                VETESI IN SUPPORT OF**
12                      Plaintiff,              **DEFENDANT'S REPLY IN SUPPORT
                                                OF MOTION TO STAY PROCEEDINGS**
13          v.
                                               Dept:  613
14  CHOBANI LLC,                               Judge:  Hon. Andrew Y.S. Cheng
                                               Date:  March 22, 2023
15                      Defendant.             Time:  10:00 am

16                                             Date Action Filed:  November 18, 2022

17

18

19

20

21

22

23

24

25

26

27

28

VETESI DECL. ISO REPLY IN SUPPORT OF MOTION TO STAY
CASE NO. CGC-22-603042

1    I, Claudia M. Vetesi, declare as follows:

2    1.    I am a partner at the law firm of Morrison & Foerster LLP, which is counsel of

3    record for Defendant Chobani LLC ("Chobani").  I am an attorney admitted to practice in the

4    State of California and am admitted to practice before this Court.  I submit this Declaration in

5    support of Chobani's Reply in Support of its Motion to Stay.  I have personal knowledge of the

6    matters stated herein.  If called as a witness I could and would testify competently to the matters

7    stated herein.

8    2.    Attached to this Declaration as **Exhibit A** is a true and correct copy of email

9    correspondence between counsel for Chobani and counsel for Plaintiff, from January 4, 2023 to

10    January 23, 2023.

11    I declare under penalty of perjury that the foregoing is true and correct.  Executed this

12    24th day of February 2023, in Phoenix, Arizona.

13

14    _____

15    Claudia M. Vetesi

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

| | |
|---|---|
| **From:** | Vetesi, Claudia M. |
| **Sent:** | Monday, January 23, 2023 3:44 PM |
| **To:** | Sue Nam |
| **Cc:** | Michael Reese; Spencer Sheehan; George Granade; Charles Moore; Levitt, Jamie A.; Ozeran, Nicole Victoria; Margolies, Lauren N.; Gankin, Lena |
| **Subject:** | RE: Gershzon v. Chobani LLC - Notice of filings (Motion to Stay) |

Sue,

Yes, we of course do intend to oppose any motion to certify a class in *Nacarino*, but that does not mean it makes sense or is a good use of party and judicial resources to litigate cases with overlapping purported classes simultaneously. We accordingly believe *Gershzon* should be stayed pending the outcome of the *Sonner* motion so we know the scope of the putative class in *Nacarino*.

We do not think that a call is likely going to be useful given our positions, but we are available on Friday, January 27 at 10am PST if you would like to further discuss.

Claudia

**CLAUDIA VETESI**
Partner | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
**P:** +1 (415) 268-6626
mofo.com | LinkedIn | Twitter

**From:** Sue Nam <snam@reesellp.com>
**Sent:** Friday, January 20, 2023 3:23 PM
**To:** Vetesi, Claudia M. <CVetesi@mofo.com>
**Cc:** Michael Reese <mreese@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; George Granade <ggranade@reesellp.com>; Charles Moore <cmoore@reesellp.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Ozeran, Nicole Victoria <NOzeran@mofo.com>; Margolies, Lauren N. <LMargolies@mofo.com>; Gankin, Lena <LGankin@mofo.com>
**Subject:** Re: Gershzon v. Chobani LLC - Notice of filings (Motion to Stay)

<mark>External Email</mark>

We are happy to discuss the coordination of discovery between the two cases, but we remain unclear about Chobani's position with respect to a stay. How will *Gershzon* be subsumed by *Nacarino* prior to class certification? We assumed that Chobani would oppose any motion to certify in *Nacarino*.

Let's schedule a call to discuss discovery/stay. How's next Friday, January 27, at 10 am PST?

Sue J. Nam
Reese LLP
http://reesellp.com
917 405 6686


On Fri, Jan 20, 2023 at 10:55 AM Vetesi, Claudia M. <CVetesi@mofo.com> wrote:

> Sue – as we stated in our motion to stay in *Gershzon*, if the *Nacarino* Court denies our *Sonner* motion, Gershzon will be fully subsumed in *Nacarino*, which is farther along.  Please let us know your position by end of day.
>
>
>
> Best regards,
>
> Claudia
>
>
>
> **CLAUDIA VETESI**
>
> Partner | Morrison & Foerster LLP
>
> 425 Market St. | San Francisco, CA 94105
>
> **P:** +1 (415) 268-6626
>
> mofo.com | LinkedIn | Twitter
>
>
>
> **From:** Sue Nam <snam@reesellp.com>
> **Sent:** Thursday, January 19, 2023 3:37 PM
> **To:** Vetesi, Claudia M. <CVetesi@mofo.com>
> **Cc:** Michael Reese <mreese@reesellp.com>; Spencer Sheehan <spencer@spencersheehan.com>; George Granade <ggranade@reesellp.com>; Charles Moore <cmoore@reesellp.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Ozeran, Nicole Victoria <NOzeran@mofo.com>; Margolies, Lauren N. <LMargolies@mofo.com>; Gankin, Lena <LGankin@mofo.com>
> **Subject:** Re: Gershzon v. Chobani LLC - Notice of filings (Motion to Stay)
>
>
>
> External Email
>
>
> ────────────────────────────────────────
>
> It would be helpful if you could explain how the *Sonner* motion has any bearing on the *Gershzon* case. We are having a hard time understanding this so that we can present Chobani's position to our client.

2

**4**

Sue J. Nam

Reese LLP

http://reesellp.com

917 405 6686


On Thu, Jan 19, 2023 at 4:09 PM Vetesi, Claudia M. <CVetesi@mofo.com> wrote:

Sue,


Please let us know your position on this.


Best regards,

Claudia


**CLAUDIA VETESI**

Partner | Morrison & Foerster LLP

425 Market St. | San Francisco, CA 94105

P: +1 (415) 268-6626

mofo.com | LinkedIn | Twitter

---

**From:** Sue Nam <snam@reesellp.com>

**Date:** Tuesday, Jan 17, 2023 at 3:08 PM

**To:** Vetesi, Claudia M. <CVetesi@mofo.com>

**Cc:** Michael Reese <mreese@reesellp.com>, Spencer Sheehan <spencer@spencersheehan.com>, George Granade <ggranade@reesellp.com>, Charles Moore <cmoore@reesellp.com>, Levitt, Jamie A. <JLevitt@mofo.com>, Ozeran, Nicole Victoria <NOzeran@mofo.com>, Margolies, Lauren N. <LMargolies@mofo.com>, Gankin, Lena <LGankin@mofo.com>

3

**Subject:** Re: Gershzon v. Chobani LLC - Notice of filings (Motion to Stay)

<mark>External Email</mark>

---

I'm sorry, but we have to consult with our client and will not be able to respond by tomorrow.

On Tue, Jan 17, 2023, 10:52 PM Vetesi, Claudia M. <CVetesi@mofo.com> wrote:

Sue,

We wanted to reach out regarding Chobani's Motion to Stay in *Gershzon*. In the Opposition, you state that Chobani's Motion is premature because "there is nothing to stay in this case." To avoid further motion practice on this issue, will you stipulate to a stay of all proceedings in *Gershzon* pending Judge Chen's ruling on the *Sonner* motion in *Nacarino*? We should have a better understanding of the scope of the cases after that ruling. Please let us know by close of business **tomorrow, 1/18.**

Best regards,

Claudia

**CLAUDIA VETESI**

Partner | Morrison & Foerster LLP

425 Market St. | San Francisco, CA 94105

**P:** +1 (415) 268-6626

mofo.com | LinkedIn | Twitter

**From:** Sue Nam <snam@reesellp.com>
**Sent:** Wednesday, January 4, 2023 9:14 AM
**To:** Margolies, Lauren N. <LMargolies@mofo.com>
**Cc:** mreese@reesellp.com; spencer@spencersheehan.com; ggranade@reesellp.com; cmoore@reesellp.com; Ozeran, Nicole Victoria <NOzeran@mofo.com>; Vetesi, Claudia M. <CVetesi@mofo.com>; Levitt, Jamie A. <JLevitt@mofo.com>; Gankin, Lena <LGankin@mofo.com>
**Subject:** Re: Gershzon v. Chobani LLC - Notice of filings

<mark>External Email</mark>

We will be opposing both the motion to stay and the application for extension.

George is on the efiling service used by the California court, and I am in the process of adding myself. Can you please make sure to email us with anything you file, just in case service by File & ServeXpress does not come through to us.

Thanks.

Sue J. Nam

Reese LLP

http://reesellp.com

917 405 6686

On Wed, Jan 4, 2023 at 10:33 AM Sue Nam <snam@reesellp.com> wrote:

Absolutely not.

Sue J. Nam

Reese LLP

http://reesellp.com

917 405 6686

On Wed, Jan 4, 2023 at 10:15 AM Margolies, Lauren N. <LMargolies@mofo.com> wrote:

Good morning, Sue,

Chobani intends to file a Motion to Stay in *Gershzon* pending receiving a hearing date from the Court. Chobani also intends to file an *ex parte* application for an extension of time this afternoon. This application for an extension will request that Chobani's time to answer or otherwise respond to the complaint be extended to 30 days after our anticipated Motion to Stay is ruled on.

Do you consent to this extension application?

Thanks,

**LAUREN MARGOLIES**

**Associate**

T +1 (212) 336-4380

M +1 (646) 732-9828

==========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

==========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

7

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco
**03/15/2023**
**Clerk of the Court**
BY: MADONNA CARANTO
Deputy Clerk

1  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
2  LENA GANKIN (CA SBN 333047)
   LGankin@mofo.com
3  Morrison & Foerster LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  *Attorneys for Defendant*
   *Chobani LLC*

7

8

MICHAEL R. REESE (Bar No. 206773)
mreese@reesellp.com
SUE J. NAM (Bar No. 206729)
snam@reesellp.com
KATE J. STOIA (Bar No. 183471)
kstoia@reesellp.com
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Attorneys for Plaintiff and the Proposed Class*

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF SAN FRANCISCO

11  MIKHAIL GERSHZON, on behalf of himself and
    all others similarly situated,

12                           Plaintiff,

13

14          v.

15  CHOBANI LLC,

16                           Defendant.

17

Case No. CGC-22-603042

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

Dept:  613
Judge: Hon. Andrew Y.S. Cheng
Date:  March 22, 2023
Time:  10:00 am

Date Action Filed:  November 18, 2022

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff Mikhail Gershzon ("Plaintiff") and Defendant Chobani LLC ("Chobani") hereby

2    submit this Joint Case Management Conference Statement in advance of the case management

3    conference scheduled in this matter for March 23, 2023.

4        Procedural History

5        Plaintiff filed his Complaint on November 18, 2022.  On December 8, 2022, Chobani filed

6    an Application for Approval of Complex Designation, which was granted on December 22, 2022.

7    On January 4, 2023, Chobani filed a Motion to Stay Proceedings, which Plaintiff opposed on

8    January 13, 2023.  Chobani's Motion to Stay Proceedings is currently set for hearing on March

9    22, 2023 at 10:00am in Department 613 of the Superior Court for the City and County of San

10   Francisco.

11       Recent Developments

12       The parties respectfully request that the March 23, 2023 Case Management Conference

13   and hearing on Chobani's Motion to Stay Proceedings be adjourned.  On March 11-13, 2023, the

14   parties agreed to engage in settlement negotiations, and to facilitate such negotiations, also agreed

15   to seek a stay in this matter and in the related federal court matter, *Nacarino v. Chobani* LLC

16   (N.D. Cal., No. 20-cv-7437-EMC).  A stay will allow the parties to explore resolution while

17   avoiding the costs of discovery and motion practice and promoting judicial efficiency.  The

18   parties have agreed to this stay in good faith and not for delay or any other improper purpose.  If

19   the parties have not resolved this action within 30 days from the date of this Joint Case

20   Management Conference Statement (*i.e.*, by April 14, 2023), the parties will file a status report

21   and/or request an immediate status conference with the Court to address case scheduling and

22   Chobani's pending Motion to Stay Proceedings.

23

24

25

26

27

28

1   Dated: March 15, 2023                MORRISON & FOERSTER LLP

2

3                                         By:   /s/ Claudia M. Vetesi
                                                CLAUDIA M. VETESI
4
                                          Attorneys for Defendant
5                                         CHOBANI LLC

6
    Dated: March 15, 2023                REESE, LLP
7

8
                                          By:   /s/ Sue J. Nam
9                                               SUE J. NAM

10                                        Attorneys for Plaintiff
                                          MIKHAIL GERSHZON
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      I declare that I am employed with the law firm of Morrison & Foerster LLP, whose
2  address is 425 Market Street, San Francisco, CA 94105.  I am not a party to the within cause, and
   I am over the age of eighteen years.

3      I further declare that on March 15, 2023, I served a copy of:

4      **JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

5      ☒   **BY FILE & SERVEXPRESS:** I caused the above document(s) to be
6      electronically served on the interested parties identified by using File &
   ServeXpress, and electronically served the listed document(s) upon the attorney(s)
7      of record for each party in this case at the email address(es) registered for such
   service through File & ServeXpress.

8

| | |
|---|---|
| Sue J. Nam<br>Michael R. Reese<br>REESE LLP<br>100 West 93rd Street, 16th Floor<br>New York, NY 10025<br>snam@reesellp.com<br>mreese@reesellp.com | *Attorneys for Plaintiff* |
| George V. Granade<br>REESE LLP<br>8484 Wilshire Boulevard, Suite 515<br>Los Angeles, CA 90211<br>ggranade@reesellp.com | *Attorneys for Plaintiff* |

    I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

    Executed at San Francisco, California, this 15th day of March, 2023.

          Kim Means                    *Kim Means*
_____    _____

F I L E D
Superior Court of California
County of San Francisco

MAR 16 2023

CLERK OF THE COURT
BY: _____
Deputy Clerk

E-SERVICE
69571342
Mar 16 2023
04:19PM
File & ServeXpress

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 613

| | |
|---|---|
| MIKHAIL GERSHZON, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>CHOBANI LLC,<br><br>       Defendant. | Case No. CGC-22-603042<br><br>ORDER AFTER REVIEW OF CMC STATEMENT |

    A case management conference and motion to stay by Chobani LLC were set to be heard on March 22, 2023, at 10:00 a.m. in Department 613, the Honorable Andrew Y.S. Cheng presiding. The Court has reviewed the parties' joint CMC statement, which reflects that the parties have agreed to stay this proceeding and the federal proceeding as they work on alternative dispute resolution. Based on the Court's review of this statement and the records on file in this proceeding, the Court **ORDERS** as follows.

    Chobani LLC's motion to stay is **OFF CALENDAR**. The case management conference is **CONTINUED** to **June 13, 2023, at 10:00 a.m.** A joint statement updating the Court on the status of the

case and any need for further proceedings (e.g., new hearing date on Chobani's motion) is due no later than **June 6, 2023**. The parties must promptly notify the Court sooner if the matter settles.

IT IS SO ORDERED.

Dated:  March 16, 2023

ANDREW Y.S. CHENG
Judge of the Superior Court

*Mikhail Gershzon v. Chobani LLC*, CGC-22-603042 Order After Review of CMC Statement

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.251)

I, CLARK BANAYAD, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On March 16, 2023, I electronically served the ATTACHED DOCUMENT(S) via File&ServeXpress on the recipients designated on the Transaction Receipt located on the File&ServeXpress website.

Dated:  March 16, 2023

Mark Caulkin, Interim Clerk

By: _____

CLARK BANAYAD, Deputy Clerk